| | |
|---|---|
| In re: | Chapter 11 |
| MEGA-PHILADELPHIA LLC | Case No. 22-00340-FMD |
| M.S. ACQUISITIONS & HOLDINGS, LLC, | Case No. 22-00341-FMD |
| | Jointly Administered With Lead Case No. 22-00340-FMD |
| Debtors._____/ | |
| MEGA-PHILADELPHIA LLC | Case No. 22-00340-FMD |
| Applicable Debtor._____/ | |

**DEBTOR'S EXPEDITED MOTION FOR AUTHORIZATION
TO USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS**
(*Request for Expedited Consideration*)

**Basis for Expedited Consideration**

> The above-captioned applicable debtor and debtor-in-possession, Mega-Philadelphia, LLC, requests an expedited hearing in this matter, in order to ensure that the applicable debtor is able to use cash and continue its business operations, and further requests a hearing in this matter within three (3) business days pursuant to Rule 2081-1(g) of the Local Rules for the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules").

Mega-Philadelphia LLC ("Mega" or "Debtor"), the Chapter 11 debtor and debtor-in-possession herein, by and through undersigned counsel, pursuant to 11 U.S.C. §§ 105, 363, and 361, Federal Rules of Bankruptcy Procedure 4001, 6003 and 9014, and Local Rule 2081-1, files this motion on an expedited basis for the entry of an interim order (the "Interim Order") and a final

order (the "Final Order") authorizing the Debtor to use cash collateral (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

## Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105 and 363, Federal Rules of Bankruptcy Procedure 4001, 6003 and 9014, and Local Rule 2081-1.

## Procedural Background

5. On March 25, 2022 (the "Petition Date"), the Mega and M.S. Acquisitions & Holdings, LLC ("M.S. Acquisitions") (collectively, the "Debtors") filed their voluntary petitions in this Court for relief under Subchapter V of Chapter 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq*. (the "Bankruptcy Code"). Since that time, Debtors have operated as debtors-in-possession pursuant to Sections 1182 and 1184 of the Bankruptcy Code.

6. M.S. Acquisitions is a Florida limited liability company, having a principal place of business at 14366 Charthouse Circle, Naples, Florida 34114. M.S. Acquisitions is the 100% owner and sole member of Mega.

7. Mega is a music and radio station business that provides radio broadcasting services in Philadelphia, Pennsylvania; South New Jersey; and Atlantic City, New Jersey, with its corporate headquarters also located at 14366 Charthouse Circle, Naples, Florida 34114. Mega's business generates advertisement revenue through broadcast radio and live promotional events.

8. Mega operates the following radio stations: 105.7FM/1310AM in Philadelphia, Pennsylvania; and 103.3 FM in Millville, New Jersey. Mega also rebroadcasts its radio stations in

Atlantic City, New Jersey, 101.3 FM. The Debtor's radio studio is located at 1341 N. Delaware Avenue, Philadelphia, Pennsylvania 19125.

9. As of the Petition Date, cash held in Mega's operating accounts totaled approximately $47,103.03 and Mega's accounts receivables are approximately $280,000.00.

## Relief Requested

10. By this Motion, Mega seeks the entry of an Interim Order and Final Order authorizing Mega to use cash collateral ("Cash Collateral"), as that term is defined in 11 U.S.C. § 363(a). Mega proposes to use the Cash Collateral in the ordinary course of business and pursuant to an initial budget, attached hereto as **Exhibit "A"** (the "Budget").

11. A proposed Interim Order granting the relief requested herein is annexed hereto as **Exhibit "B"** (the "Proposed Order").

## Applicable Authority For Relief Requested

### A. The Debtor May Use Estate Property.

12. Section 363(c)(1) of the Bankruptcy Code governs the Debtor's use of estate property, as follows:

> If the business of the debtor is authorized to be operated under . . . 1184 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

*See* 11 U.S.C. § 363(c)(1). A debtor-in-possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 1184. "Section 363(c)(2) balances competing interests in a Chapter 11 reorganization . . . [A] debtor reorganizing his business has a compelling need to use cash collateral in order to meet its daily operating expenses and rehabilitate

its business." *In re Delco Oil, Inc.*, 599 F.3d 1255, 1258 (11th Cir. 2010); *see also In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984) ("A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated."). Here, Mega may use the Cash Collateral to ensure the continuation of its business operations, which is essential to Mega's reorganization efforts.

