IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| MEGA-PHILADELPHIA LLC, ) | |
| ) | Case No. 22-00340-FMD |
| ) | |
| Debtor. ) | |
| _____ ) | |

**OBJECTION OF CENTRIC BANK TO
DEBTOR'S MOTION FOR AUTHORITY TO PAY AFFILIATE OFFICER SALARY
DEEMED EFFECTIVE AS OF THE PETITION DATE**

Centric Bank ("Centric") objects to the *Debtor's Motion for Authority to Pay Affiliate Officer Salary Deemed Effective as of the Petition Date* [Doc 77] (the "Motion to Pay") filed by Mega Philadelphia, LLC ("Mega") and in support of this objection states as follows:

1. Michael Sciore is the sole owner of M.S. Acquisitions & Holdings, LLC ("Holdings"), which is the sole owner of Mega. Mega operates terrestrial radio stations in the mid-Atlantic United States. Together, Holdings and Mega (collectively, the "Debtors") are the debtors in these jointly administered sub-chapter V bankruptcy cases filed March 25, 2022 (the "Petition Date").

2. Centric is a community bank headquartered in Harrisburg, Pennsylvania. Prior to the Petition Date, Centric provided business credit to both Debtors.

3. As of the Petition Date, Mega owed Centric $787,257.47 (the "Mega Debt") and Holdings owed Centric $5,768,904.88 (the "Holdings Debt"; collectively, the "Total Debt"), of which $292,943.45 represents an SBA loan guaranteed by Holdings (the "SBA Loan") and included in the Mega Debt. *See* Claim 1-1 in the Mega case and Claim 10-1 in the Holdings case.

4. In May of 2020, Centric obtained judgments in Pennsylvania state court for $494,314.02 of the Mega Debt and $5,475,961.43 of the Holdings Debt.[1] *Id.* The Debtors appealed entry of those judgments and subsequently filed these bankruptcy cases.

5. In the year prior to the Petition Date, the Debtors transferred in excess of $800,000 to, or for the benefit of Mr. Sciore, whose principal business strategy seems to have involved borrowing money and not repaying it. *See* Mega's Amended Statement of Financial Affairs [Doc 78], and Holdings's Amended Statement of Financial Affairs [Doc 79]. These transfers, made while the Debtors collectively owed Centric over $6 million and were actively involved in litigation regarding the same, suggest a significant disregard of both corporate separateness and the duties owed to the creditors of an insolvent company. Put simply, it appears as though the Debtors borrowed money for Mr. Sciore to spend.

6. In its package of first day motions (filed over two weeks after the Petition Date), Mega sought authority to use Centric's cash-collateral. *See* Mega's Cash Collateral Motion [Doc. 26]. In light of Mr. Sciore's apparent contempt for the corporate form, Centric's non-opposition to Mega's use of cash collateral was conditioned on a prohibition against any payment to, or for the benefit of, insiders, particularly Mr. Sciore. In fact, this limitation is explicitly set forth in both interim cash-collateral orders. *See* Interim Cash Collateral Order [Doc. 57] and Second Interim Cash Collateral Order [Doc 64]. A final hearing on the use of cash collateral is set for July 18, 2022.

7. However, in violation of the prohibitions expressly stated in the filed Orders, Mega improperly paid Mr. Sciore his salary post-petition, on April 8, 2022, without Court

---

[1] The SBA Loan /Holdings guarantee of the SBA Loan are the only portion of the Total Debt that has not been reduced to judgment.

SGR/38800350.1

approval. *See* Mega's Monthly Operating Report for April 2022, p. 7 [Doc 72]. Now, in an effort to cover-up Mega's (and Mr. Sciore's) direct violations of the Interim Cash Collateral Order, and the Second Interim Cash Collateral Order, Mega seeks authority to pay Mr. Sciore bi-weekly compensation, effective as of the Petition Date.

8. The Motion also requests payment of an automobile allowance of $2,000 per month in addition to the request for payment of a salary. Mr. Sciore driving an outrageously expensive car in Florida does not provide any benefit to a radio station operating in New Jersey. Mega's request is simply more of Mr. Sciore's same—depleting Mega of its assets while creditors are forced to wait.

9. In support of the Motion to Pay, Mega notes that Sciore received just shy of $190,000 directly or indirectly from Mega in the year prior to the Petition Date and contends that the compensation Sciore receives from Mega is his primary source of income. Of course, Mega neglects to mention the more than $600,000 that Sciore received from Holdings in the same period, including approximately $331,000 used to recently purchase his residence in Naples. Having fattened himself on the company carcass, Mr. Sciore has the audacity to ask for dessert.

10. The relief sought by Mega should be denied. Moreover, to the extent it is given any consideration, it should occur no earlier than in the context of a final hearing on the use of cash-collateral and perhaps more appropriately, as part of confirmation.

WHEREFORE, Centric respectfully requests that this Court deny the Motion to Pay.

Dated: June 22, 2022.

**SMITH, GAMBRELL & RUSSELL, LLP**

By: */s/ Brian P. Hall*
    Brian P. Hall
    Florida Bar No.: 0070051

1105 W. Peachtree Street NE
Suite 1000
Atlanta, GA 30309
Phone:  (404) 815-3537
Facsimile:  (404) 685-6837
[bhall@sgrlaw.com](mailto:bhall@sgrlaw.com)
James H. Cummings
Florida Bar No. 27657
50 N. Laura St., Suite 2600
Jacksonville, FL 32202
Phone: (904) 598-6127
Facsimile: (904) 598-6227
[jcummings@sgrlaw.com](mailto:jcummings@sgrlaw.com)

***Attorneys for Centric Bank***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of June 2022, a copy of the within and foregoing Objection was served via the Court's electronic case filing system on all of those parties receiving electronic notice in the above-styled case.

> */s/ Brian P. Hall*
> Brian P. Hall