In re:

| | |
|---|---|
| | Chapter 11 |
| MEGA-PHILADELPHIA LLC | Case No. 22-00340-FMD, |
| M.S. ACQUISITIONS & HOLDINGS, LLC, | Case No. 22-00341-FMD |
| | (Jointly Administered) |
| Debtors. | |

_____/

**MEGA-PHILADELPHIA LLC AND M.S. ACQUISITIONS & HOLDINGS, LLC**
**JOINT SUBCHAPTER V PLAN OF REORGANIZATION**

This Joint Plan of Reorganization (the "Plan") is presented to you to inform you of the proposed Plan for restructuring the debt of Mega-Philadelphia LLC ("Mega") and M.S. Acquisitions & Holdings, LLC ("MS"), the Debtors and Debtors-In-Possession in the above captioned administratively consolidated Chapter 11 cases (together, the "Debtors") and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN. IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY [OBJECTION DATE/TIME].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [DEADLINE]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: BRETT D. LIEBERMAN, EDELBOIM LIEBERMAN REVAH PLLC, 20200 W. DIXIE HWY., SUITE 905 MIAMI, FL 33180.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ _____, 2020 AT __:__ __.m** by Zoom from Courtroom 9A, Tampa. Parties may attend the hearing by telephone, by Zoom, or in−person in Courtroom 9A with permission from the Court. Parties permitted to appear by telephone must arrange a telephonic appearance through Court Call (866−582−6878) **by 5:00 p.m. the business day preceding the hearing**. UNLESS INSTRUCTED OTHERWISE, PARTIES MAY NOT APPEAR IN PERSON IN THE FORT MYERS COURTHOUSE.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Respectfully Submitted on this 23rd day of June, 2022

MEGA-PHILADELPHIA LLC
By: MS ACQUISITIONS & HOLDINGS, LLC
    its Manager and Member

By: /s/
Mike Sciore, Its Authorized Representative

MS ACQUISITIONS & HOLDINGS, LLC

By: /s/
Mike Sciore, Manager and Sole Member

**EDELBOIM LIEBERMAN REVAH PLLC**
*Counsel for the Debtors*
20200 W. Dixie Highway, Suite 905
Miami, FL 33180
Telephone: (305) 768-9909
Facsimile: (305) 928-1114
Email: brett@elrolaw.com
Email: edan@elrolaw.com

By:/s/ *Brett D. Lieberman*
  Brett D. Lieberman (FBN 69583)

## <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

This is the Joint Plan of Reorganization of the Debtors, Mega and MS under Chapter 11, Subchapter V, of the Bankruptcy Code. The Plan provides for a reorganization of the Debtor's obligations to its creditors and Mega and MS emerging from Chapter 11 as a reorganized debtor. Through the Plan the Debtors propose to pay all amounts due to the Subchapter V Trustee, any fees due to the United States Trustee and Creditors holding Allowed Administrative Claims, and Allowed Priority Tax Claims.

The Plan provides for payment of the Allowed Secured Claims of the Debtor's most senior Secured Creditor as well as a pro-rata distributions to undersecured and unsecured creditors through a Junior Creditor Payment Plan.

The Junior Creditor Payment Plan requires monthly payments of projected disposable income during a five-year period commencing on the Effective Date. It is anticipated that the Creditors will receive a __ % distribution through under the Junior Creditor Payment Plan.

The Plan will be funded by several sources including: (a) **Disposable Income**: Mega will commit disposable income to the fund the Plan in the total amount of **$1,470,236.00** in accordance with the Projections over the 5-year Plan and MS will commit disposable income to the fund the Plan in the total amount of **$200,000.00** of anticipated distributions from ABC in accordance with the Projections over the 5-year Plan; (b) **Plan Contribution**: The Plan Sponsors will contribute **$90,000.00** in cash to the MS estate and Mr. Sciore is willing to accept a discounted salary during the life of the Plan (discount valued at approximately $1,160,000.00); (c) **Property Contribution**: the Plan Sponsors will contribute certain real property located at: (i) 5 Cobalt Court, Swedesboro, New Jersey 08085;[1] and (ii) Ocean Forest Lot-8, Rio Grande Puerto Rico, 00745, together valued at approximately **$700,000.00** (the "Plan Sponsor Properties"), to certain of the MS Secured Creditors under the Plan; and (d) the **Litigation Trust:** Debtors will create a litigation trust for the benefit of all creditors.

In exchange for the Plan Sponsor Contribution and Plan Property Contribution, except as otherwise provided in this Plan, the Plan Sponsors will be released by the Debtors and the Debtors' creditors who will be permanently enjoined from any efforts to collect from the Plan Sponsors for any obligations, liabilities, claims or debts. For more information concerning the release and injunction in favor of the Debtor and the Plan Sponsors, please refer to Article 7 of this Plan.

Based upon this Plan the Debtors believe that Creditors will receive a better outcome if the Debtors successfully reorganize than if the Debtor liquidates under Chapter 7 of the Bankruptcy Code. As more fully set forth in the liquidation analysis attached to the Plan as Exhibit "6". In the event of a liquidation, the Debtors believe that there would be a very small recovery for unsecured creditors after payment of the claims of its Secured Creditor, Administrative Creditors and Priority Creditors.

The Debtors believe that this Plan provides a substantially better outcome for all of the Creditors. The Plan provides for a significant recovery that benefits all parties in all classes. For the reasons more fully set forth in this Plan, the Debtors request your vote to accept the Plan.

---

[1] The New Jersey property is encumbered by a first position mortgage in the approximate amount of $500,000 in favor of M&T Bank. The New Jersey property will be contributed to the Plan subject to such first mortgage by quit claim deed.

## INTRODUCTION

The Debtor-in-Possessions, Mega and MS, proposes this Joint Chapter 11 Plan of Reorganization (as defined more fully below, the "Plan") pursuant to Subchapter V, 11 U.S.C. §1190 of the United States Bankruptcy Code.

Reference is made to, among other things, a brief history of the Debtors, including the major events of this Chapter 11 Case, treatment of Claims against and interests in the Debtors, preservation of litigation claims through a litigation trust, risk factors, liquidation analysis, tax implications, alternatives to the Plan, a summary and analysis of this Plan, projections with respect to the ability of the Debtors to make payments under the proposed plan and certain related matters.

**All Holders of Claims against and Equity Interests in the Debtor entitled to vote on the Plan are encouraged to read the Plan before voting to accept or reject the Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney. (If you do not have an attorney, you may wish to consult one).**

Subject to certain restrictions and requirements set forth in 11 U.S.C. §1193, Bankruptcy Rule 3018, and in this Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date (as defined below).

## ARTICLE 1
## BACKGROUND OF THE DEBTOR

### 1.1. Filing of the Debtors' Chapter 11 Cases.

On March 25, 2022, the Debtors filed their voluntary petitions for relief under Chapter 11, Subchapter V of the United States Bankruptcy Code, Case No. 22-bk-00340-FMD and 22-bk-00341-FMD (the "Bankruptcy Cases"). The Cases were administratively consolidated by court orders entered on March 30, 2022.[2] The Bankruptcy Cases are pending in the Bankruptcy Court in the United States Bankruptcy Court in and for the Middle District of Florida, Fort Myers Division.

### 1.2. Nature of the Debtor's Business.

Mega is a music and radio station business that provides radio broadcasting services in Philadelphia, Pennsylvania; South New Jersey; and Atlantic City, New Jersey. Mega's corporate headquarters is located at 14366 Charthouse Circle, Naples, Florida 34114.

Mega's business generates advertisement revenue through broadcast radio and live promotional events. Mega operates the following radio stations: 105.7/1310 FM in Philadelphia, Pennsylvania; and 103.3 FM in Millville, New Jersey. Mega's also rebroadcasts its radio stations in Atlantic City, New Jersey, 101.3 FM. The Debtor's radio studio is located at 1341 N. Delaware

---

[2] ECF No. 10 in Case No. 22-bk-00340-FMD and ECF #7 in Case No. 22-bk-00341-FMD.

Avenue, Philadelphia, Pennsylvania 19125.

Mega is also the 100% owner of subsidiary La Mega Credit Card Services LLC which, among other things, assists Mega in processing incoming credit card transactions for Mega's business.

MS is the 100% owner and sole member of Mega. MS also holds, among other things, a 51% ownership interest in America's Business Capital, LLC ("ABC"). ABC is a commercial lending brokerage business. ABC is a service company whose only asset is cash generated from brokering loan transactions initiated by its principals. ABC's business model is predicated on its principals' ability to generate commissions by brokering loan transactions. ABC's business was significantly hindered by the Covid-19 pandemic and has not yet recovered.

The Debtors filed the Bankruptcy Cases to settle certain financial obligations and reorganize their financial affairs, resolve contentious litigation, and to emerge from bankruptcy as a healthy, sufficiently capitalized company capable of continuing their operations and providing distributions to creditors greater than a liquidation outcome. The Debtors believe that based on the Debtors' income stream, accounts receivable and value being contributed the Debtors' principal, they will be able to successfully reorganize and confirm the Plan.

### 1.3.  **Legal Structure and Ownership.**

Mega is a manager managed limited liability company. The membership interests of Mega are 100% owned by MS and MS is its sole Manager. MS is also a manager managed limited liability company. The membership interests of MS are 100% owned by Michael Sciore and Mr. Sciore is MS's sole Manager. Mr. Sciore also serves as CEO of Mega and oversees its day-to-day activities.

### 1.4.  **Debtor's Assets.**

Mega's assets consist largely of cash, accounts receivables, office supplies, computers, software, office furniture, FCC licenses and litigation claims against third parties. MS' assets consist largely of cash, its ownership interests in Mega and ABC, and litigation claims against third parties. The Debtors' assets were reflected on their Bankruptcy Schedules A/B filed in the Bankruptcy Case.[3]

Mega estimates that the liquidation value of its Cash, Accounts Receivable, office equipment and furniture, transmitter and miscellaneous equipment, licenses is approximately $596,402.00.[4] Mega has engaged a Broker to develop a market test of its going concern value, but to date has not received any offers for the acquisition of its assets. MS estimates that the liquidation value of its Cash, Accounts Receivable, office equipment and furniture, transmitter and miscellaneous equipment, licenses is approximately $39,431.00.[5]

The Debtors believe that in the event of a liquidation the Debtors assets, it would not result

---

[3] See ECF #28 in Case No. Case No. 22-bk-00340-FMD and ECF #15 in Case No. 22-bk-00341-FMD.
[4] See liquidation analysis attached as composite Exhibit "6".
[5] See liquidation analysis attached as composite Exhibit "6".

in a substantial recovery for creditors and that the liquidation value of the Debtors assets is significantly lower than the proposed distributions to creditors under this Plan.

Specifically, Mega believes that the liquidation value of its assets would result in a nominal recovery on account of its tangible assets and the value of FCC licenses in piecemeal fashion and separate from the operating business would receive less value than the Plan's payment proposal.

Likewise, MS's assets, namely its interest in Mega and ABC, are significantly impaired if Mega's assets are sold in piecemeal fashion. At present, ABC's operations are expected to generate $200,000.00 in net income available for distribution to MS over the life of the 5-year Plan.

Furthermore, the Debtors believe that the value of its office equipment, litigation claims, computers, software and office supplies will yield a very small recovery in a liquidation of the Debtors' assets because they are encumbered by liens of secured creditors, are used and will have substantially reduced values in a forced sale.

For a further analysis of the Debtors' assets all parties-in-interest are urged to review the liquidation analysis contained in Section 4 of this Plan.

### 1.5.    Debtors' Liabilities.

The Debtors' liabilities are reflected on the Debtors' respective Bankruptcy Schedules D and E/F which are attached hereto as composite Exhibit "1".  Additionally, certain creditors that were (a) not listed on the Bankruptcy Schedules, (b) listed as disputed, contingent and/or unliquidated on the Bankruptcy Schedules, and/or (c) listed as holding debts in a different amount then what was reflected on the Bankruptcy Schedules filed proof of claims in the Bankruptcy Case. A copy of the Claims Register which reflects the proof of claims filed in the Bankruptcy Case is attached as Exhibit "2".

The Debtor summarizes its liabilities as follows:

(a)     Subchapter V Trustee's Administrative Claim: this is the Claim of the Sub-Chapter V Trustee for her fees associated with the administration of the Bankruptcy Case.

(b)     Professional Administrative Claims: these are the Claims of Chapter 11 Professionals which, include without limitation the claims of: Edelboim Lieberman Revah Oshinsky PLLC the Debtors' Chapter 11 counsel; Kapila Mukamal LLP, the Debtors' Financial Advisor; and CMS Station Brokerage, Inc., the Debtors' broker and Anthony Lepore, the Debtor's special FCC counsel.

(c)     Other Administrative Claims: At this time the Debtors are not aware of accrued and unpaid administrative claims.

(d) Secured Claims:

(i) Centric Bank (Mega Claim 1): the Claims of the Centric Bank against Mega are in the amount of $787,257.47. Centric Bank claims a blanket security interest in all of Mega's assets;

(ii) Centric Bank (MS Claim 10): the Claims of the Centric Bank against MS are in the amount of $5,768,904.88 (inclusive of overlapping claims against Mega in the amount of $787,257.47). Centric Bank claims a blanket security interest in all of MS's assets.

(iii) US Small Business Administration (MS Claim 2): the Claim of US Small Business Administration is for money loaned to Mega in the amount of $512,031.85. US Small Business Administration claims a blanket security interest in all of Mega's assets. It appears that the US Small Business Administration mistakenly filed this claim in the MS bankruptcy case. The Debtors anticipate objecting to this claim to the extent it was mistakenly filed in. the MS case and treating it as a claim in the Mega case.

(iv) US Small Business Administration (MS Claim 3): the Claim of US Small Business Administration is for money loaned to MS in the amount of $505,253.75. US Small Business Administration claims a blanket security interest in all of MS's assets.

(v) Bridge Funding Cap LLC (Mega Claim 3): the Claim of Bridge Funding Cap LLC claims to be for the purchase and sale of accounts receivable but appears to be a disguised usurious  loan agreement that also purports to be secured by a UCC in the amount of $185,494.37. Bridge Funding Cap LLC filed its claim untimely and Debtors anticipate objecting to same.

(vi) EBF Partners, LLC d/b/a Everest Business Funding (MS Claim 4): the Claim of EBF Partners LLC claims to be for a "Purchase Agreement entitling Claimant to 15% of [MS's] 'Future Receipts' as defined in the Revenue Based Financing [sic]". Such appears to be a disguised usurious  loan agreement that also purports to be secured by a UCC in the amount of $58,961.90. Moreover, on the Petition Date, MS' accounts receivable totaled zero dollars. Accordingly, MS anticipates objecting to EBF Partners, LLC as a secured creditor.

(vii) Funding Metrics (MS Claim 9): the Claim of EBF Partners LLC claims to be for a the purchase and sale of future receivables. Such agreement appears to be a disguised usurious  loan agreement that also purports to be secured by a UCC in the amount of $54,339.74. Moreover, on the Petition Date, MS' accounts receivable totaled zero dollars. Accordingly, MS anticipates objecting to EBF Partners, LLC as a secured creditor.

(d) Priority Unsecured Claims: The Debtor estimates that the priority unsecured claims are as follows:

(i) State of New Jersey (Claim 1): the Claim of the State of New Jersey against MS in the amount of $91,472.15 is a priority tax claim pursuant to 11 U.S.C. § 507(a)(8) is for taxes due. However, Debtors' anticipate objecting to the foregoing claim as Debtors' estimates of pre-petition New Jersey taxes is approximately $35,000.00.

(e) Unsecured Claims: The Debtors estimate that the Undersecured and Unsecured Creditors in the Mega case hold total aggregate claims in the amount of $393,948.00, and in the MS case hold total aggregate claims in the amount of approximately, $5,169,216.62[6] A summary of Unsecured Claims (subject to allowance or disallowance) is attached hereto as composite Exhibit "2".

### 1.6.    Current and Historical Financial Conditions.

MS organized its business on February 7, 2014. MS is largely a holding company overseeing the affairs of its subsidiaries and aiding and assisting in their operations. Mega was formed on June 27, 2016.   In 2019, Mega reported gross revenue of $1,793,436.00 from the operations of its business and MS reported gross revenue of $1,729,743.  In 2020, Mega reported gross revenue of $1,729,743.00 and MS reported gross revenue of $532,194.00.  And, in 2021, Mega reported gross revenue of $1,736,045 and MS reported gross revenue of $293,954.36.