13. When a Chapter 11 debtor-in-possession is authorized to operate its business, it may use property of estate in the ordinary course of business, but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. *In re Delco Oil, Inc.*, 599 at 1258 ("The Bankruptcy Code prohibits the post-petition use of cash collateral by a trustee or a debtor-in-possession, unless the secured party or the bankruptcy court after notice and a hearing authorizes the use of cash collateral upon a finding that the secured party's interest in the cash is adequately protected."); *see also* 11 U.S.C. § 1184;[1] 11 U.S.C. § 363(c)(2);[2] 11 U.S.C. § 363(e).[3] Mega has identified the following creditors that may claim to have a secured interest in the Cash Collateral, by virtue of certain UCC-1 financing statements filed with the Pennsylvania Secretary of State and Florida Secretary of State:

    (a)    Centric Bank;

---

[1] Providing a debtor-in-possession the rights, powers, functions and duties of a bankruptcy trustee, except for the duties specified in paragraphs (2), (3), and (4) of section 1106(a) of the Bankruptcy Code.

[2] "The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

[3] "[O]n request of an entity that has an interest in property ... proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

    (b)  U.S. Small Business Administration;

    (c)  Funding Metrics, LLC; and

    (d)  GTR Source, LLC

(the "Alleged Secured Creditors"). To the extent that this Court may determine that these creditors are indeed valid creditors with a security interest in the Cash Collateral, Mega proposes to provide sufficient and adequate protection to the Alleged Secured Creditors to ensure that their interests are protected by preserving their rights, claims, and liens to the same extent they existed on the Petition Date, if any. *See directly below*.

  **B.**  **The Debtor is Providing the Alleged Secured Creditors With Adequate Protection.**

    **(1) Value of the Alleged Secured Interests.**

  14.  The Bankruptcy Code does not define "adequate protection." *In re Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d at 1019. "In determining whether a creditor's secured interests are so protected, there must be an individual determination of the *value* of that interest and whether a proposed use of cash collateral threatens that value." *Id*. (stating that the secured creditor is not entitled to receive his "bargain in kind," and it is sufficient that the secured creditor receives "in value essentially what he bargained for."). "The value of that interest, for purposes of determining 'adequate protection', is limited to the **lesser** of the amount of the secured claim or the amount of the collateral." *Id*. at 1020 (emphasis added). In terms of assessing the value of the collateral, the Court must determine the "amount which the creditor would receive by its customary or commercially reasonable means of disposition" of the collateral. *Id*. While the Alleged Secured Creditors may claim an interest in the Cash Collateral, Mega represents that the Alleged Secured Creditors are adequately protected by the value of the income and new accounts receivable generated by Mega's business operations.

### (2) **Proposed Adequate Protection For The Alleged Secured Interest Value**.

15. The Bankruptcy Code provides a list of the means by which a debtor may provide adequate protection including, but not limited to, making cash payments to the creditor, providing the creditor an additional or replacement lien, or "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361. Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987) (hereinafter referred to as "*O'Connor*"); *see also Martin v. U.S. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985). For example, in *O'Connor*, the court held that "[i]n order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." *Id*. at 1936 (citations omitted); *see also In re Quality Interiors, Inc*., 127 B.R. 391 (Bankr. N.D. Ohio 1991) (holding that a replacement lien provided adequate protection).

16. Adequate protection is meant to ensure that the secured creditor receives the value for which it originally bargained pre-bankruptcy. *The Resolution Trust Corp. v. Swede/and Dev. Group, Inc. (In re Swede/and Dev. Group., Inc.)*, 16 F.3d 552, 564 (3rd Cir. 1994) (citing *O'Connor*, 808 F.2d at 1396-97). Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued responsibility of the lien value in the interim between the filing and the confirmation. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982). The purpose of the adequate protection requirement is to protect secured creditors from diminution of value during the use period. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *see also In re Becker Indus. Corp*., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgemere Land Corp*., 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

17. The Bankruptcy Code expressly provides that the granting of a replacement lien constitutes a means of providing adequate protection. *See* 11 U.S.C. § 361(2). *See e.g., O'Connor*, 808 F.2d 1393; *see also In re Coody*, 59 B.R. 164, 167 (Bankr. M.D. Ga. 1986); *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).

18. In the instant case, Mega offers as adequate protection a replacement lien on post-petition accounts receivables generated by Mega to the same extent, validity and priority held by such Alleged Secured Creditor that existed prior to the Petition Date, if any.

19. Inasmuch as the Cash Collateral will be utilized to generate postpetition accounts receivables and cash of equal or greater value than the prepetition amounts, the status quo should be adequately maintained for the benefit of the Alleged Secured Creditors while Mega reorganizes.