Since the Petition Date, Mega has continued operations and is funding its going concern expenses. MS has overseen same and as well as other businesses in which it holds an interest. As reflected in the Debtors' projections it is anticipated that the Debtors will operate profitable business during the next five years and will be able to fund the payments to Creditors as provided for in this Plan.

### 1.7.    Events Leading to the Filing of the Bankruptcy Case.

Prior to the Petition Date, Debtors restructured certain of their historic loan obligations through a series of transactions resulting in the satisfaction of prior loans and the creation of a new debt structure at both the MS and Mega levels with obligations (direct and guarantee) to Centric Bank ("Centric").

Centric filed proof of claims totaling approximately $787,257 directly against Mega (POC #1) and $5,768,904.88 directly against MS (POC #10, which claim is inclusive of claims against Mega). Additionally, during the COVID-19 pandemic, MS and MEGA each received approximately $500,000 in SBA loans ($1,000,000 total).

Notwithstanding Debtors' efforts to restructure the Centric obligations, prior to the petition date Centric claimed defaults against the Debtors, certain co-obligors and guarantors. As a result of those claimed defaults, Centric submit confessed judgments against Debtors, certain co-obligors and guarantors.

---

[6] The total general unsecured claims may be subject to reduction by: (a) negotiations with creditors for reduction of Claims; (b) the Debtors objections to Claims; and (c) the Debtor successfully obtaining forgiveness of loans.

The Debtors, co-obligors and guarantors contested the defaults and entry of the judgments. Protracted litigation ensued between the Debtors, co-obligors and guarantors and Centric requiring dedication of significant time, energy and expense. Certain of Centric's claims are still on appeal and have not been fully adjudicated.

## 1.8. <u>Significant Events During the Bankruptcy Case.</u>

The Debtors filed their Voluntary Petitions for Relief under Chapter 11 Subchapter V on March 25, 2022. Thereafter, the Court set a Claims Bar Date of June 3, 2022 and a Status Conference as required by 11 U.S.C. § 1188 for May 9, 2022.

On March 29, 2022, the Office of the United States Trustee appointed Amy Denton Harris as the Subchapter V Trustee. On March 31, 2022, the Office of the United States Trustee filed a Notice of Meeting of Creditors scheduling the Meeting of Creditors Required by 11 U.S.C. § 341 for May 5, 2022.

Also on March 29, 2022, the Debtors filed their *Case Management Summary* (ECF #7), *Motions For Joint Administration* (ECF #8), and their *Expedited Motion For Authorization To Pay Prepetition Obligations To Critical Vendors* (ECF #9). Joint administration was approved on March 30, 2022. ECF #10. Debtors' critical vendor motion was granted on April 11, 2022 on an interim basis and on May 20, 2022 on a final basis. ECF ##35 and 68.

On April 5, 2022, the Debtors filed an *Emergency Application to Employ Brett Lieberman and Edelboim Lieberman Revah PLLC as Counsel to the Debtors* (ECF No. 23) ("ELR's Application"). On April 25, 2022, Lieberman filed his supplemental declaration in support of ELR's Application (ECF #48).

On April 6, 2022, Debtors' filed *their Expedited Motion for Authorization to Use Cash Collateral on an Interim Basis* (ECF #26). On April 8, 2022, the Debtors filed an *Application to Employ Soneet Kapila and KapilaMukamal, LLP as Financial Advisor to the Debtors* (ECF #29) ("KM's Application").

ELR's Application and KM's Application were granted on May 16, 2022. ECF ## 60 and 61, respectively.

On May 10, 2022, the Court authorized the Debtors' use of cash collateral on an interim basis and, on May 18, 2022, approved further interim use of cash collateral. (ECF ##57 and 64).

On May 13, 2022, the Debtors' filed their *Application To Employ Roger H. Rafson and CMS Station Brokerage as Radio Station Investment Brokers Deemed Effective as of May 7, 2022* (ECF #59) ("CMS's Application"). CMS's Application was granted on May 18, 2022 ECF #65.

On May 5, 2022, the Office of the United States Trustee conducted the first Meeting of Creditors pursuant to 11 U.S.C. § 341. The Meeting of Creditors was continued several times to permit the Debtors an opportunity to supplement their Statement of Financial Affairs and ultimately concluded on June 1, 2022.

On May 23, 2022, the Debtors filed their application to employ Anthony Lepore and Radiotvlaw Associates, LLC as special counsel to assist in certain FCC license issues (ECF #70). Such application was granted on May 24, 2022. ECF #71.

On April 25, 2022, the Debtors filed their Subchapter V Status Report Pursuant to 11 USC §1188(c) (ECF #49). On May 9, 2022, the Court conducted the initial status conference.

### 1.9. <u>Projected Recovery of Avoidable Transfers</u>

The Debtors have conducted a preliminary analysis of preference, fraudulent conveyance, or other avoidance actions under Chapter 5 of the Bankruptcy Code and has concluded that such actions exist and ought to be pursued. For the benefit of creditors, such claims shall be transferred to the Litigation Trust upon the Effective date for the benefit of Creditors. Unsecured Creditors will receive 100% of the value of such claims less the administrative and legal fees and costs of pursuing and collecting on such actions.

### ARTICLE 2
### <u>TREATMENT OF CLAIMS AND EQUITY INTERESTS</u>

The treatment of and consideration to be received by holders of Allowed Claims or Allowed Interests pursuant to this Article and the Plan shall be in full satisfaction, settlement, release, extinguishment, and discharge of their respective Claims against or interests in the Debtors and the estates, except as otherwise provided in the Plan or the Confirmation Order. The holders of liens satisfied, discharged, and released under the Plan shall execute any and all documentation reasonably requested by the Debtors or the reorganized Debtors evidencing the satisfaction, discharge and release of such liens.

### 2.1 <u>Unclassified Claims</u>

### A. <u>Allowed Administrative Claims</u>

Each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of such Allowed Administrative Claim, either (A) an amount equal to the unpaid amount of such Allowed Administrative Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Administrative Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; or (B) such other treatment (i) as may be agreed upon in writing by the Claimholder and the Debtor, or (ii) as the Bankruptcy Court has ordered or may order. Notwithstanding the foregoing, Allowed Administrative Claims representing (a) liabilities, accounts payable or other Claims or obligations incurred in the ordinary course of business of the Debtor consistent with past practices subsequent to the Petition Date, shall be paid or performed by the Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements or contracts relating thereto; provided, notwithstanding any contract provision, applicable law or otherwise, that entitles a holder of an Allowed

Administrative Claim to post-petition interest, no holder of an Allowed Administrative Claim shall receive post-petition interest, on account of such Claim.

Compensation of professionals and reimbursement of expenses incurred by professionals are Administrative Claims pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "**Professional Fees** and **Expenses Claims**"). All payments to Professionals for Professional Fees and Expenses Claims will be made in accordance with the procedures established by the Code, the Rules, Local Rules and the Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses. The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to section 330 if the Code and Rule 2016 by the date that is ten (10) days after the Effective Date or such other date as may be fixed by the Court.

**B.      Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim shall receive, at the sole discretion of the Debtor, and in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (A) an amount equal to the unpaid amount of such Allowed Priority Tax Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Priority Tax Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; (B) as provided in section 1129(a)(9)(C), as amended by sections 1191(b) and 1191(e) of the Bankruptcy Code, cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together with interest (payable in arrears) on the unpaid portion thereof at the existing statuary interest rate from the Effective Date through the date of payment thereof; or (C) such other treatment as to which the Debtor and such Claimholder shall have agreed in writing or the Bankruptcy Court has ordered or may order; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty; and, provided further, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising before or after the Petition Date with respect to or in connection with such Allowed Priority Tax Claim.

**C.      Compensation of Subchapter V Trustee**

1.      Under section 330 of the Bankruptcy Code, the case-by-case Subchapter V Trustee shall be compensated for services and reimbursed for expenses. However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the plan is confirmed:

a.      The Subchapter V Trustee compensation is estimated to be $25,000

through confirmation. The Subchapter V Trustee will apply to the Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case.

b. If the plan is confirmed on a consensual basis under section 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's service ends with substantial consummation of the plan under section 1183(c)(1), and the Subchapter V Trustee may collect approved compensation for all services. The Subchapter V Trustee's allowed compensation, as with any other administrative expenses, is payable on the effective date of the plan, unless the Subchapter V Trustee agrees to a different treatment.

c. If the plan is confirmed on a non-consensual basis under section 1191(b) of the Bankruptcy Code, then the Subchapter V Trustee will remain in place throughout the life of the plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. As such, the Subchapter V Trustee may file additional or supplemental fee applications throughout the life of the plan. Upon approval of the Trustee's fee applications in a non-consensual case, as long as all professional administrative claims are similarly treated in the plan, the debtor shall pay all fee amounts due to the Trustee on the effective date of the plan, over the remaining life of the plan, or forthwith.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Subchapter V Trustee | $25,000 | Paid in full on the Effective Date, or according to separate written agreement, or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date. |
| Professional fees, as approved by the Bankruptcy Court | The Debtor Estimates the Following Administrative Expenses:<br><br>Edelboim Lieberman Revah Oshinsky PLLC: $125,000.00<br><br>Kapila Mukamal LLP: $70,000.00<br><br>Anthony T. Lepore, Esq.: $5,000.00 | Paid in full on the Effective Date,[7] or according to separate written agreement, or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date. |
| Other Administrative Expenses | Administrative Expense Claim of CMS: $4,200.00 | Paid in full on the Effective Date or according to separate written agreement. |

[7] The estimated administrative expenses in the Debtors projections takes into consideration amounts held by such professionals in retainer.

### D. Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Amount Claimed | Treatment |
|---|---|---|
| State of New Jersey (Claim No. 1) against MS: the Claim of the State of New Jersey is for a variety of pre-petition unpaid state taxes[8] | $91,472.15 (expected to be reduced to approximately $35,000.00). | Cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together with interest (payable in arrears) on the unpaid portion thereof at the existing statuary interest rate from the Effective Date through the date of payment thereof. |

### 2.2 Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|

---

[8] Debtors anticipate objecting to this Claim and believe it is misstated. Debtors' estimate that such claim will not exceed $35,000.00.

| | | | | |
|---|---|---|---|---|
| **1** | *Secured claim of*: Centric Bank (Claim 1) against Mega.<br><br>Collateral description: Centric Bank claims a blanket security interest in all of Mega's assets<br><br>Allowed Secured Amount: $787,257.47 | **NO** | Unimpaired | Monthly Payment of approximately $15,220<br><br>Payments Begin on the Effective Date<br><br>Payments End on 60th month after the Effective Date<br><br>Interest rate of 6% per annum<br><br>Maintains Lien to the same extent validity and priority that existed on the Petition Date until Plan is completed.<br><br>No additional payments required. |
| **2** | *Secured claim of*: US Small Business Administration (Claim 2) against Mega.<br><br>Collateral description: claims a blanket security interest in all of Mega's assets.<br><br>Allowed Secured Amount $512,031.85 | **NO** | Unimpaired | Monthly Payment of approximately $2,731.00<br><br>Payments Begin on pursuant to the loan document and paid over the 30-year life of the loan documents. the Effective Date<br><br>Interest rate of 3.75% per annum<br><br>Maintains Lien to the same extent validity and priority that existed on the Petition Date until loan is paid in full.<br><br>No additional payments required. |
| **3** | *Secured claim of*: Centric Bank (Claim 10) against MS.<br><br>Collateral description: Centric Bank claims a blanket security interest in all of MS's assets<br><br>Claimed Secured Amount: $5,768,904.88 | **NO** | Impaired | (A) Cash payments totaling $80,000 from Plan Sponsors, paid as follows: (i) $10,000.00 on the Effective Date; and (ii) the balance of $70,000.00 paid in equal monthly installments over the life of the Plan;<br>(B) Surrender of titles to the Plan Sponsor Properties from the Plan Sponsors on the Effective Date.<br><br>Thereafter, an allowed unsecured claim in the amount of $4,201,647.00 (an amount equal to the Claimed Secured Amount less the Cash payment amount less the Fair Market Value of the Sponsor Properties) for pro rata participation as a general unsecured creditor including participating in Litigation Trust.<br><br>Maintains Lien to the same extent validity and priority that existed on the Petition Date until Plan is completed.<br><br>No additional payments required. |

| 4 | *Secured claim of*: US Small Business Administration (Claim 3) against MS.<br><br>Collateral description: claims a blanket security interest in all of Mega's assets.<br><br>Claimed Secured Amount $505,253.75 | **NO** | Impaired | Cash payment of $10,000.00 from Plan Sponsors on the Effective Date.<br><br>Thereafter, an allowed unsecured claim in the amount of $495,254.00 (an amount equal to the Claimed Secured Amount less the Cash payment amount) for pro rata participation as a general unsecured creditor including participating in Litigation Trust.<br><br>Maintains Lien to the same extent validity and priority that existed on the Petition Date until Plan is completed.<br><br>No additional payments required. |

### B.  Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

### C.  Class of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of the Class which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
| --- | --- | --- | --- |
| 5 | *General Unsecured Creditor Class of Mega* | Impaired | Pro-rata payment of net disposable income of Mega on a monthly basis after payment of senior secured creditors in classes 1-2 as described above and pro rata distribution of interests in Litigation Trust, in full and final satisfaction of all claims.<br><br>Payments Begin on thirty days after the Effective Date through the 60th month after the Effective Date |

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | | | Interest rate: 0.00% |
| | | | Estimated percent of claim paid: 100% |
| 6 | *General Unsecured Creditor Class of MS* | Impaired | Pro-rata payment of net disposable income of MS on a quarterly basis and pro rata distribution of interests in Litigation Trust, in full and final satisfaction of all claims. |
| | | | Payments Begin on thirty days after the Effective Date and conclude after the 60th month after the Effective Date |
| | | | Interest rate: 0.00% |
| | | | Estimated percent of claim paid: 3% |

### D.      Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtors. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 10 | *Equity Interest Holders* | Unimpaired | Mr. Sciore shall retain his interest in MS. MS shall retain its interest in the Mega. |

### 2.3.      <u>Estimated Number and Amount of Claims Objections.</u>

The Debtor may object to the amount or validity of any Claim prior to the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. Until such time that the objection to the Claim is settled or adjudicated by the Bankruptcy Court, funds that are required to be paid to the holder of the Disputed Claim will be reserved by the Debtor. At this time the Debtor, believes several Claims filed that are objectionable:

(a) US Small Business Administration (Claim 2) against MS for $512,031.85 appear to have been mistakenly filed against MS in an unsecured amount rather than against Mega in a secured amount. This Claim is inconsistent with Mega's schedules and would result in a duplicative claim. Debtor anticipates objecting to such claim to eliminate duplication and clarify the treatment as secured or unsecured.

(b) Bridge Funding Cap LLC (Mega Claim 3): the Claim of Bridge Funding Cap LLC claims to be for the purchase and sale of accounts receivable but appears to be a disguised usurious loan agreement that also purports to be secured by a UCC in the amount of $185,494.37. Bridge Funding Cap LLC filed its claim untimely and Debtors anticipate objecting to same.

(c) EBF Partners, LLC d/b/a Everest Business Funding (MS Claim 4): the Claim of EBF Partners LLC claims to be for a "Purchase Agreement entitling Claimant to 15% of [MS's] 'Future Receipts' as defined in the Revenue Based Financin [sic]". Such appears to be a disguised usurious loan agreement that also purports to be secured by a UCC in the amount of $58,961.90. Moreover, on the Petition Date, MS' accounts receivable totaled zero dollars. Accordingly, MS anticipates objecting to EBF Partners, LLC as a secured creditor.

(d) Funding Metrics (MS Claim 9): the Claim of EBF Partners LLC claims to be for a the purchase and sale of future receivables. Such agreement appears to be a disguised usurious loan agreement that also purports to be secured by a UCC in the amount of $54,339.74. Moreover, on the Petition Date, MS' accounts receivable totaled zero dollars. Accordingly, MS anticipates objecting to EBF Partners, LLC as a secured creditor.