C. **The Use of Cash Collateral Will Preserve the Debtor's Going Concern Value.**

20. Mega is a radio station business that provides radio broadcasting services. The continued operation of the Mega's business will preserve its going concern value. Mega's use of the Cash Collateral includes, but is not limited to, the use of Mega's cash and collected receivables to pay for the ordinary operating expenses of Mega and the costs associated with this Chapter 11 case. If Mega is unable to operate, it will have an adverse effect on its business, and it will greatly reduce the likelihood of a meaningful recovery to creditors.

21. It is well-established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use cash collateral in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc*, 727 F.2d at 1019. Accordingly, courts regularly authorize the use of cash collateral to enhance or preserve the debtor's going concern value. For example, in *Stein v. United States Farmers Home Administration (In re Stein)*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the secured party was not sufficiently secured, finding that the use of cash collateral was necessary to the debtors' continued operations and the creditor's secured position could only be enhanced by the continued operation of the debtor's business. *Id*. at 460; *see also Fed. Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assoc*., 153 B.R. 204, 204 (N.D. Ill. 1993) (security interest protected to the extent debtor reinvested rents in operation and maintenance of the property); *In re Dynaco Corp*., 162 B.R. 389, 395-96 (Bankr. D. N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, which was the termination of its business, would doom reorganization and any chance to maximize value for all creditors).

22. If Mega cannot use the Cash Collateral, it will be unable to continue its business operations. By contrast, granting authority for the use of Cash Collateral will allow Mega to maintain operations and preserve the going concern value of its business, which will inure to the benefit of the Alleged Secured Creditors and all other creditors.

23. Mega believes that use of Cash Collateral pursuant to the terms and conditions set forth above and as set forth in the Budget attached in **Exhibit "A"** is fair and reasonable and adequately protects the Alleged Secured Creditors. The combination of: (i) Mega's ability to preserve the going concern value of the business with the use of Cash Collateral; and (ii) providing the Alleged Secured Creditors with the protections set forth herein, adequately protects their alleged secured interests.

24. Mega further believes that the approval of this Motion is in the best interest of the

Mega, its creditors and its estate because it will enable Mega to (i) continue the orderly operation of its business and avoid an immediate shutdown of operations; (ii) meet its obligations for necessary ordinary course expenditures, and other operating expenses; and (iii) make payments authorized under other orders entered by this Court, thereby avoiding immediate and irreparable harm to Mega's estate.

WHEREFORE, the Mega-Philadelphia LLC, the Debtor-in-Possession, respectfully requests that the Court (a) enter the Interim Order in substantially the form attached hereto as **Exhibit "B"**; (b) permit Mega to use Cash Collateral consistent with the Budget; grant the proposed adequate protection to the Alleged Secured Creditors; and (d) grant Mega such other and further relief as the Court may deem just and proper.

Respectfully submitted this 6th day of April, 2022.

        **EDELBOIM LIEBERMAN REVAH PLLC**
        *Proposed Counsel for the Debtor*
        20200 W. Dixie Highway, Suite 905
        Miami, FL 33180
        Telephone: (305) 768-9909
        Facsimile: (305) 928-1114
        Email: brett@elrolaw.com
        Email: edan@elrolaw.com

        By: */s/ Brett D. Lieberman*
        Brett D. Lieberman (FBN 69583)