(e) State of New Jersey (MS Claim No. 1): the Claim of the State of New Jersey is for a variety of pre-petition unpaid state taxes[9] against MS in the total amount of $91,472.15. Debtors believe that the amount of the claim is misstated and should not exceed $35,000.00. Debtors anticipate objecting to such claim.

The Debtor reserves the right to object to any Claims that may have been filed or if the Debtor discovers additional information concerning the validity of any Claims, including an objection to one or more of the Junior Secured Claims.

### 2.4. Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the

---

[9] Debtors anticipate objecting to this Claim and believe it is misstated. Debtors' estimate that such claim will not exceed $35,000.00.

Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Executory Contracts shown on **Exhibit "3"** shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. **Exhibit "4"** lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults listed in **Exhibit "3"**.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

**TO THE EXTENT THERE ARE ANY EXECUTORY CONTRACTS OR LEASES REJECTED BY THE DEBTOR, ANY PROOF OF CLAIM FOR DAMAGES ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR LEASE MUST BE FILED WITH THE COURT WITHIN THIRTY DAYS AFTER THE ENTRY OF THE ORDER CONFIRMING THE PLAN.**

### 2.5. <u>Means for Implementation of the Plan.</u>

The Debtor intends to implement the Plan by raising capital from certain funding sources and by generating sufficient income from the Debtor's operations to fund the required payments to creditors.

(i) **Plan Contribution**: The Plan Sponsors will contribute $90,000.00 in cash to assist in funding the distributions to MS creditors additionally, Mr. Sciore is willing to accept a discounted salary during the life of the Plan (discount valued at approximately $1,160,000.00). In exchange for such contribution, except as otherwise provided in this Plan, the Plan Sponsors will be released by the Debtors and the Debtors' creditors who will be permanently enjoined from any efforts to collect from the Plan Sponsors for any obligations, liabilities, claims or debts. For more information concerning the release and injunction in favor of the Debtors and the Plan Sponsors, please refer to Article 7 of this Plan.

(ii) **Property Contribution**: The Plan Sponsors will contribute the Plan Sponsor Properties of an approximate value of $700,000.00 to assist in funding the distributions to certain of the MS secured creditors. In exchange for such contribution, except as otherwise provided in this Plan, the Plan Sponsors will be released by the Debtors and the Debtors' creditors who will be permanently enjoined from any efforts to collect from the Plan Sponsors for any obligations, liabilities, claims or debts. For more information concerning the release and injunction in favor of the Debtors and the Plan Sponsors, please refer to Article 7 of this Plan.

(iii) **Net Disposable Income**: Mega will commit disposable income to the fund the

Plan in the total amount of $1,470,236.00 in accordance with the Projections attached hereto as **Exhibit "5".** MS will commit disposable income to the fund the Plan in the total amount of $200,000.00 of distributions from ABC in accordance with the Projections attached hereto as **Exhibit "5".**

(iv)     **Litigation Trust**: The Debtors will create a Litigation Trust in substantially the same form as attached hereto as **Exhibit ""** with two classes of beneficiaries: (i) Mega GUC claim holders; and (ii) MS GUC claim holders. All claims and causes of action of all kinds shall be transferred to the Litigation Trust to be pursued by the Litigation Trustee for the benefit of its beneficiaries. Litigation Trust distributions shall be made consistent with the Litigation trust to the Beneficiaries pro rata with respect to each class of claim holders.

Other than litigation claims being transferred to the Litigation Trust, upon Confirmation of the Plan, all property of the Debtors, tangible and intangible, including, without limitation, licenses, accounts receivables, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtors as they were held prior to the Petition Date. The Debtors expects to have sufficient cash on hand to make the payments required on the Effective Date.

The managers and members of the respective Debtors immediately prior to the Effective Date shall serve as the initial managers and members of the Reorganized Debtors on and after the Effective Date. Each member and manager shall serve in accordance with applicable non-bankruptcy law and the Debtors' certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time, as applicable.

## 2.6.    Post-Confirmation Management.

The Post-Confirmation Officers of the Debtors, and their compensation, shall be as follows: Michael Sciore, shall serve as the Mega's CEO and president and shall receive a reduced annual salary of $168,000.00 in the first year with a 2% escalation for every subsequent year as described in the Projections. The proposed post-confirmation salary of Mr. Sciore reflects an agreed upon significantly reduced compensation from what is believed to be market rate. The difference between market rate salary, $400,000.00 and the proposed salary of $168,000.00 plus escalation – a discount of approximately $232,000.00 – reflects additional value (of approximately $1,160,000.00) being offered by the Plan Sponsors to assist in restructuring the Debtors' financial affairs.

## 2.7.    Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

## 2.8.    Risk Factors/Mitigating Factors.

There are a number of risks that are associated with the Plan, including the Debtor's inability to generate sufficient cash for confirm Confirmation, the failure of the Plan Sponsors to

make the required Plan Contribution or Property Contribution to the Plan. Finally, the Debtor's operations may not generate sufficient cash to make the required payments over the term of the Debtor's five-year Plan.

These factors are mitigated by the commitment of the Plan Sponsors to make such transfers and the anticipated delivery of deeds for the subject properties in advance of Confirmation.

### 2.9     Effectiveness of Securities, Instruments and Agreements

On the Effective Date, all documents and agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

### 2.10     Approval of Agreements

Entry of the Confirmation Order shall constitute approval of the Plan documents and all such transactions, subject to the occurrence of the Effective Date.

### 2.11     No Change of Control

Any acceleration, vesting or similar change of control rights of any Person or Entity in an arrangement with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

### 2.12     Administration After the Effective Date

After the Effective Date, the Reorganized Debtors may operate their businesses, and may use, acquire, and dispose of their property, free of any restrictions of the Code and Rules.

## ARTICLE 3
## VOTING

### 3.1     Designation of Impaired and not Impaired Classes

Classes 3, 4, 5 and 6 are impaired and are entitled to vote.

Classes 1 and 2 are unimpaired and will not vote on the Plan.

### 3.2     Voting of Claims and Equity Interests

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders

of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it. Holders of classes of claims or equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, also not entitled to vote on it. 11 U.S.C. §1126(f)-(g).

## ARTICLE 4
## PROVISIONS COVERING DISTRIBUTION, GENERAL PROVISIONS

The rights afforded in this Plan and the payments and distributions to be made hereunder shall be in exchange, satisfaction, discharge, and release of all existing claims of any kind, nature or description whatsoever against Debtors or any of its assets or properties; and, except as provided in Section 1192 of the Code, upon the Effective Date, all existing claims against the Debtors shall be, and be deemed to be, exchanged, satisfied, discharged, and released in full; and all holders of claims shall be precluded from asserting against the Debtors or their assets or properties or successors in interest, any other or further claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

The distributions that are made to the various classes of creditors hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any creditor of a senior class by reason of claimed contractual subordination rights, so that each creditor will have, receive, and retain the sole and exclusive benefit of the distributions set forth in this Plan.

Except as otherwise provided by this Plan, upon the consummation date, title to all assets and properties dealt with by this Plan shall vest in the Debtors or their successor in interest, free and clear of all claims and the Confirmation Order shall be a discharge of Debtors' liabilities, except as provided for herein.

Except as provided herein or that are transferred to the Litigation Trust on the Effective Date, Debtors reserve the right to pursue any action against third parties, including but not limited to causes of action against creditors of the estate in state court, U.S. District Court, or appellate court against third parties, including any vendor actions that may later arise.

Creditors may amend their proofs of claims prior to the Confirmation of Debtors' Plan and the actual aggregate amount of Allowed may differ significantly from the amounts used for the purposes of Debtors' estimates. As a result, Debtors reserve for themselves the right to object to all objectionable proofs of claims. The Debtors have been reviewing and analyzing Claims on an ongoing basis and has not identified any objectionable claims except as otherwise identified herein.

## 4.1 Method of Distribution Pursuant to the Type of Confirmed Plan

1. Consensual Plan - If the plan of the Debtors is confirmed under section 1191(a) of the Bankruptcy Code, the service of the trustee appointed under Subchapter V of Chapter 11 (the "Subchapter V Trustee" or "Trustee") in the case shall terminate when the Plan has

been substantially consummated. As such, the Debtors shall make all payments under the Plan (and the Litigation Trustee will make distributions under the Litigation Trust), including any deposits required by the Plan to be distributed on confirmation.

(a) Subject to Rule 9010, and except as otherwise provided herein, all distributions under a Consensual Plan shall be made by the Reorganized Debtors to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or Proof of Claim as of the distribution record date unless the Debtors or Reorganized Debtors have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b) Any payment of Cash made by the Reorganized Debtors pursuant to a Consensual Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c) Any payment or distribution required to be made under a Consensual Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d) Any distributions of Cash or other property pursuant to a Consensual Plan that is unclaimed for a period of six (6) months after the distribution date shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(e) Unless otherwise provided herein, all initial distributions and deliveries to be made on the Effective Date shall be made on the initial distribution date. Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

(f) At the close of business on the distribution record date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtors shall have no obligation to recognize any transfer of any Claims occurring after the distribution record date; provided, however, that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the distribution record date and prior to the Effective Date. The Debtors shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the distribution record date.

(g) <u>Non-Consensual or Cramdown Plan</u> - If the plan is confirmed under section 1191(b) of the Bankruptcy Code, except as otherwise provided in the plan or in the order confirming the plan, the Subchapter V Trustee shall make payments to creditors under the Plan and the Litigation Trustee will make distributions under the Litigation Trust. As such, the following provisions shall apply to all claims and disbursements made by the Subchapter V Trustee under the plan: The debtors shall file with the Court as a supplement to the plan and provide notice to all creditors at or before confirmation, a list of all the creditors who will be receiving payments under the plan, the total amount to be paid to each creditor under the plan (inclusive of all

allowed interest and fees) and the payment terms and schedule for each creditor under the plan.

(h)     The debtors shall timely pay to the Trustee all funds needed to make payments to creditors under the plan. If the debtors fail to timely make any plan payment to the Trustee, the Trustee may file and serve a notice of delinquency upon the debtor and the debtor's attorney. The debtors shall have 45 days from the date of the notice of delinquency to make all payments due under the plan, including any payments that become due within the 45-day period. If the debtors are seeking to cure the delinquency in a modified plan the debtors must file a motion to modify the confirmed plan within 45 days of the date of the notice of delinquency. If the debtors are not current with plan payments on the 45th day after the date of the notice of delinquency or has not filed a motion to modify within that time period, the Trustee will file and serve a report of non−compliance and may thereafter seek the dismissal or conversion of the case to Chapter 7.

(i)     Within two (2) weeks of receiving the funds from the debtors to make the plan payments, the Trustee will disburse the amounts collected from the Debtors, to the holders of allowed claims pursuant to the treatment in their respective classes and as indicated below:

(i)  All payments under the plan will be made by the Trustee to the holder of each allowed claim at the address of such holder as listed on the Schedules and/or Proof of Claim, unless the Trustee has been notified in writing of a change of address.

(ii)  Any payment required to be made under the plan on a day other than a business day shall be made on the next succeeding business day.

(iii)  Any distributions of cash or other property under the plan that is unclaimed for a period of six (6) months after such distribution was made shall constitute unclaimed property and any entitlement of any holder of any claim to such distribution shall be extinguished, forever barred, and shall be returned to the Debtor.

(iv)  Claimants shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the confirmation date without leave of the Bankruptcy Court. Any amendment to a claim filed after the later of the claims bar date or the confirmation date shall be deemed disallowed in full and expunged without any action by the Trustee unless the claimholder has obtained prior Court authorization for the filing of such amendment. The Trustee shall have no obligation to recognize any transfer of any claim after distributions have started.

(v)  Unless expressly provided in the plan or the confirmation order, post-petition interest and fees shall not accrue on or after the

Petition Date on account of any claim.

(j)     During the pendency of this case, the debtor shall provide copies of yearly income tax returns to the Trustee (but not file with the Court) no later than 30 days after the due date to the underlying taxing authority.

### 4.2     No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the subchapter V Trustee, the Disbursing Agent, the Debtors, the Reorganized Debtors, the Equity Security Interests or any of its current managers, officers, directors, employees, counsel, advisor, respective professionals, consultants, or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. **THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS**.

### 4.3     Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law.

After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 4.4     Post-Petition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

### 4.5     Unclaimed Distributions

Upon return of any plan distribution made pursuant to Section 1191(a) of the Code by the Debtors or their agents, Debtors shall issue letter correspondence to the last known address indicated on Debtors' schedules or applicable proof of claim. Debtors' correspondence shall

include a check for the applicable Plan Payment and provide all necessary case information to enable Creditor's determination of the applicability of Debtors' plan payment. Any payments made pursuant to Plan that are unclaimed for a period of six (6) months shall be forfeited by the holder and will be re- deposited in the Disbursing Agent's account in accordance with 11 U.S.C. §347(b).

**ARTICLE 5**
**FEASIBILITY OF PLAN**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

**5.1 Ability to Initially Fund Plan**.

The Debtors believe that they will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are included in **Exhibit "5"**.

**5.2 Ability to Make Future Plan Payments And Operate Without Further Reorganization**.

The Debtors must also show that it will have enough cash over the life of the Plan to make the required Plan Payments. The Debtors have provided projected financial information to its Financial Advisors and that prepared the Projections. The Projections are attached as **Exhibit "5".** The Projections show that Mega's expected cash flow, after paying operating expenses and that Mega will have sufficient net cash to pay the Funds From Operations. Likewise, MS' Projections from distributions from ABC reflect sufficient funds to make all required payments under this Plan. The final payment is expected to be paid 60 months after the Effective Date.

A. Year 1 (2022-23): Mega will make distributions to its Creditors in the total amount of $249,102.00 to fund the required Plan Payments.

B. Year 2 (2023-24): Mega will make distributions to its Creditors in the total amount of $270,799.00 to fund the required Plan Payments.

C. Year 3 (2024-25): Mega will make distributions to its Creditors in the total amount of $293,259.00 to fund the required Plan Payments.

D. Year 4 (2025-26): Mega will make distributions to its Creditors in the total amount of $316,507 to fund the required Plan Payments.

E. Year 5 (2026-27): Mega will make distributions to its Creditors in the total amount of $340,569.00 to fund the required Plan Payments.

F. MS will make quarterly distributions of $10,000.00 over the life of the plan and the Plan Sponsors will be contributing $90,000.00 for total Plan payments of $290,000.00.

The available Funds From Operations of Mega that are reflected on the Projections total **$1,470,236**.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 6
## LIQUIDATION VALUATION

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit "6".**

## ARTICLE 7
## DISCHARGE, INJUNCTION AND SATISFACTION OF LIENS

**7.1**     **Discharge**. This Plan, if confirmed under Section 1191(a) of the Bankruptcy Code, provides that upon the Effective Date, Debtors shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in Section 1141(d)(6) of the Bankruptcy Code. However, any obligations imposed by the Plan will not be discharged.

**7.2**     **Release and Injunction**.

**Upon the Effective Date of the Plan, and payment of the initial distribution required on the Effective Date, all Persons who have been, are or may be holders of Claims (including Late Filed Claims) against the Debtors or the Released Parties, are permanently enjoined and forever barred from taking any actions or asserting any claims, obligations, liabilities, debts, demands or causes of action that are against or that affect the Debtors, or the Reorganized Debtors, the Subchapter V Trustee, the Disbursing Agent, the Plan Sponsors and each of their parents, subsidiaries, affiliates, shareholders, members, officers, directors, trustees, professionals, attorneys, advisors, relatives, heirs, beneficiaries, executors, personal representatives, officers, directors, principals and agents, *(the "Released Parties"), or any of their respective property* on account of such Claims or Equity Security Interest (other than actions brought to enforce any rights or obligations under the Plan) for any and all Claims that arose or existed prior to the Confirmation of the Plan, including without limitation:**

**(i)**     **The filing, commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, or any of the Released Parties or against any of the property of the Debtor or the Released Parties;**

**(ii)**     **Enforcing, levying, attaching (including, without limitation, any prejudgment**

attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment award, decree or other Order against the Debtor, or any of the Released Parties or against any of the property of the Debtor or the Released Parties;

(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any liens or encumbrances against the Debtor, or any of the Released Parties, or against any of the property of the Debtor or the Released Parties;

(iv) Setting-off, seeking reimbursement or contribution from or subrogation against or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to the Debtor, or the Released Parties or any property of the Debtor or the Released Parties; and

(v) Proceeding in any manner and any place with regard to liquidating any Claim in any forum other than United States Bankruptcy Court for the Southern District of Florida or, if that Court does not have jurisdiction thereon, in the United States District Court for the Southern District of Florida, or in such forum deemed appropriate by the Debtor.