**EXHIBIT "A"**
**Budget**

# Mega Philadelphia
## Profit and Loss by Month
### March - June, 2022

| | 3/25/22-EOM | Apr-22 | May-22 | Jun-22 | Total |
|---|---:|---:|---:|---:|---:|
| **Income** | | | | | |
|   Advertising Income | 25,000.00 | 155,000.00 | 165,000.00 | 175,000.00 | 520,000.00 |
| **Total Income** | $ 25,000.00 | $ 155,000.00 | $ 165,000.00 | $ 175,000.00 | $ 520,000.00 |
| **Gross Profit** | $ 25,000.00 | $ 155,000.00 | $ 165,000.00 | $ 175,000.00 | $ 520,000.00 |
| **Expenses** | | | | | |
|   G & A Expenses | | | | | 0.00 |
|     Automobile Expense | 0.00 | 2,900.00 | 2,900.00 | 2,900.00 | 8,700.00 |
|     Bank Service Fee | 0.00 | 70.00 | 70.00 | 70.00 | 210.00 |
|     Bookkeeping Expense | 0.00 | 275.00 | 275.00 | 275.00 | 825.00 |
|     Insurance Expenses | 0.00 | 3,200.00 | 3,200.00 | 3,200.00 | 9,600.00 |
|     Internet/Cable Expense | 0.00 | 650.00 | 650.00 | 650.00 | 1,950.00 |
|     IT Services Expense | 0.00 | 4,700.00 | 4,700.00 | 4,700.00 | 14,100.00 |
|     Membership Fees Expense | 0.00 | 115.00 | 115.00 | 115.00 | 345.00 |
|     Merchant Fees | 1,750.00 | 1,750.00 | 1,800.00 | 1,850.00 | 7,150.00 |
|     Office Supplies Expense | 25.00 | 100.00 | 100.00 | 100.00 | 325.00 |
|     Payroll | 0.00 | 49,100.00 | 68,650.00 | 49,100.00 | 166,850.00 |
|       Bonus | 0.00 | 3,600.00 | 4,300.00 | 4,500.00 | 12,400.00 |
|       Payroll Tax | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 7,200.00 |
|     **Total Payroll** | $ 1,800.00 | $ 54,500.00 | $ 74,750.00 | $ 55,400.00 | $ 186,450.00 |
|     Rent Expense | 0.00 | 10,184.00 | 10,184.00 | 10,184.00 | 30,552.00 |
|     Telephone Expense | 0.00 | 750.00 | 750.00 | 750.00 | 2,250.00 |
|     Traffic System Expense | 445.00 | 890.00 | 890.00 | 890.00 | 3,115.00 |
|     Travel & Entertainment Expense | 0.00 | 775.00 | 775.00 | 775.00 | 2,325.00 |
|   **Total G & A Expenses** | $ 4,020.00 | $ 80,859.00 | $ 101,159.00 | $ 81,859.00 | $ 267,897.00 |
|   Income Tax | 0.00 | 232.48 | 232.48 | 232.48 | 697.44 |
|   Interest Expense | 0.00 | 0.00 | 0.00 | 1,100.00 | 1,100.00 |
|   Legal fees | 3,750.00 | 10,000.00 | 15,000.00 | 15,000.00 | 43,750.00 |
|   Other Professional Fees | 0.00 | 3,000.00 | 3,000.00 | 3,000.00 | 9,000.00 |
|   postage | 0.00 | 75.00 | 75.00 | 75.00 | 225.00 |
|   Programming Expenses | | | | | 0.00 |
|     Music License Fees | 0.00 | 1,400.00 | 1,400.00 | 1,400.00 | 4,200.00 |
|     Music Software Expense | 0.00 | 224.00 | 224.00 | 224.00 | 672.00 |
|     Payroll | 3,885.58 | 7,771.15 | 7,771.15 | 7,771.15 | 27,199.03 |
|     Talent Expense | 125.00 | 250.00 | 250.00 | 250.00 | 875.00 |
|     Website Expense | 0.00 | 300.00 | 300.00 | 300.00 | 900.00 |
|   **Total Programming Expenses** | $ 4,010.58 | $ 9,945.15 | $ 9,945.15 | $ 9,945.15 | $ 33,846.03 |
|   Promotion Expenses | | | | | 0.00 |
|     Event Expense | 0.00 | 1,050.00 | 1,050.00 | 1,050.00 | 3,150.00 |
|     Payroll | 1,150.00 | 2,300.00 | 2,300.00 | 2,300.00 | 8,050.00 |
|   **Total Promotion Expenses** | $ 1,150.00 | $ 3,350.00 | $ 3,350.00 | $ 3,350.00 | $ 11,200.00 |
|   Sales Expenses | | | | | 0.00 |
|     Commissions | 2,750.00 | 14,300.00 | 17,050.00 | 18,150.00 | 52,250.00 |
|     **Total Commissions** | $ 2,750.00 | $ 14,300.00 | $ 17,050.00 | $ 18,150.00 | $ 52,250.00 |
|     CRM Expense | | | | 1,275.00 | 1,275.00 |
|     Ratings Expense | 0.00 | 4,926.85 | 4,926.85 | 4,926.85 | 14,780.55 |
|     Rep Firm Expense | 0.00 | 850.00 | 850.00 | 850.00 | 2,550.00 |
|     Travel Expense | 0.00 | 650.00 | 650.00 | 650.00 | 1,950.00 |
|   **Total Sales Expenses** | $ 2,750.00 | $ 20,726.85 | $ 23,476.85 | $ 25,851.85 | $ 72,805.55 |
|   Technical/Engineering Expenses | | | | | 0.00 |
|     Antenna Expense | 0.00 | 710.26 | 710.26 | 710.26 | 2,130.78 |
|     Translator Expense | 0.00 | 1,250.00 | 1,250.00 | 1,250.00 | 3,750.00 |
|   **Total Technical/Engineering Expenses** | $ 0.00 | $ 1,960.26 | $ 1,960.26 | $ 1,960.26 | $ 5,880.78 |
| **Total Expenses** | $ 18,430.58 | $ 144,448.74 | $ 175,248.74 | $ 160,523.74 | $ 498,651.80 |
| **Net Operating Income** | $ 6,569.43 | $ 10,551.26 | -$ 10,248.74 | $ 14,476.26 | $ 21,348.21 |
| **Other Expenses** | | | | | |
|   Licensing Fees1 | 2,800.00 | 2,800.00 | 2,800.00 | 2,800.00 | 11,200.00 |
| **Total Other Expenses** | $ 2,800.00 | $ 2,800.00 | $ 2,800.00 | $ 2,800.00 | $ 11,200.00 |
| **Net Other Income** | -$ 2,800.00 | -$ 2,800.00 | -$ 2,800.00 | -$ 2,800.00 | -$ 11,200.00 |
| **Net Income** | $ 3,769.43 | $ 7,751.26 | -$ 13,048.74 | $ 11,676.26 | $ 10,148.21 |