The foregoing release and injunction shall specifically apply to any Claim by Centric against the Debtor, the Plan Sponsors and the Released Parties.

**7.3** **Release of Liens/Encumbrances**. Unless expressly excluded herein, upon completion of the Plan Payment required by the Debtor under this Plan, all creditors holding Claims shall prepare, file, record all documents required to release any and all liens, claim or encumbrance it has against the Debtor and the Released Parties assets, including without limitation, any and all termination statements with the Secretary of State, releases of liens or mortgages in the applicable counties or municipalities, and filing satisfaction of judgments.

## ARTICLE 8
## CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 8.1 Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived.

(i) The Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and include, among other things, a finding of fact that the Debtors and the Reorganized Debtors, acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions;

(ii) The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iii) If the Plan is confirmed under Section 1191 (a) of the Code, that the statutory fees owing to the Subchapter V Trustee shall have been paid in full; and

(iv) All other actions, authorizations, filings, consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

## 8.2    **Effect of Failure**

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (l) constitute a waiver or release of any Action by, or Claims against, the Debtor or (2) prejudice in any manner the rights of the Debtor.

## 8.3   **Waiver of Conditions**

The Debtors may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth herein. The Debtors may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

## ARTICLE 9
## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) ,1142, 1183, 1185 and 1193 of the Code and for, among other things, the following purposes:

A.        Determination of all issues and disputes regarding title to property of the estate, and determination of all causes of action, controversies, duties or conflicts, whether or not subject to litigation or proceedings pending as of the Confirmation date, between the Debtor and any other party, including but not limited to, any right of the Debtors to recover assets pursuant to the provisions of the Code and Rules.

B.        Fix allowances of compensation and reimbursement of expenses pursuant to §330 of the Code.

C.       Correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Order of Confirmation as may be necessary or appropriate to carry out the purposes and intent of this Plan.

D.       Determine pending applications for the assumption or rejection of executory contracts and unexpired leases under §365 of the Code and determine the allowance of Claims resulting therefrom.

E.       To consider any amendments or modifications to this Plan as allowed by section 1193 of the Code.

F.       To issue such orders as are necessary or appropriate to carry out the provisions of this Plan, including without limitation the appointment of a person pursuant to F.R.C.P. Rule 70 and Rule 7070 of the Rules to act, execute and deliver documents on behalf of the Debtor to implement and consummate this Plan.

G.       To enjoin the interference with the implementation and consummation of the Plan, and to impose sanctions for any such interferences in accordance with Article VII herein.

H.       To liquidate damages in connection with any disputed, contingent or unliquidated
      claims.

I.       To hear and determine all controversies and disputes that may arise in connection with this Subchapter V, Chapter 11 case and in connection with the interpretation and implementation of the Plan.

J.       To determine any and all applications, adversary proceedings or contested matters pending on the Confirmation Date and arising under Chapter 11 of the Code or arising in or related to the Debtors' reorganization cases under Chapter 11 and Title 11 of the Code.

K.       For such other matters as may be set forth in the Order of Confirmation.

## ARTICLE 10
## GENERAL PROVISIONS

### 10.1   Title to Assets

Except as otherwise provided in the Plan or in the order confirming the Plan:(i) confirmation of the Plan vests all of the property of the estate (except litigation claims) in the Debtors, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

### 10.2 **Binding Effect**

If the Plan is confirmed, the provisions of the Plan will bind the Debtors and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 10.3 **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 10.4 **Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 10.5 **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 10.6 **Effectuating Documents and Further Transactions**

The Debtors or Reorganized Debtors, as the case may be, are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 10.7 **Post-Effective Date Fees and Expenses**

From and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Court, pay, with the exception of the Subchapter V Trustee, the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 10.8 **Amendment or Modification of Plan**

Alterations or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date in conformity with Section 1193(a) of the Bankruptcy Code,

provided that the plan, as altered amended or modified satisfies the conditions of sections 1122, 1123, 1181 and 1191 of the Code. If the Plan was confirmed under 1191(a) of the Code, the Plan may be altered or modified by the Debtors after the Confirmation Date but before substantial consummation of the Plan in conformity with Section 1193(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, and the circumstances warrant such alterations, amendments or modifications. If the Plan was confirmed under section 1191(b), then pursuant to section 1193(c), the Plan may be modified within 3 years, or such time not to exceed 5 years as the court may set, and after notice and a hearing, confirms the Plan, as altered, amended or modified, and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Debtors, without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

### 10.9 **Severability**

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 10.10 **Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Debtors shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 10.11 **No Admissions**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

### 10.12  Substantial Consummation

The Plan shall be deemed to be substantially consummated under sections 1101 and 1193 of the Code upon commencement of Effective Date.

### 10.13  Inconsistency

In the event of any inconsistency between the Plan and any Exhibit to the Plan or the any other instrument or document created or executed pursuant to the Plan, the text of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 10.14  Remedy of Defects

After the Effective Date, the Reorganized Debtors may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtors.

## ARTICLE 11
## CONCLUSION

The aforesaid provisions shall constitute the Joint Combined Plan of Reorganization of the Debtors. This Plan, when approved and confirmed by the Bankruptcy Court, shall be deemed binding on the Debtors, all creditors, and all parties in interest and their successors and assigns in accordance with 11 U.S.C. §1141.

## ARTICLE 12
## DEFINITIONS

The definitions and rules of construction set forth in sections 101 (as amended by Subchapter V) and 102 of the Code shall apply when those terms are used in this Plan, supplemented by the following definitions:

**"Administrative Creditor"** shall mean any creditor entitled to payment of an Administrative Expense Claim.

**"Administrative Expense"** shall mean any cost or expense of administration of this Estate allowed by the Court pursuant to Section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate and any actual and necessary expenses of operating the business of the Debtor.

**"Allowed Amount"** shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or

unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such claim after the Filing Date.

**"Allowed Claims"** shall mean a claim (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), and which is not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003, or by order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. Allowed claim shall not include interest on the principal amount of such claim subsequent to the Petition Date, except as may be otherwise provided herein.

**"Allowed Priority Tax Claim**" shall mean a Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**"Allowed Secured Claim"** means an Allowed Claim secured by the Property in an amount equal to the lesser of the Allowed Claim of that creditor or the value of the Property, as determined by the Court pursuant to 11 U.S.C. § 506, minus the amount of any Allowed Claim secured by a senior lien against the same Property, unless the holder of the claim elects pursuant to § 1111(b) in which event the Allowed Secured Claim shall be equal to the Allowed Claim.

**"Allowed Unsecured Claim"** shall mean an Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**"Article"** shall mean one of the numbered Articles of the Plan.

**"Ballot"** shall mean the ballot accompanying the Plan upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

**"Ballot Deadline"** shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

**"Bankruptcy Code" or "Code"** means Title I of the Bankruptcy Reform Act of 1978, as Amended, 11 U.S.C. Section 101, et seq.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to cases pending before the Bankruptcy Court.

**"Business Day"** shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Miami, Florida are authorized or required to close.

**"Cash"** shall mean cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

**"Chapter 11 Case or Case"** This case under chapter 11 of the Bankruptcy Code in which MS and Mega are the Debtors-in-Possession.

**"Causes of Action"** means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to: (i) the claims for listed in Debtors' Schedules; and (ii) the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548,549,550,551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtors, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtors not otherwise approved by the Bankruptcy Court; provided, however, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

**"Claim"** shall have the meaning as set forth in 11 U.S.C., §101 and include any right to payment

or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

**"Class"** shall mean a group of Claims or Equity Interests classified together pursuant to Article II of the Plan.

**"Confirmation Date"** shall mean the date upon which the Order confirming the Plan is entered by the Court in accordance with the provisions of Chapter 11, as amended by Subchapter V of the Code.

**"Confirmation Hearing"** shall mean the hearing to be held consider confirmation of the Plan.

**"Confirmation Order"** shall mean an Order entered by the Bankruptcy Court, District Court, or other appellate Court confirming this Plan.

**"Consummation Date"** shall mean the date on which the Confirmation Order becomes a Final Order.

**"Creditor"** shall mean the holder of an allowed Claim.

**"Debtors"** shall mean Mega and MS, the above captioned Debtors under Subchapter V of Chapter 11 of the Code.

**Disputed Claim:** Any claim against the Debtors pursuant to Section 502 of the Code that the Debtors have in any way objected to, challenged or otherwise disputed.

**"Distributions"** shall mean the property required by the Plan to be distributed to the holders of Allowed Claims.

**"Effective Date"** shall mean the later of 30 days after the Confirmation Order becomes final and not appealable.

**"Equity Interest"** shall mean any interest in Mega represented by interests of MS, and the ownership interests of Mr. Michael Sciore in MS.

**"Executory Contracts"** shall mean all unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**"Final Order"** shall mean an order or a judgment of the Court which has not been stayed and as to which order or judgment (or any revisions, modification or amendment thereof) the time to appeal or seek review or rehearing has expired.

**"Funds From Operations"** shall mean the disposable income that is generated from the operation of Mega's business in the total amount of $1,530,831 set forth in the Projections.

**"Impaired Claim"** shall mean any class of creditors whose claims are impaired by payments as proposed in this Plan, in accordance with 11 U.S.C. §1124.

**"Litigation Trust"** shall mean that certain litigation trust created for the benefit of unsecured and under secured creditors of the Debtors and administered pursuant to the trust agreement attached hereto as Exhibit "7".

**"Liquidating Trustee"** shall mean that certain person appointed by the Debtors to administer the Liquidating Trust and shall be identified at least 10 days prior to the hearing on confirmation of this Plan.

**"Person"** or **"Persons"** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof or other entity.

**"Petition Date"** shall mean March 25, 2022, the date on which the Debtors filed their voluntary Chapter 11 Petition with the Court.

**"Plan"** shall mean this Chapter 11, Subchapter V Plan of Reorganization in its present form or as may hereafter be amended, modified or supplemented in accordance with the terms hereof or in accordance with the Code.

**"Plan Funding Sources"** shall mean the means for implementing the Plan, provided for in Section 2.5 of this Plan including (a) the Plan Sponsor Contribution, (b) the Plan Sponsor Property Contribution, (c) the Litigation Trust and (d) the Funds From Operations.

**"Plan Proponent"** shall mean the Debtors.

**"Plan Sponsor"** shall mean the Debtors, La Bella Vita, LLC, America's Business Capital, LLC, Michael Sciore, and Marie Angie Hernandez Sciore.

**"Plan Property Contribution"** shall mean the contribution of certain parcels of real property by the Plan Sponsors or their affiliates, to fund this Plan in accordance with Section 2.5 of the Plan, by quit claim deed without any representations or warranties and subject to all claims, liens and encumbrances.

**"Plan Sponsor Contribution"** shall mean the $90,000.00 gift by the Plan Sponsors to fund this Plan in accordance with Section 2.5 of the Plan and Mr. Sciore's discounted salary during the life of the Plan (discount valued at approximately $1,160,000.00).

**"Priority Claim"** shall mean any claim, other than administrative expense or a tax claim, to the extent entitled to priority in payment under 11 U.S.C. §507(a).

**"Priority Creditor"** shall mean any creditor that is the holder of a priority claim.

**"Priority Non-Tax Claim"** shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(3), (4), (5), (6), or (7).

**"Priority Tax Claim"** shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. § 507(a)(8).

**"Projections"** shall mean the Debtors' financial projections attached as Exhibit "5" to this Plan.

**"Pro Rata"** shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed Unsecured Claim or Disputed Equity Interest has not been finally resolved, an appropriate reserve for payment of such Disputed Unsecured Claim or Disputed Equity Interest shall be established so that there will be sufficient consideration to make a Pro Rata distribution to the holder of such Disputed Unsecured Claim or Disputed Equity Interest upon final resolution of the dispute.

**"Professional Person"** mean attorneys, accountants, appraisers or other professionals within the meaning of Section 327 of the Bankruptcy Code, as amended by Section 1195(a) employed with the approval of the Bankruptcy Court.

**"Reorganized Debtors"** means MS and Mega after the Effective Date.

**"Rules"** shall mean the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules as adopted by the Court.

**"Schedules"** shall mean Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**"Secured Claim"** means any Claim that is secured pursuant to Section 506 of the Bankruptcy Code.

**"Secured Creditor"** means any Creditor that holds a Secured Claim.

**"Subchapter V"** means Subchapter V of Chapter 11 of the Code.

**"Subchapter V Trustee"** shall mean Amy Denton Harris, the duly appointed Subchapter V Trustee in the Bankruptcy Case.

**"Tax Creditor"** means any creditor that holds a tax claim.

**"Unimpaired Claim"** shall mean any class of creditors whose claim are not impaired under the Plan in accordance with 11 U.S.C. §1124.

**Fill in this information to identify the case:**

Debtor name    **Mega Philadelphia, LLC**

United States Bankruptcy Court for the:    MIDDLE DISTRICT OF FLORIDA

Case number (if known)    **22-00340-FMD**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

| | |
|---|---|
| **2.** List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. | |

| | Column A | Column B |
|---|---|---|
| | **Amount of claim**<br>Do not deduct the value of collateral. | **Value of collateral that supports this claim** |

---

| 2.1 | **Centric Bank** | Describe debtor's property that is subject to a lien | **$287,274.08** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**4320 Linglestown Road**
**Philadelphia, PA 19172**

Creditor's mailing address

**Describe the lien**
**SBA Loan**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**
**X132**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☑ Unliquidated
☑ Disputed

---

| 2.2 | **Centric Bank** | Describe debtor's property that is subject to a lien | **$449,218.89** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**4320 Linglestown Road**
**Philadelphia, PA 19172**

Creditor's mailing address

**Describe the lien**
**Loan**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**
**X171**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

---

**Schedule D: Creditors Who Have Claims Secured by Property**

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Mega Philadelphia, LLC** | | Case number *(if known)* | **22-00340-FMD** |
|---|---|---|---|---|
| | Name | | | |

�an ☐ Contingent
☐ Unliquidated
☑ Disputed

☑ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

---

| 2.3 | **GTR Source, LLC** | Describe debtor's property that is subject to a lien | **Unknown** | **$0.00** |
|---|---|---|---|---|
| | Creditor's Name | **Notice Only** | | |

**1006 Monmouth Avenue
Lakewood, NJ 08701**
Creditor's mailing address

Describe the lien

Is the creditor an insider or related party?

☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an
interest in the same property?**

☑ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

As of the petition filing date, the claim is:
Check all that apply

☐ Contingent
☐ Unliquidated
☑ Disputed

---

| 2.4 | **SBA EIDL** | Describe debtor's property that is subject to a lien | **$500,000.00** | **$0.00** |
|---|---|---|---|---|
| | Creditor's Name | | | |

**14925 Kingsport Road
Fort Worth, TX 76155**
Creditor's mailing address

Describe the lien

Is the creditor an insider or related party?

☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**
**2272**

**Do multiple creditors have an
interest in the same property?**

☑ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

As of the petition filing date, the claim is:
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | **$1,236,492.97** |
|---|---|---|

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

| Debtor | **Mega Philadelphia, LLC** | Case number (*if known*) | **22-00340-FMD** |
|--------|----------------------------|--------------------------|------------------|
|        | Name                       |                          |                  |

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|-------------------|-------------------------------------------------------------|--------------------------------------------------|
| **USBA**<br>**2 North 20th Street, Suite 3**<br>**Birmingham, AL 35203** | Line __2.4__ | |

**Fill in this information to identify the case:**

Debtor name   **Mega Philadelphia, LLC**

United States Bankruptcy Court for the:   MIDDLE DISTRICT OF FLORIDA

Case number (if known)   **22-00340-FMD**

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                     12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

| Part 1: | List All Creditors with PRIORITY Unsecured Claims |
|---|---|

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ☑ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | Total claim | Priority amount |
|---|---|---|---|

| 2.1 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** | **$0.00** |
|---|---|---|---|---|

**2.1**

Priority creditor's name and mailing address
**Camden Tax Collector**
**520 Market Street**
**Camden, NJ 08102**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Total claim **Unknown**   Priority amount **$0.00**

Date or dates debt was incurred

Basis for the claim:
**Notice Purposes**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (1)

Is the claim subject to offset?
☑ No
☐ Yes

**2.2**

Priority creditor's name and mailing address
**City of Camden**
**P.O. Box 95120**
**Camden, NJ**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☑ Unliquidated
☑ Disputed

Total claim **Unknown**   Priority amount **$0.00**

Date or dates debt was incurred

Basis for the claim:
**Disputed Lease**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (9)

Is the claim subject to offset?
☐ No
☑ Yes

| Debtor | **Mega Philadelphia, LLC** | | Case number (if known) | **22-00340-FMD** |
|---|---|---|---|---|
| | Name | | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|

**Internal Revenue Service**
**Centralized Insolvency Opera**
**Post Office Box 7346**
**Philadelphia, PA 19101-7346**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Notice Only**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **$15,000.00** |
|---|---|---|---|---|

**New Jersey State Tax**
**Division of Taxation**
**P.O. Box 281**
**Trenton, NJ 08695**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Notice Purposes**

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3.  List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | **Amount of claim** |
|---|---|---|

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$0.00** |
|---|---|---|---|

**A-aware Software**
**P.O. Box 1167**
**Frisco, TX 75034**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Notice Only**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Anderson Kill PC**
**c/o Arthur J. Gillis**
**STA International**
**225 Boradhollow Rd, Ste 150**
**Melville, NY 11747**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Notice Only**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$19,400.00** |
|---|---|---|---|

**ASCAP**
**P.O. Box 70547**
**Chicago, IL 60673**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Mega Philadelphia, LLC** | | Case number *(if known)* | **22-00340-FMD** |
|---|---|---|---|---|
| | Name | | | |

| 3.4 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
|---|---|---|---|

**Ask Punter, LLC_IT**
**25 Mystery Rose Lane**
**West Grove, PA 19390**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Notice Only**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.5 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $70,000.00 |
|---|---|---|---|

**Blue Vine**
**41 Warren Street**
**Suite 300**
**Redwood City, CA 94063**

☐ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $95,000.00 |
|---|---|---|---|

**BMI**
**7 World Trade Center**
**New York, NY 10007**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Music Licensing**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
|---|---|---|---|

**Broadcast Electronics**
**4100 North 24t Street**
**Quincy, IL 62305**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Notice Only**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $5,000.00 |
|---|---|---|---|

**Centric Bank**
**4320 Linglestown Raod**
**Harrisburg, PA 17113**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number  **3342**

Basis for the claim:  **Credit Card**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $140,000.00 |
|---|---|---|---|

**Chrome Capital**
**456A Central Avenue, Ste 139**
**Cedarhurst, NY 11516**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.10 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
|---|---|---|---|

**Comcast**
**P.O. Bo 70219**
**Philadelphia, PA 19176**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim:  **Notice Only**

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Mega Philadelphia, LLC** | Case number (if known) | **22-00340-FMD** |
|---|---|---|---|
| | Name | | |

---

| 3.11 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|

**Duane Morris**
30 S.  17th Street
Philadelphia, PA 19103

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _Noitce Only_

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.12 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$0.00** |
|---|---|---|---|

**Effico BIlling Software**
90 Eastgate Drive
Washington, IL 61571

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _Notice Only_

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.13 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$10,935.01** |
|---|---|---|---|

**Federal Communications Commi**
45 L Street NE

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _Annual Licensing Fee_

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.14 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|

**Flaster Greenberg**
1810 Chapel Avenue
Cherry Hill, NJ 08002

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _Notice Only_

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.15 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|

**Franklin Funding**
211 Boulevard of the America
Lakewood, NJ 08701

☐ Contingent
■ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.16 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|

**Fundbox**
6900 Dallas Parkwaay
Suite 700
Plano, TX 75024

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.17 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$120,000.00** |
|---|---|---|---|

**Green Capital Funding, LLC**
1 Everhurst Plaza Jersey Cit
Jersey City, NJ 07302

☐ Contingent
☐ Unliquidated
■ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Mega Philadelphia, LLC** | Case number (if known) | **22-00340-FMD** |
|---|---|---|---|
| | Name | | |

---

| 3.18 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$31.49** |

**Haworth Marketing**
**Nations Account- McGavern**
**1655 Palm Beach Lakes Blvd,**
**9th Floor 903**
**West Palm Beach, FL 33401**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Notice Only__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.19 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$4,800.00** |

**Hutchinson Air Conditioning**
**621 Chapel Avenue**
**Cherry Hill, NJ 08034**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.20 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |

**Influx Capital, LLC**
**211 Bouldevard of Americas**
**Suite 206**
**Lakewood, NJ 08701**

☐ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ☐ No ☐ Yes

---

| 3.21 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$300.00** |

**Intertech Media**
**P.O. Box 22677**
**New York, NY 10087**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Notice Only__

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.22 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |

**ML Factors**
**428 Central Avenue**
**Cedarhurst, NY 11516**

■ Contingent
■ Unliquidated
■ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.23 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$39,912.00** |

**Nielson Audio**
**P.O. Box 3278**
**Carol Stream, IL 60132**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.24 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |

**Royer Cooper Cohen Braunfeld**
**100 North 18th Street, Suite**
**Philadelphia, PA 19103**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Last 4 digits of account number _

Basis for the claim: __Notice Only__

Is the claim subject to offset? ■ No ☐ Yes

---

Debtor    **Mega Philadelphia, LLC**
         Name

Case number (if known)    **22-00340-FMD**

| | | |
|---|---|---|
| 3.25 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply.    **$7,800.00** |

**Townsquare Media**
**950 Tilton Road, Suite 200**
**Northfield, NJ 08225**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

---

| | | |
|---|---|---|
| 3.26 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply.    **$0.00** |

**Verizon Wireless**
**P.O. Box 16801**
**Newark, NJ 07101**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __**Notice Only**

Is the claim subject to offset? ■ No ☐ Yes

---

| | | |
|---|---|---|
| 3.27 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply.    **Unknown** |

**Weir & Partners LLP**
**Bonnie Golub**
**The Widener building, Suite**
**1339 Chestnut St.**
**Philadelphia, PA 19107**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __**Notice Only**

Is the claim subject to offset? ■ No ☐ Yes

---

| | | |
|---|---|---|
| 3.28 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply.    **$48,000.00** |

**WIBG Rebroadcast Lease**
**3328 Simpon Avenue**
**Ocean City, NJ 08226**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Last 4 digits of account number __

Basis for the claim: __

Is the claim subject to offset? ■ No ☐ Yes

---

| Part 3: | List Others to Be Notified About Unsecured Claims |
|---|---|

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | **Verizon**<br>**P.O. Box 15124**<br>**Albany, NY 12212** | Line  **3.26**<br><br>☐ Not listed. Explain ____ | _ |

---

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---|---|

5. Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. $ | 0.00 |
| 5b. Total claims from Part 2 | 5b. + $ | 561,178.50 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. $ | 561,178.50 |

**Fill in this information to identify the case:**

Debtor name    **M.S. Acquisitions & Holdings, LLC**

United States Bankruptcy Court for the:    MIDDLE DISTRICT OF FLORIDA

Case number (if known)    **22-00341-FMD**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property    **12/15**

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

   ☐ Yes. Fill in all of the information below.

**Part 1:**    **List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A | Column B |
|---|---|---|---|
| | | **Amount of claim**<br>Do not deduct the value of collateral. | **Value of collateral that supports this claim** |
| **2.1**   **Centric Bank**<br>Creditor's Name | Describe debtor's property that is subject to a lien | **$1,494,374.95** | **$0.00** |

**4320 Linglestown Road**
**Harrisburg, PA 17112**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
☐ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**
**X460**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

---

| **2.2**   **Centric Bank**<br>Creditor's Name | Describe debtor's property that is subject to a lien | **$2,557,346.33** | **$0.00** |
|---|---|---|---|

**4320 Linglestown Road**
**Philadelphia, PA 19172**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**
**X353**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| Debtor | **M.S. Acquisitions & Holdings, LLC** | | Case number (if known) | **22-00341-FMD** |
| --- | --- | --- | --- | --- |
| | Name | | | |

■ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

☐ Contingent
☐ Unliquidated
■ Disputed

| 2.3 | **Funding Metrics, LLC** | Describe debtor's property that is subject to a lien | **Unknown** | **$0.00** |
| --- | --- | --- | --- | --- |
| | Creditor's Name | | | |

**684 Town Center Drive**
**Haverford, PA 19041**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**

■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**

■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**

■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | **$4,051,721.28** |
| --- | --- | --- |

**Part 2:** **List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
| --- | --- | --- |
| **Brian Patrick Hall**<br>**1105 W. Peachtree Street**<br>**Suite 300**<br>**Atlanta, GA 30309** | Line  **2.1** | |
| **Phillip Berger**<br>**919 Conestega**<br>**Building 3, Suite 114**<br>**Bryn Mawr, PA 19010** | Line  **2.1** | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                                Best Case Bankruptcy

Fill in this information to identify the case:

Debtor name     **M.S. Acquisitions & Holdings, LLC**

United States Bankruptcy Court for the:     MIDDLE DISTRICT OF FLORIDA

Case number (if known)     **22-00341-FMD**

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims
12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).
   ☐ No. Go to Part 2.
   ☑ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>**Internal Revenue Service**<br>**Centralized Insolvency Opera**<br>**Post Office Box 7346**<br>**Philadelphia, PA 19101-7346** | $0.00 | $0.00 |

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Notice Only**

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

| | | Total claim | Priority amount |
|---|---|---|---|
| **2.2** | Priority creditor's name and mailing address<br>**New Jersey Division of Taxation**<br>**Revenue Processing Center**<br>**P.O. BOX 257**<br>**Trenton, NJ 08646** | $1,927.65 | $1,927.65 |

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)

| Debtor | **M.S. Acquisitions & Holdings, LLC** | | Case number (if known) | **22-00341-FMD** |
|---|---|---|---|---|
| | Name | | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,000.00 | $10,000.00 |
|---|---|---|---|---|

Priority creditor's name and mailing address

**State of New Jersey**
**3 John Fitch Way**
**Trenton, NJ 08611**

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (1)

■ No
☐ Yes

---

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $8,277.50 |
|---|---|---|---|

Nonpriority creditor's name and mailing address

**Anderson Kill PC**
**c/o Arthur J. Gillis**
**STA International**
**225 Boradhollow Rd, Ste 150**
**Melville, NY 11747**

Date(s) debt was incurred

Last 4 digits of account number  9019

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset?  ■ No  ☐ Yes

| 3.2 | Nonpriority creditor's name and mailing address | | $2,000.00 |
|---|---|---|---|

**Capital One**
**P.O. Box 30285**
**Salt Lake City, UT 84130**

Date(s) debt was incurred _

Last 4 digits of account number  3526

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset?  ■ No  ☐ Yes

| 3.3 | Nonpriority creditor's name and mailing address | | $170,000.00 |
|---|---|---|---|

**Duane Morris**
**30 S.  17th Street**
**Philadelphia, PA 19103**

Date(s) debt was incurred _

Last 4 digits of account number

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset?  ■ No  ☐ Yes

| 3.4 | Nonpriority creditor's name and mailing address | | $60,000.00 |
|---|---|---|---|

**Evererst Funding**
**8200 NW 52nd Terrace**
**2nd Floor**
**Miami, FL 33166**

Date(s) debt was incurred _

Last 4 digits of account number

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset?  ■ No  ☐ Yes

| 3.5 | Nonpriority creditor's name and mailing address | | $30,000.00 |
|---|---|---|---|

**Flaster Greenberg**
**1810 Chapel Avenue**
**Cherry Hill, NJ 08002**

Date(s) debt was incurred _

Last 4 digits of account number

As of the petition filing date, the claim is: *Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset?  ■ No  ☐ Yes

---

| Debtor | **M.S. Acquisitions & Holdings, LLC** | Case number *(if known)* | **22-00341-FMD** |
|---|---|---|---|
| | Name | | |

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$109,000.00** |
|---|---|---|---|

**Forward Line**
**3000 Plumpic Blvd**
**Bldg 4**
**Santa Monica, CA 90404**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$23,000.00** |
|---|---|---|---|

**Harvest Small Buiness Finance**
**2442 Avenida De La Carlota**
**Suite 232**
**Laguna Hills, CA 92653**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **PPP Loan**

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$25,000.00** |
|---|---|---|---|

**Lendini**
**3220 Tillman Drive**
**Suite 200**
**Bensalem, PA 19020**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$57,000.00** |
|---|---|---|---|

**Royer Cooper Cohen Braunfeld**
**100 North 18th Street, Suite**
**Philadelphia, PA 19103**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.10 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$500,000.00** |
|---|---|---|---|

**SBA Loan**
**14925 Kingsport Road**
**Fort Worth, TX 76155**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **EIDL Loan**

Last 4 digits of account number  **8001**

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.11 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$40,000.00** |
|---|---|---|---|

**Weir & Partners LLP**
**Bonnie Golub**
**The Widener building, Suite**
**1339 Chestnut St.**
**Philadelphia, PA 19107**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |
|---|---|

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

| **Part 4:** | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

Debtor   **M.S. Acquisitions & Holdings, LLC**
_____
Name

Case number (if known)   **22-00341-FMD**
_____

**5.  Add the amounts of priority and nonpriority unsecured claims.**

| | | Total of claim amounts |
|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $ 11,927.65 |
| **5b. Total claims from Part 2** | 5b. + | $ 1,024,277.50 |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ 1,036,205.15 |

**"Unsecured Claim"** shall mean all claims other than administrative expense claims, secured claims, priority claims, and tax claims.

**"Unsecured Creditor"** means any creditor that is the holder of an Unsecured Claim.

Respectfully submitted,

**EDELBOIM LIEBERMAN OSHINSKY PLLC**
*Counsel for the Debtors*
20200 W. Dixie Highway, Suite 905
Miami, FL 33180
Telephone: (305) 768-9909
Facsimile: (305) 928-1114
Email: brett@elrolaw.com

By:*/s/ Brett D. Lieberman*
Brett D. Lieberman (FBN 69583)

Exhibit "1"

| Fill in this information to identify the case: |
|---|
| Debtor name **Mega Philadelphia, LLC** |
| United States Bankruptcy Court for the:   MIDDLE DISTRICT OF FLORIDA |
| Case number (if known)   **22-00340-FMD** |

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property       12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
|---|---|

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1** **Centric Bank**<br>Creditor's Name | Describe debtor's property that is subject to a lien | **$287,274.08** | **$0.00** |

**4320 Linglestown Road
Philadelphia, PA 19172**

Creditor's mailing address

Describe the lien
**SBA Loan**
**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number
X132**

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
■ Unliquidated
■ Disputed

---

| **2.2** **Centric Bank**<br>Creditor's Name | Describe debtor's property that is subject to a lien | **$449,218.89** | **$0.00** |
|---|---|---|---|

**4320 Linglestown Road
Philadelphia, PA 19172**

Creditor's mailing address

Describe the lien
**Loan**
**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number
X171**

**Do multiple creditors have an interest in the same property?**

**As of the petition filing date, the claim is:**
Check all that apply

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

| Debtor | **Mega Philadelphia, LLC** | | Case number (if known) | **22-00340-FMD** |
|---|---|---|---|---|
| | Name | | | |

- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

---

| 2.3 | **GTR Source, LLC** | Describe debtor's property that is subject to a lien | **Unknown** | **$0.00** |
|---|---|---|---|---|
| | Creditor's Name | **Notice Only** | | |

**1006 Monmouth Avenue
Lakewood, NJ 08701**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**
- ■ No
- ☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
- ■ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its priority.