**EXHIBIT "B"**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Fort Myers Division**
www.flmb.uscourts.gov

In re:

                                                    Chapter 11

MEGA-PHILADELPHIA LLC                 Case No. 22-00340-FMD

M.S. ACQUISITIONS & HOLDINGS, LLC,     Case No. 22-00341-FMD

                                                    Jointly Administered With
                                                    Lead Case No. 22-00340-FMD

    Debtors.
_____/

MEGA-PHILADELPHIA LLC                 Case No. 22-00340-FMD

    Applicable Debtor.
_____/

**INTERIM ORDER GRANTING DEBTOR'S EXPEDITED MOTION FOR
AUTHORIZATION TO USE CASH COLLATERAL**

THIS MATTER came before the Court for hearing on _____, 2022, upon the *Debtor's Expedited Motion for Authorization to Use Cash Collateral* (ECF No. _____) (the "Motion"),

12

filed by Mega-Philadelphia LLC, the debtor and debtor-in-possession herein (the "Debtor"). The Motion seeks the entry of an order authorizing the use of "Cash Collateral" (as that term is defined in Section 363(a) of the Bankruptcy Code). This Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A). The Court, having reviewed the Motion and being otherwise advised in the premises, it is:

**ORDERED** and **ADJUDGED** that:

1. That the Motion is **GRANTED.**

2. The Debtor is authorized to use the Cash Collateral to operate in the ordinary course of business as provided in the Debtor's Budget, which is attached to the Motion as Exhibit "A", subject to a 10% variance.

3. The Alleged Secured Creditors, as defined in the Motion, shall have a replacement lien on post-petition accounts receivables generated by the Debtor to the same extent, validity and priority that existed prior to the commencement of this case, if any.

4. The Court will conduct a Final Cash Collateral Hearing on _____, 2022 at ____ _____ .m, in Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa Florida. 33602, before the Honorable Caryl E. Delano, Chief United States Bankruptcy Judge. The Final Cash Collateral Hearing shall be conducted via Zoom.

5. Parties should arrange to attend the hearing by registering for Zoom Meeting at: https://pacer.flmb.uscourts.gov/fwxflmb/zoom/.

6. The Court prefers for attorneys and parties to participate in the hearing by video on Zoom. However, parties who wish to listen only, who do not anticipate active participation in the hearing, or who lack the necessary technology to participate by video may attend the hearing

by telephone following the procedures set forth below. However, a party who wishes to examine a witness or to make evidentiary objections must attend the hearing by video on Zoom; parties are not permitted to examine witnesses or make evidentiary objections by telephone. There is no charge for attending a hearing by video or by telephone on Zoom.

7. Parties attending the Hearing telephonically may register via CourtCall by calling (888-882-6878) OR by registering for the Zoom Meeting and selecting the audio options by 5:00 p.m. the business day preceding the Hearing.

###

Submitted by:

Brett Lieberman, Esq.
Edelboim Lieberman Revah Oshinsky PLLC
20200 W. Dixie Highway, Suite 905
Aventura, FL 33180
Telephone: (305) 768-9909
Facsimile: (305) 928-1114


Copy furnished to

*Brett Lieberman, Esq., who is directed to serve a conformed copy of this order on all interested parties and file a certificate of service with the Court.*