**As of the petition filing date, the claim is:**
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

---

| 2.4 | **SBA EIDL** | Describe debtor's property that is subject to a lien | **$500,000.00** | **$0.00** |
|---|---|---|---|---|
| | Creditor's Name | | | |

**14925 Kingsport Road
Fort Worth, TX 76155**

Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**
- ■ No
- ☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
- ■ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number
2272**

**Do multiple creditors have an interest in the same property?**
- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

---

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | **$1,236,492.97**

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                                    Best Case Bankruptcy

| Debtor | **Mega Philadelphia, LLC** | Case number (*if known*) | **22-00340-FMD** |
|---|---|---|---|
| | Name | | |

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **USBA**<br>**2 North 20th Street, Suite 3**<br>**Birmingham, AL 35203** | Line __2.4__ | |

**Fill in this information to identify the case:**

Debtor name **Mega Philadelphia, LLC**

United States Bankruptcy Court for the: MIDDLE DISTRICT OF FLORIDA

Case number (if known) **22-00340-FMD**

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
   with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | | Total claim | Priority amount |
|---|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>**Camden Tax Collector**<br>**520 Market Street**<br>**Camden, NJ 08102** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **Unknown** | **$0.00** |
| | Date or dates debt was incurred | Basis for the claim:<br>**Notice Purposes** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (1) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |
| **2.2** | Priority creditor's name and mailing address<br>**City of Camden**<br>**P.O. Box 95120**<br>**Camden, NJ** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>■ Unliquidated<br>■ Disputed | **Unknown** | **$0.00** |
| | Date or dates debt was incurred | Basis for the claim:<br>**Disputed Lease** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (9) | Is the claim subject to offset?<br>☐ No<br>■ Yes | | |

| Debtor | **Mega Philadelphia, LLC** | Case number (if known) | **22-00340-FMD** |
|---|---|---|---|
| | Name | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **$0.00** | **$0.00** |
|---|---|---|---|---|

**Internal Revenue Service**
**Centralized Insolvency Opera**
**Post Office Box 7346**
**Philadelphia, PA 19101-7346**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Notice Only**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

| 2.4 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | **Unknown** | **$15,000.00** |
|---|---|---|---|---|

**New Jersey State Tax**
**Division of Taxation**
**P.O. Box 281**
**Trenton, NJ 08695**

*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:
**Notice Purposes**

Last 4 digits of account number

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (8)

Is the claim subject to offset?
■ No
☐ Yes

---

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$0.00** |
|---|---|---|---|

**A-aware Software**
**P.O. Box 1167**
**Frisco, TX 75034**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Notice Only**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Anderson Kill PC**
**c/o Arthur J. Gillis**
**STA International**
**225 Boradhollow Rd, Ste 150**
**Melville, NY 11747**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  **Notice Only**

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$19,400.00** |
|---|---|---|---|

**ASCAP**
**P.O. Box 70547**
**Chicago, IL 60673**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: _

Last 4 digits of account number _

Is the claim subject to offset? ■ No  ☐ Yes

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | **Mega Philadelphia, LLC** | Case number (if known) | **22-00340-FMD** |
|---|---|---|---|
| | Name | | |

---

| 3.4 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
|---|---|---|---|

**Ask Punter, LLC_IT**
**25 Mystery Rose Lane**
**West Grove, PA 19390**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Notice Only__

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.5 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $70,000.00 |
|---|---|---|---|

**Blue Vine**
**41 Warren Street**
**Suite 300**
**Redwood City, CA 94063**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
■ Unliquidated
■ Disputed

Basis for the claim: _

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $95,000.00 |
|---|---|---|---|

**BMI**
**7 World Trade Center**
**New York, NY 10007**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Music Licensing__

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
|---|---|---|---|

**Broadcast Electronics**
**4100 North 24t Street**
**Quincy, IL 62305**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Notice Only__

Is the claim subject to offset? ■ No  ☐ Yes

---

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $5,000.00 |
|---|---|---|---|

**Centric Bank**
**4320 Linglestown Raod**
**Harrisburg, PA 17113**

Date(s) debt was incurred _

Last 4 digits of account number  __3342__

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Credit Card__

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $140,000.00 |
|---|---|---|---|

**Chrome Capital**
**456A Central Avenue, Ste 139**
**Cedarhurst, NY 11516**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
■ Disputed

Basis for the claim: _

Is the claim subject to offset? ☐ No  ☐ Yes

---

| 3.10 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $0.00 |
|---|---|---|---|

**Comcast**
**P.O. Bo 70219**
**Philadelphia, PA 19176**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: __Notice Only__

Is the claim subject to offset? ■ No  ☐ Yes

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor    **Mega Philadelphia, LLC**        Case number *(if known)*    **22-00340-FMD**

      Name

| 3.11 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Duane Morris**
**30 S. 17th Street**
**Philadelphia, PA 19103**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Noitce Only__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.12 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$0.00** |
|---|---|---|---|

**Effico BIlling Software**
**90 Eastgate Drive**
**Washington, IL 61571**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Notice Only__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.13 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$10,935.01** |
|---|---|---|---|

**Federal Communications Commi**
**45 L Street NE**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Annual Licensing Fee__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.14 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Flaster Greenberg**
**1810 Chapel Avenue**
**Cherry Hill, NJ 08002**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** __Notice Only__

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.15 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Franklin Funding**
**211 Boulevard of the America**
**Lakewood, NJ 08701**

☐ Contingent
■ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.16 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|

**Fundbox**
**6900 Dallas Parkwaay**
**Suite 700**
**Plano, TX 75024**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| 3.17 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$120,000.00** |
|---|---|---|---|

**Green Capital Funding, LLC**
**1 Everhurst Plaza Jersey Cit**
**Jersey City, NJ 07302**

☐ Contingent
☐ Unliquidated
■ Disputed

**Date(s) debt was incurred** _

**Basis for the claim:** _

**Last 4 digits of account number** _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **Mega Philadelphia, LLC** | Case number (if known) | **22-00340-FMD** |
|---|---|---|---|
| | Name | | |

| 3.18 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$31.49** |
|---|---|---|---|
| | Haworth Marketing<br>Nations Account- McGavern<br>1655 Palm Beach Lakes Blvd,<br>9th Floor 903<br>West Palm Beach, FL 33401 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __Notice Only__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.19 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$4,800.00** |
|---|---|---|---|
| | Hutchinson Air Conditioning<br>621 Chapel Avenue<br>Cherry Hill, NJ 08034 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.20 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|
| | Influx Capital, LLC<br>211 Bouldevard of Americas<br>Suite 206<br>Lakewood, NJ 08701 | ☐ Contingent<br>■ Unliquidated<br>■ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.21 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$300.00** |
|---|---|---|---|
| | Intertech Media<br>P.O. Box 22677<br>New York, NY 10087 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __Notice Only__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.22 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|
| | ML Factors<br>428 Central Avenue<br>Cedarhurst, NY 11516 | ■ Contingent<br>■ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.23 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$39,912.00** |
|---|---|---|---|
| | Nielson Audio<br>P.O. Box 3278<br>Carol Stream, IL 60132 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☐ No ☐ Yes | |

| 3.24 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **Unknown** |
|---|---|---|---|
| | Royer Cooper Cohen Braunfeld<br>100 North 18th Street, Suite<br>Philadelphia, PA 19103 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __Notice Only__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Mega Philadelphia, LLC** | Case number (if known) | **22-00340-FMD** |
|---|---|---|---|
| | Name | | |

| 3.25 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $7,800.00 |
|---|---|---|---|
| | **Townsquare Media**<br>**950 Tilton Road, Suite 200**<br>**Northfield, NJ 08225** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.26 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $0.00 |
|---|---|---|---|
| | **Verizon Wireless**<br>**P.O. Box 16801**<br>**Newark, NJ 07101** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: **Notice Only** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.27 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | Unknown |
|---|---|---|---|
| | **Weir & Partners LLP**<br>**Bonnie Golub**<br>**The Widener building, Suite**<br>**1339 Chestnut St.**<br>**Philadelphia, PA 19107** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: **Notice Only** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.28 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $48,000.00 |
|---|---|---|---|
| | **WIBG Rebroadcast Lease**<br>**3328 Simpon Avenue**<br>**Ocean City, NJ 08226** | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim: __ | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ■ No ☐ Yes | |

## Part 3:    List Others to Be Notified About Unsecured Claims

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| | Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | **Verizon**<br>**P.O. Box 15124**<br>**Albany, NY 12212** | Line **3.26**<br><br>☐ Not listed. Explain ____ | _ |

## Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims

5.  Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. $ | 0.00 |
| 5b. Total claims from Part 2 | 5b. + $ | 561,178.50 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. $ | 561,178.50 |

**Fill in this information to identify the case:**

Debtor name **M.S. Acquisitions & Holdings, LLC**

United States Bankruptcy Court for the:   MIDDLE DISTRICT OF FLORIDA

Case number (if known) **22-00341-FMD**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

| | | Column A | Column B |
|---|---|---|---|
| 2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. | | **Amount of claim**<br>Do not deduct the value of collateral. | **Value of collateral that supports this claim** |

| 2.1 | **Centric Bank** | Describe debtor's property that is subject to a lien | **$1,494,374.95** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**4320 Linglestown Road**
**Harrisburg, PA 17112**

Creditor's mailing address

Describe the lien

Is the creditor an insider or related party?

■ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

☐ No

**Date debt was incurred**

■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**
**X460**

**Do multiple creditors have an interest in the same property?**

■ No

☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply

☐ Contingent
☐ Unliquidated
■ Disputed

---

| 2.2 | **Centric Bank** | Describe debtor's property that is subject to a lien | **$2,557,346.33** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**4320 Linglestown Road**
**Philadelphia, PA 19172**

Creditor's mailing address

Describe the lien

Is the creditor an insider or related party?

■ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

■ No

**Date debt was incurred**

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**
**X353**

**Do multiple creditors have an interest in the same property?**

As of the petition filing date, the claim is:
Check all that apply

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **M.S. Acquisitions & Holdings, LLC** | | Case number (if known) | **22-00341-FMD** |
|---|---|---|---|---|
| | Name | | | |

☐ Contingent
☐ Unliquidated
■ Disputed

■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

---

| 2.3 | **Funding Metrics, LLC** | Describe debtor's property that is subject to a lien | **Unknown** | **$0.00** |
|---|---|---|---|---|
| | Creditor's Name | | | |

**684 Town Center Drive**
**Haverford, PA 19041**
Creditor's mailing address

**Describe the lien**

**Is the creditor an insider or related party?**
■ No
☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
■ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

**Do multiple creditors have an interest in the same property?**
■ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

---

| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | **$4,051,721.28** |
|---|---|---|

---

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **Brian Patrick Hall**<br>**1105 W. Peachtree Street**<br>**Suite 300**<br>**Atlanta, GA 30309** | Line  **2.1** | |
| **Phillip Berger**<br>**919 Conestega**<br>**Building 3, Suite 114**<br>**Bryn Mawr, PA 19010** | Line  **2.1** | |

---

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Fill in this information to identify the case:**

Debtor name   **M.S. Acquisitions & Holdings, LLC**

United States Bankruptcy Court for the:   MIDDLE DISTRICT OF FLORIDA

Case number (if known)   **22-00341-FMD**

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                              12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:   List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ■ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors
   with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  | | Total claim | Priority amount |
|---|---|---|---|
| **2.1** | Priority creditor's name and mailing address<br>**Internal Revenue Service**<br>**Centralized Insolvency Opera**<br>**Post Office Box 7346**<br>**Philadelphia, PA 19101-7346** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$0.00** | $0.00 |
| | Date or dates debt was incurred | Basis for the claim:<br>**Notice Only** | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |
| **2.2** | Priority creditor's name and mailing address<br>**New Jersey Division of Taxation**<br>**Revenue Processing Center**<br>**P.O. BOX 257**<br>**Trenton, NJ 08646** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$1,927.65** | **$1,927.65** |
| | Date or dates debt was incurred | Basis for the claim: | | |
| | Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>■ No<br>☐ Yes | | |

| Debtor | **M.S. Acquisitions & Holdings, LLC** | | Case number *(if known)* | **22-00341-FMD** |
|---|---|---|---|---|
| | Name | | | |

| 2.3 | Priority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,000.00 | $10,000.00 |
|---|---|---|---|---|

**State of New Jersey**
**3 John Fitch Way**
**Trenton, NJ 08611**

*Check all that apply.*
☐ Contingent
■ Unliquidated
☐ Disputed

Date or dates debt was incurred

Basis for the claim:

Last 4 digits of account number

Is the claim subject to offset?

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (1)

■ No
☐ Yes

---

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

**3.** List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $8,277.50 |
|---|---|---|---|

**Anderson Kill PC**
**c/o Arthur J. Gillis**
**STA International**
**225 Boradhollow Rd, Ste 150**
**Melville, NY 11747**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred**

Basis for the claim: _

**Last 4 digits of account number  9019**

Is the claim subject to offset?  ■ No  ☐ Yes

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $2,000.00 |
|---|---|---|---|

**Capital One**
**P.O. Box 30285**
**Salt Lake City, UT 84130**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

Basis for the claim: _

**Last 4 digits of account number  3526**

Is the claim subject to offset?  ■ No  ☐ Yes

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $170,000.00 |
|---|---|---|---|

**Duane Morris**
**30 S.  17th Street**
**Philadelphia, PA 19103**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

Basis for the claim: _

**Last 4 digits of account number**

Is the claim subject to offset?  ■ No  ☐ Yes

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $60,000.00 |
|---|---|---|---|

**Evererst Funding**
**8200 NW 52nd Terrace**
**2nd Floor**
**Miami, FL 33166**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

Basis for the claim: _

**Last 4 digits of account number**

Is the claim subject to offset?  ■ No  ☐ Yes

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $30,000.00 |
|---|---|---|---|

**Flaster Greenberg**
**1810 Chapel Avenue**
**Cherry Hill, NJ 08002**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** _

Basis for the claim: _

**Last 4 digits of account number**

Is the claim subject to offset?  ■ No  ☐ Yes

| Debtor | **M.S. Acquisitions & Holdings, LLC** | | Case number (if known) | **22-00341-FMD** |
|---|---|---|---|---|
| | Name | | | |

| 3.6 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $109,000.00 |
|---|---|---|---|
| | **Forward Line** | ☐ Contingent | |
| | **3000 Plumpic Blvd** | ☐ Unliquidated | |
| | **Bldg 4** | ■ Disputed | |
| | **Santa Monica, CA 90404** | | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.7 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $23,000.00 |
|---|---|---|---|
| | **Harvest Small Buiness Finance** | ☐ Contingent | |
| | **2442 Avenida De La Carlota** | ☐ Unliquidated | |
| | **Suite 232** | ☐ Disputed | |
| | **Laguna Hills, CA 92653** | | |
| | Date(s) debt was incurred _ | Basis for the claim: __PPP Loan__ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.8 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $25,000.00 |
|---|---|---|---|
| | **Lendini** | ☐ Contingent | |
| | **3220 Tillman Drive** | ☐ Unliquidated | |
| | **Suite 200** | ☐ Disputed | |
| | **Bensalem, PA 19020** | | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.9 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $57,000.00 |
|---|---|---|---|
| | **Royer Cooper Cohen Braunfeld** | ☐ Contingent | |
| | **100 North 18th Street, Suite** | ☐ Unliquidated | |
| | **Philadelphia, PA 19103** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.10 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $500,000.00 |
|---|---|---|---|
| | **SBA Loan** | ☐ Contingent | |
| | **14925 Kingsport Road** | ☐ Unliquidated | |
| | **Fort Worth, TX 76155** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim: __EIDL Loan__ | |
| | Last 4 digits of account number **8001** | Is the claim subject to offset? ■ No ☐ Yes | |

| 3.11 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | $40,000.00 |
|---|---|---|---|
| | **Weir & Partners LLP** | | |
| | **Bonnie Golub** | ☐ Contingent | |
| | **The Widener building, Suite** | ☐ Unliquidated | |
| | **1339 Chestnut St.** | ☐ Disputed | |
| | **Philadelphia, PA 19107** | | |
| | Date(s) debt was incurred _ | Basis for the claim: _ | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ■ No ☐ Yes | |

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |
|---|---|

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

| **Part 4:** | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

Debtor    **M.S. Acquisitions & Holdings, LLC**
_____
Name

Case number (*if known*)    **22-00341-FMD**
_____

**5.  Add the amounts of priority and nonpriority unsecured claims.**

|  |  | Total of claim amounts |
|---|---|---|
| **5a. Total claims from Part 1** | 5a. | $     11,927.65 |
| **5b. Total claims from Part 2** | 5b. + | $     1,024,277.50 |
| **5c. Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $     1,036,205.15 |

Exhibit 2

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD Jointly Administered with M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**M.S. ACQUISITIONS & HOLDINGS, LLC - Claims Register**

**Petition Date:** March 25, 2022
**Source:** Filed and scheduled claims

| Source | Priority | Claim # | Claimant Name | Estimated Potential Allowed Amount |
|---|---|---|---|---|
| Filed | Secured | POC 3 | SBA - US Small Business Administration | 505,253.75 |
| Schedules / Filed | Secured | 2.1 & 2.2 / POC 10 | Centric Bank | 5,768,904.88 |
| Schedules / Filed | Priority | 2.3 / POC 1 | State of New Jersey **(Note 1)** | 91,472.15 |
| Schedules | GUC | 3.1 | Anderson Kill PC c/o Arthur J. Gillis | 8,277.50 |
| Schedules | GUC | 3.2 | Capital One | 2,000.00 |
| Schedules / Filed | GUC | 3.3 / POC 6 | Duane Morris LLP | 168,151.21 |
| Schedules / Filed | GUC | 3.4 / POC 4 | Everest Funding (EBF Partners, LLC) **(Note 2)** | 58,961.90 |
| Schedules | GUC | 3.5 | Flaster Greenberg | 30,000.00 |
| Schedules / Filed | GUC | 2.3 / POC 9 | Funding Metrics, LLC **(Note 2)** | 54,339.74 |
| Schedules / Filed | GUC | 3.7 / POC 5 | Harvest Small Business Finance | 20,833.00 |
| Schedules | GUC | 3.8 | Lendini | 25,000.00 |
| Schedules | GUC | 3.9 | Royer Cooper Cohen Braunfeld | 57,000.00 |
| Schedules | GUC | 3.11 | Weir & Partners LLP | 40,000.00 |
| Filed | GUC | POC 7 | Federal Insurance Company c/o Chubb | 7,031.67 |
| Filed | GUC | POC 8 | Vigilant Insurance Company c/o Chubb | 720.44 |
| | | | | $ 6,837,946.24 |
| | | | | |

**1)** The Claim of the State of New Jersey (POC 1) is for a variety of pre-petition unpaid state taxes against MS in the total amount of $91,472.15. Debtors believe that the amount of the claim is misstated and should not exceed $35,000.00. Debtors anticipate objecting to such claim.

**2)** The Debtor assumed the Everest Funding (POC 4) and Funding Metrics (POC 9) claims would be reclassified as general unsecured claims.

| Summary | | |
|---|---|---|
| **Claim Type** | | |
| Secured | $ | 6,274,159 |
| Priority | | 91,472 |
| GUC | | 472,315 |
| **Total Potential** | $ | **6,837,946** |

Exhibit 2

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD Jointly Administered with M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**MEGA-PHILADELPHIA LLC - Claims Register**

**Petition Date:** March 25, 2022
**Source:** Filed and scheduled claims

| Source | Priority | Claim # | Claimant Name | Estimated Potential Allowed Amount |
|--------|----------|---------|---------------|-----------------------------------:|
| Schedules / Filed | Secured | 2.1 / POC 1 | Centric Bank | 787,257.47 |
| Schedules | Secured | 2.4 | SBA EIDL **(Note 1)** | 512,031.85 |
| Schedules | GUC | 3.3 | ASCAP | 19,400.00 |
| Schedules / Filed | GUC | 3.6 / POC 2 | BMI | 72,274.87 |
| Schedules | GUC | 3.8 | Centric Bank | 5,000.00 |
| Schedules / Filed | GUC | 3.9 / POC 3 | Bridge Funding Cap LLC d/b/a/ Chrome Capital **(Note 2)** | 185,494.37 |
| Schedules | GUC | 3.13 | Federal Communications Commission | 10,935.01 |
| Schedules | GUC | 3.18 | Haworth Marketing | 31.49 |
| Schedules | GUC | 3.19 | Hutchinson Air Conditioning | 4,800.00 |
| Schedules | GUC | 3.21 | Intertech Media | 300.00 |
| Schedules | GUC | 3.23 | Nielson Audio | 39,912.00 |
| Schedules | GUC | 3.25 | Townsquare Media | 7,800.00 |
| Schedules | GUC | 3.28 | WIBG Rebroadcast Lease | 48,000.00 |
| | | | | |
| | | | $ | 1,693,237.06 |
| | | | | |

**1)** US Small Business Administration (Claim 2) against MS for $512,031.85 appear to have been mistakenly filed against MS in an unsecured amount rather than against Mega in a secured amount. This Claim is inconsistent with Mega's schedules and would result in a duplicative claim. Debtor anticipates objecting to such claim to eliminate duplication and clarify the treatment as secured or unsecured.

**2)** The Debtor assumed the Bridge Funding Cap LLC d/b/a/ Chrome Capital (POC 3) claim would be reclassified as general unsecured claims.

| Summary | | |
|---------|---|---|
| **Claim Type** | | |
| Secured | $ | 1,299,289 |
| Priority | | - |
| GUC | | 393,948 |
| | | |
| **Total Potential** | $ | **1,693,237** |

Kapila|Mukamal
CPAs, Forensic and Insolvency Advisors

Exhibit 5

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**M.S. ACQUISITIONS & HOLDINGS, LLC**
**Projections, Effective Date Distributions & Plan Payments**

**Source:** Management's assumptions.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** August 1, 2022

| Projections, Effective Date Distributions & Plan Payments | Notes | Effective Date Distributions | Monthly Template | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Source of funds:** | | | | | | | | | |
| Est. Projected cash as of Effective Date | 1 | $ 37,031 | | | | | | | - |
| America's Business Capital, LLC ("ABC") | 2 | | 3,333 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 200,000 |
| Plan sponsor contributions: | | | | | | | | | - |
| Plan Contribution | 3, 6 | 20,000 | | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 70,000 |
| Property Contribution | 4 | 700,000 | | | | | | | - |
| Litigation Trust | 5 | TBD | | | | | | | - |
| *Total sources of funds* | | 757,031 | | **54,000** | **54,000** | **54,000** | **54,000** | **54,000** | **270,000** |
| | | | | | | | | | |
| **Use of funds:** | | | | | | | | | |
| | | | | | | | | | |
| **Secured claims** | | | | | | | | | |
| Centric Bank (MS - POC 10): | 6 | | | | | | | | - |
| Cash payments | 3 | 10,000 | 1,167 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 70,000 |
| Property Contribution | 4 | 700,000 | | | | | | | - |
| SBA (MS - POC 3) | 3, 7 | 10,000 | | - | - | - | - | - | - |
| | | 720,000 | 1,167 | **14,000** | **14,000** | **14,000** | **14,000** | **14,000** | **70,000** |
| | | | | | | | | | |
| **Estimated Ch 11 administrative expenses:** | 8 | | | | | | | | |
| Edelboim Lieberman Revah (Debtor's Counsel) | | 12,000 | | | | | | | - |
| KapilaMukamal (Debtor FA) | | 10,000 | | | | | | | - |
| Anthony T. Lepore, Esq. (Special Counsel) | | 2,500 | | | | | | | - |
| Sub V Trustee | | 12,500 | | | | | | | - |
| | | 37,000 | | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | | | |
| **Priority Unsecured Claims:** | | | | | | | | | |
| State of NJ (MS - POC 1) | 9 | | 650 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 38,998 |
| | | - | 650 | 7,800 | 7,800 | 7,800 | 7,800 | 7,800 | 38,998 |
| *Total use of funds* | | 757,000 | | **21,800** | **21,800** | **21,800** | **21,800** | **21,800** | **108,998** |
| | | | | | | | | | |
| *Estimated Net Disposable Income ("NDI")* *After Plan Payments - Net cash flow (deficit)* | | $31 | | $ 32,200 | $ 32,200 | $ 32,200 | $ 32,200 | $ 32,200 | $ 161,002 |
| | | | | | | | | | |
| *Estimated distribution to GUCs - Ch 11 Plan* | 10 | | | $32,200 | $32,200 | $32,200 | $32,200 | $32,200 | $161,002 |
| *Est distribution % to GUCs - Ch 11 Plan* *($5,171,217 in GUCs)* | 10 | | | 0.62% | 0.62% | 0.62% | 0.62% | 0.62% | 3.11% |

**SEE ACCOMPANYING NOTES**

Kapila Mukamal
CPAs, Forensic and Insolvency Advisors

**Exhibit 5**

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**

**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**Mega Projections - Disposable Income Analysis and**
**Effective Date Distributions & Plan Payments**
**Notes**

| Note | Description |
|------|-------------|
| 1 | Estimated available cash as of the Effective Date. The current estimate is based on the Debtor's DIP accounts as of May 31, 2022 and is subject to change based on the actual cash as of the Effective Date. |
| 2 | MS will commit disposable income to the fund the Plan in the total amount of $200,000.00 of anticipated distributions from ABC. |
| 3 | The Plan Sponsors will contribute $90,000.00 to the MS estate, of which $10,000 will be applied to each of the Centric Bank claim POC 10 and the SBA claim POC 3 on the Effective Date. |
| 4 | The Plan Sponsors will contribute certain real property located at: (i) 5 Cobalt Court, Swedesboro, New Jersey 08085; and (ii) Ocean Forest Lot-8, Rio Grande Puerto Rico, 00745, together valued at approximately, $700,000.00 net of the current mortgage (the "Plan Sponsor Properties"), to certain of the MS Secured Creditors under the Plan (Centric Bank POC 10). |
| 5 | Debtors will create a litigation trust for the benefit of all creditors. |
| 6 | The proposed treatment for Centric Bank (POC 10) is (A) Cash payments totaling $80,000 from Plan Sponsors, paid as follows: (i) $10,000.00 on the Effective Date; and (ii) the balance of $70,000.00 paid in equal monthly installments over the life of the Plan, and (B) Surrender of titles to the Plan Sponsor Properties from the Plan Sponsors on the Effective Date. Thereafter, an allowed secured claim in the amount of $3,703,647 (an amount equal to the Claimed Secured Amount less the Cash payment amount less the Fair Market Value of the Sponsor Properties and less the Mega claim amount embedded in the MS claim) for pro rata participation as a general unsecured creditor including participating in Litigation Trust. |
| 7 | The proposed treatment for the SBA (POC 3) is a cash payment of $10,000.00 from Plan Sponsors on the Effective Date. Thereafter, pro-rata participation an allowed unsecured claim in the distributions to General Unsecured Creditors in amount of $495,253.00 (an amount equal to the Claimed Secured Amount less the Cash payment amount) for pro rata participation as a general unsecured creditor including participating in Litigation Trust. |
| 8 | Compensation to the Debtor's bankruptcy professionals is subject to Court approval. Amounts reflected are an estimate net of retainers held by the respective professional and estimated fees due to the Subchapter V Trustee. |
| 9 | Cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together with interest (payable in arrears) on the unpaid portion thereof at the existing statuary interest rate (estimated at 4.34%) from the Effective Date through the date of payment thereof. The Debtor |
| 10 | The GUC claims include the estimated deficiency claims for Centric Bank POC 10 and the SBA POC 3. Estimated distribution to GUCs. |

The Debtor from time to time makes written or oral forward-looking statements concerning expectations, beliefs, plans, objectives, future events or performance and underlying assumptions and other statements that are not historical facts. These statements are "forward-looking statements." Generally, the inclusion of the words "believe", "could", "should", "estimate", "expect", "intend", "anticipate", "will", "plan", "target", "forecast" and similar expressions identify statements that constitute "forward-looking statements." All statements addressing developments that the Debtor expects or anticipates will occur in the future, including statements relating to values, future financial condition, assets, real property and timing of their disposition, as well as statements expressing optimism or pessimism about future results, are forward-looking statements. The forward-looking statements are based upon the Debtor's then-current views and assumptions regarding future developments and are applicable only as of the dates of such statements. By their nature, all forward-looking statements involve risks and uncertainties. The Debtor assumes no obligation to update or review any forward-looking information to reflect actual results, changes in assumptions or changes in other factors affecting forward-looking information, whether as a result of new information, future events or otherwise. There can be no assurance that the Debtor has correctly identified and appropriately assessed all factors affecting the Company and its assets. For these reasons, you are cautioned not to place undue reliance on any forward-looking statements.

Exhibit 5

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**Mega Projections - Disposable Income Analysis and**
**Effective Date Distributions & Plan Payments**

**Source:** Debtor's historical P&Ls and management's assumptions.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** August 1, 2022

| Projections | Notes | Monthly Template | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|---|---|
| **Estimated Income** | 1 | | | | | | | |
| Advertising (3% per yr increase) | 1 | 145,000 | $ 1,740,000 | $ 1,792,200 | $ 1,845,966 | $ 1,901,345 | $ 1,958,385 | $ 9,237,896 |
| Event revenue | | 6,250 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 375,000 |
| *Gross income* | | 151,250 | 1,815,000 | 1,867,200 | 1,920,966 | 1,976,345 | 2,033,385 | 9,612,896 |
| | | | | | | | | |
| **Estimated Business Expenses** | 2 | | | | | | | |
| Rent / Lease Expense | 3 | 10,300 | 123,600 | 123,600 | 123,600 | 123,600 | 123,600 | 618,000 |
| Payroll - principal (2% per yr increase) | 4 | 14,000 | 168,000 | 171,360 | 174,787 | 178,283 | 181,849 | 874,279 |
| Payroll - G & A employees (2% per yr increase) | 4 | 25,000 | 300,000 | 306,000 | 312,120 | 318,362 | 324,730 | 1,561,212 |
| Sales Expense - 1099 contractors | 5 | 22,000 | 264,000 | 264,000 | 264,000 | 264,000 | 264,000 | 1,320,000 |
| Programming Expense (inlcudes W2 employees & 2% per yr increase) | 4 | 10,000 | 120,000 | 122,400 | 124,848 | 127,345 | 129,892 | 624,485 |
| Promotion Expenses (inlcudes W2 employees & 2% per yr increase) | 4 | 3,000 | 36,000 | 36,720 | 37,454 | 38,203 | 38,968 | 187,345 |
| Engineering Expense (2% per yr increase) | | 2,000 | 24,000 | 24,480 | 24,970 | 25,469 | 25,978 | 124,897 |
| Other Operating Expenses (2% per yr increase) | 6 | 20,000 | 240,000 | 244,800 | 249,696 | 254,690 | 259,784 | 1,248,970 |
| Insurance Expense | | 5,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 300,000 |
| Legal / Professional | | 7,000 | 84,000 | 84,000 | 84,000 | 84,000 | 84,000 | 420,000 |
| *Total business expenses* | | 118,300 | 1,419,600 | 1,437,360 | 1,455,475 | 1,473,953 | 1,492,800 | 7,279,188 |
| | | | | | | | | |
| *Net cash flow (deficit)* | | 32,950 | 395,400 | 429,840 | 465,491 | 502,392 | 540,586 | 2,333,709 |
| | | | | | | | | |
| **Taxes (gross income less business expenses @ 37%)** | 7 | 12,192 | 146,298 | 159,041 | 172,232 | 185,885 | 200,017 | 863,472 |
| | | | | | | | | |
| *Estimated Net Disposable Income ("NDI") before Plan Payments* | | $20,759 | $249,102 | $270,799 | $293,259 | $316,507 | $340,569 | $1,470,236 |
| | | | | | | | | |
| **Beginning Cash Balance after Effective Date Distributions** | 8 | $ 1,629 | $ 1,629 | $ 250,731 | $ 521,530 | $ 814,789 | $ 1,131,297 | $ 1,629 |
| Less Net Disposable Income available to creditors | | | 249,102 | 270,799 | 293,259 | 316,507 | 340,569 | 1,470,236 |
| **Ending Cash Balance** | | $ 1,629 | $ 250,731 | $ 521,530 | $ 814,789 | $ 1,131,297 | $ 1,471,865 | $ 1,471,865 |

**SEE ACCOMPANYING NOTES**

Exhibit 5

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**Mega Projections - Disposable Income Analysis and**
**Effective Date Distributions & Plan Payments**

**Source:** Debtor's historical P&Ls and management's assumptions.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** August 1, 2022

| Effective Date Distributions & Plan Payments | Notes | Effective Date Distributions | Monthly Template | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Source of funds:** | | | | | | | | | |
| Est. Projected cash as of Effective Date | 8 | $ 123,329 | | | | | | | - |
| Litigation Trust | | TBD | | | | | | | - |
| Estimated NDI before Plan Payments | | | | 249,102 | 270,799 | 293,259 | 316,507 | 340,569 | 1,470,236 |
| *Total sources of funds* | | 123,329 | | **249,102** | **270,799** | **293,259** | **316,507** | **340,569** | **1,470,236** |
| | | | | | | | | | |
| **Use of funds:** | | | | | | | | | |
| **Secured claims** | | | | | | | | | |
| Centric Bank (Mega - POC 1) | 9 | | 15,220 | 182,639 | 182,639 | 182,639 | 182,639 | 182,639 | 913,193 |
| SBA (Mega/MS - POC 2) | 10 | | 2,731 | 32,776 | 32,776 | 32,776 | 32,776 | 32,776 | 163,878 |
| | | - | 17,951 | **215,414** | **215,414** | **215,414** | **215,414** | **215,414** | **1,077,071** |
| | | | | | | | | | |
| **Estimated Ch 11 administrative expenses:** | 11 | | | | | | | | |
| Edelboim Lieberman Revah (Debtor's Counsel) | | 55,000 | | | | | | | - |
| KapilaMukamal (Debtor FA) | | 47,500 | | | | | | | - |
| Anthony T. Lepore, Esq. (Special Counsel) | | 2,500 | | | | | | | - |
| Roger H Rafson, & CMS Station Brokerage (Broker) | | 4,200 | | | | | | | - |
| Sub V Trustee | | 12,500 | | | | | | | - |
| | | 121,700 | | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | | | |
| **Priority Unsecured Claims:** | | | | | | | | | |
| | | | | - | - | - | - | - | - |
| | | - | - | - | - | - | - | - | - |
| *Total use of funds* | | 121,700 | | **215,414** | **215,414** | **215,414** | **215,414** | **215,414** | **1,077,071** |
| | | | | | | | | | |
| *Estimated Net Disposable Income ("NDI")* *After Plan Payments - Net cash flow (deficit)* | | $1,629 | | $ 33,688 | $ 55,385 | $ 77,845 | $ 101,093 | $ 125,155 | $ 393,166 |
| | | | | | | | | | |
| *Estimated distribution to GUCs - Ch 11 Plan* | 12 | | | $33,688 | $55,385 | $77,845 | $101,093 | $125,155 | $393,166 |
| *Est distribution % to GUCs - Ch 11 Plan* *($393,458 in GUCs)* | 12 | | | 8.55% | 14.06% | 19.76% | 25.66% | 31.77% | 99.80% |

**SEE ACCOMPANYING NOTES**

Kapila Mukamal
CPAs, Forensic and Insolvency Advisors

**Exhibit 5**

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**

**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**Mega Projections - Disposable Income Analysis and**
**Effective Date Distributions & Plan Payments**
**Notes**

| Note | Description |
|---|---|
| 1 | The Debtor operates a Latin music station that provides radio broadcasting services to its audiences in Philadelphia, Pennsylvania, South New Jersey, and Atlantic City, New Jersey. Debtor operates the following radio stations: 105.7 FM and 1310 AM in Philadelphia, Pennsylvania; 103.3 FM in Millville, New Jersey. Mega also rebroadcasts its radio stations in Atlantic City, New Jersey, 101.3 FM. The Debtor's business generates advertisement revenue mainly through broadcast radio and some live promotional events. The Debtor estimated its revenue projections based on an approximate three year average normalized for COVID that generally only impacted the live promotional events. |
| 2 | The Debtor estimated its business expenses based on an approximate three year average normalized for current actual expenses incurred. |
| 3 | Estimated rent expenses include (i) the office lease (Penn Treaty Park Place) that is currently on a month to month term for approximately $2,500 per month, and (ii) the rebroadcast lease in Atlantic City, NJ for approximately $7,750 per month whose lease expires in August 2022, but the Debtor intends on renewing on similar terms as the current lease. |
| 4 | The estimated payroll amounts are for gross wages including the employee and employer tax liabilities. The Programming and Promotion expenses includes the estimated compensation for the W2 employees whose work is affiliated within these categories. |
| 5 | The sales expenses includes estimates for the 1099 contractors including commissions which are variable in nature and subject to fluctuate. |
| 6 | Estimates for other operational expenses include business license and permits, bank service fees cleaning expenses, utilities, office expense and supplies, merchant fees, repairs and maintenance and other operational and general and administrative related expenses. |
| 7 | The Debtor estimated the taxes due based on the gross income less business expenses at 37%. |
| 8 | Estimated available cash as of the Effective Date. The current estimate is based on the Debtor's DIP accounts as of May 31, 2022, and is subject to change based on the actual cash as of the Effective Date. |
| 9 | Centric Bank (Mega - POC 1) - Monthly Payment of approximately $15,220. Payments begin on the Effective Date and payments end on 60th month after the Effective Date with an interest rate of 6% per annum. |
| 10 | SBA (Mega/MS - POC 2) - Monthly Payment of approximately $2,731. Payments begin on the Effective Date and payments end on 30 years after the Effective Date with an interest rate of 3.75% per annum in accordance with the original loan documents. |
| 11 | Compensation to the Debtor's bankruptcy professionals is subject to Court approval. Amounts reflected are an estimate net of retainers held by the respective professional and estimated fees due to the Subchapter V Trustee. |
| 12 | Estimated distribution to GUCs. |

The Debtor from time to time makes written or oral forward-looking statements concerning expectations, beliefs, plans, objectives, future events or performance and underlying assumptions and other statements that are not historical facts. These statements are "forward-looking statements." Generally, the inclusion of the words "believe", "could", "should", "estimate", "expect", "intend", "anticipate", "will", "plan", "target", "forecast" and similar expressions identify statements that constitute "forward-looking statements." All statements addressing developments that the Debtor expects or anticipates will occur in the future, including statements relating to values, future financial condition, assets, real property and timing of their disposition, as well as statements expressing optimism or pessimism about future results, are forward-looking statements. The forward-looking statements are based upon the Debtor's then-current views and assumptions regarding future developments and are applicable only as of the dates of such statements. By their nature, all forward-looking statements involve risks and uncertainties. The Debtor assumes no obligation to update or review any forward-looking information to reflect actual results, changes in assumptions or changes in other factors affecting forward-looking information, whether as a result of new information, future events or otherwise. There can be no assurance that the Debtor has correctly identified and appropriately assessed all factors affecting the Company and its assets. For these reasons, you are cautioned not to place undue reliance on any forward-looking statements.

Exhibit 6

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**Mega-Philadelphia, LLC - Liquidation Analysis**

**Source:** Debtor's bankruptcy schedules, claims filed and current estimates.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** August 1, 2022

| Assets / Liabilities | Notes | Chapter 7 |
|---|---|---|
| *Assets* | | |
| Cash | 1 | $ 123,329 |
| Accounts receivable | 2 | 309,254 |
| Security Deposit of lease for office space - Philadelphia | 3 | 3,000 |
| Office furniture, fixtures, and equipment; and collectibles | 4 | 820 |
| Transmitter and miscellaneous equipment | 5 | 10,000 |
| Intangibles and Intellectual Property: | 6 | |
| • Licenses, franchises, and royalties (Radio stations: 105.7 FM. 1310 AM and 103.3 FM) | | 150,000 |
| • Internet domain names and websites | | - |
| • Customer List | | - |
| Causes of action | 7 | TBD |
| **Estimated assets available for distribution** | | **596,402** |
| | | |
| *Liabilities* | | |
| **Secured Claims:** | 8 | |
| Centric Bank - POC 1 | | 787,257 |
| SBA - POC 2 (filed in MS case) | | 512,032 |
| | | 1,299,289 |
| | | |
| **Estimated assets available for distribution** | | - |
| | | |
| **Estimated Administrative Claims:** | | |
| Ch. 7 Administrative Expense Claims: | 9 | |
| Chapter 7 Trustee Fees | | 33,070 |
| Chapter 7 Professionals | | 50,000 |
| | | 83,070 |
| | | |
| **Estimated assets available for distribution** | | - |
| | | |
| **Estimated Chapter 11 Administrative Expense Claims:** | 10 | |
| Edelboim Lieberman Revah PLLC (Debtor's Counsel) | | 55,000 |
| KapilaMukamal LLP (Debtor's FA) | | 47,500 |
| Anthony T. Lepore, Esq. (Special Counsel) | | 2,500 |
| Roger H Rafson, & CMS Station Brokerage (Broker) | | 4,200 |
| Sub V Trustee | | 12,500 |
| | | 121,700 |
| | | |
| **Estimated assets available for distribution** | | $ - |
| | | |
| *Assumed Distribution to Creditors* | | |
| Total General Unsecured Claims ("GUCs") | 11 | $ 393,948 |
| Estimated Distribution % to GUCs under Chapter 7 | | 0.00% |
| Estimated Distribution % to GUCs under the Chapter 11 Plan | | 99.80% |

**SEE ACCOMPANYING NOTES**

## Mega-Philadelphia, LLC - Liquidation Analysis
### Notes

**Source:** Debtor's bankruptcy schedules, claims filed and current estimates.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** August 1, 2022

| No. | Note |
|---|---|
| 1 | Estimated cash balance as of May 31, 2022, subject to actual avaible funds on the Effective Date. |
| 2 | The estimated accounts receivable excluding credits and uncollectible accounts totaling approximately $29,000 ("AR") as of May 31, 2022 less a 10% discount included for bad debt reserve assumed to be uncollectible. |
| 3 | Security Deposits per the bankruptcy schedules include $3,000 for leased office spaced at 1341 N. Delaware Avenue, Philadelphia, Pennsylvania 19125. |
| 4 | Estimated office furniture, fixtures, equipment and collectibles per the bankruptcy schedules that include office equipment, conference tables, desks and miscellaneous office items. The Debtor assumed the liquidation recovery would be 10% of the book value. |
| 5 | Other assets per the bankruptcy schedules include a transmitter and miscellaneous equipment. |
| 6 | The Debtor's intangible assets per the bankruptcy schedules include domain names (www.lamega1057.com, www.lameganation.com, www.lemega1033.com, www.lemaga1013.com) and customer lists that have no value in a Chapter 7 liquidation. The Debtor's best estimate of the the liquidation value of the licenses is between $100,000 and $150,000 and included the higher end of the range as a conservative estimate for the liquidation analysis. |
| 7 | The value of any causes of action against third parties per the bankruptcy schedules and any Chapter 5 causes of action are undetermined, and will be transferred to the Liquidating Trust for the benefit of the GUCs according to the Plan. Any potential recoveries from the causes of action are subject to the releases provided for in the Plan. |
| 8 | The Secured claims are subject to change pending review and currently listed as filed or scheduled.  The Claim of US Small Business Administration (POC 2) is for money loaned to Mega in the amount of $512,031.85 and was filed in the MS case. The Debtor assumed the claim will be reclassified to Mega. |
| 9 | The Chapter 7 Trustee fees are calculated based on the available assets for distribution in accordance with the bankruptcy code and the Chapter 7 Trustee's professional fees are estimated based on the level of complexity of assisting the Trustee with winding down the estate and pursuing recoveries. |
| 10 | The estimated administrative fees and expenses for the Debtor's bankruptcy professionals net of retainers are subject to court approval. |
| 11 | The Debtor is still reviewing the claims and the amount is subject to change. |

Exhibit 6

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

## M.S. Acquisitions & Holdings, LLC - Liquidation Analysis

**Source:** Debtor's bankruptcy schedules, claims filed and current estimates.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** August 1, 2022

| Assets / Liabilities | Notes | Chapter 7 |
|---|---|---|
| *Assets* | | |
| Cash | 1 | $ 37,031 |
| Investments: | | |
| • Mega Philadelphia, LLC (100% interest) | 2 | - |
| • America's Business Capital, LLC (51% interest) | 3 | - |
| • Spanish Sport Network (100% interest) | 4 | - |
| • City Lane Properties (50% interest) | 5 | - |
| Office furniture, fixtures, and equipment; and collectibles | 6 | 400 |
| Auto - 91 Mustang (not operational) | 7 | 2,000 |
| Causes of action | 8 | TBD |
| *Estimated assets available for distribution* | | **39,431** |
| | | |
| *Liabilities* | | |
| **Secured Claims:** | 9 | |
| Centric Bank - POC 10 | | 5,768,905 |
| US Small Business Administration (SBA) - POC 3 | | 505,254 |
| | | **6,274,159** |
| | | |
| *Estimated assets available for distribution* | | **-** |
| | | |
| **Estimated Administrative Claims:** | | |
| Ch. 7 Administrative Expense Claims: | 10 | |
| Chapter 7 Trustee Fees | | 4,693 |
| Chapter 7 Professionals | | 25,000 |
| | | **29,693** |
| | | |
| *Estimated assets available for distribution* | | **-** |
| | | |
| **Estimated Chapter 11 Administrative Expense Claims:** | 11 | |
| Edelboim Lieberman Revah PLLC (Debtor's Counsel) | | 12,000 |
| KapilaMukamal LLP (Debtor's FA) | | 10,000 |
| Anthony T. Lepore, Esq. (Special Counsel) | | 2,500 |
| Sub V Trustee | | 12,500 |
| | | **37,000** |
| **Priority Claims:** | | |
| State of New Jersey - POC 1 | | 91,472 |
| | | **91,472** |
| | | |
| *Estimated assets available for distribution* | | $ **-** |
| | | |
| *Assumed Distribution to Creditors* | | |
| Total General Unsecured Claims ("GUCs") | 12 | $ 472,315 |
| Estimated Distribution % to GUCs under Chapter 7 | | **0.00%** |
| Estimated Distribution % to GUCs under the Chapter 11 Plan | | **3.11%** |

**SEE ACCOMPANYING NOTES**

**M.S. Acquisitions & Holdings, LLC - Liquidation Analysis**
**Notes**

**Source:** Debtor's bankruptcy schedules, claims filed and current estimates.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** August 1, 2022

| No. | Note |
|-----|------|
| 1 | Estimated cash balance as of May 31, 2022, subject to actual avaible funds on the Effective Date. |
| 2 | The Debtor owns 100% of Mega Philadelphia, LLC, who filed bankruptcy on March 25, 2022, and whose case is being jointly administered with the Debtor under *Case No. 202-00340-FMD*. |
| 3 | American Business Capital, LLC ("ABC") is a commercial lending brokerage business in which the Debtor owns 51%. ABC is a service company whose only asset is cash generated from brokering loan transactions initiated by its principals. ABC's business model is predicated on its principals' ability to generate commissions by brokering loan transactions, and accordingly, there in no value in a Chapter 7 liquidation. |
| 4 | Spanish Sports Network ("SSN") has been inactive and has not had any financial activity or filed tax returns since 2016-2017. This entity is not expected to have any value. |
| 5 | City Line Properties ("CLP") has been inactive for over five years. This entity is not expected to have any value. |
| 6 | Estimated office furniture, fixtures, equipment and collectibles per the bankruptcy schedules include desk, chairs, and office equipment, including all computer equipment and communication systems equipment and software, office desk, glass shelving, frame shelving floor, 42inch TV on wall, chair for office desk. The Debtor assumed the liquidation recovery would be 10% of the book value. |
| 7 | The Debtor assumed the 91 Mustang automobile that is not operational has approximately $2,000 in scrap value. |
| 8 | The value of any causes of action against third parties per the bankruptcy schedules and any Chapter 5 causes of action are undetermined, and will be transferred to the Liquidating Trust for the benefit of the GUCs according to the Plan. Any potential recoveries from the causes of action are subject to the releases provided for in the Plan. |
| 9 | The Secured claims are subject to change pending review and currently listed as filed or scheduled. |
| 10 | The Chapter 7 Trustee fees are calculated based on the available assets for distribution in accordance with the bankruptcy code and the Chapter 7 Trustee's professional fees are estimated based on the level of complexity of assisting the Trustee with winding down the estate and pursuing recoveries. |
| 11 | The estimated administrative fees and expenses for the Debtor's bankruptcy professionals net of retainers are subject to court approval. |
| 12 | The Debtor is still reviewing the claims and the amount is subject to change. |