In re:

Chapter 11

MEGA-PHILADELPHIA LLC
M.S. ACQUISITIONS & HOLDINGS, LLC,

Case No. 22-00340-FMD,
Case No. 22-00341-FMD
(Jointly Administered)

   Debtors.

_____/

**MEGA-PHILADELPHIA LLC AND M.S. ACQUISITIONS & HOLDINGS, LLC**
**SECOND AMENDED JOINT SUBCHAPTER V PLAN OF REORGANIZATION**

### Brief Introduction

   This is the *Second Amended Joint Plan of Reorganization of the Debtors*, Mega Philadelphia LLC ("Mega") and M.S. Acquisitions & Holdings, LLC ("MS" together with Mega, the "Debtors" or "Plan Proponents"), under Chapter 11, Subchapter V, of the Bankruptcy Code (the "Plan"). The Plan provides for a reorganization of the Debtors' obligations to its their creditors, and Mega and MS emerging from Chapter 11 as reorganized debtors. Through the Plan the Debtors propose to pay all amounts due to the Subchapter V Trustee, any fees due to the United States Trustee and Creditors holding Allowed Administrative Claims, and Allowed Priority Tax Claims.

   The Plan provides for payment of the Allowed Secured Claims of the Debtor's most senior Secured Creditor as well as pro-rata distributions to undersecured and unsecured creditors through a "Junior Creditor Payment Plan".

   The Plan will be funded by several sources including: (a) **Disposable Income**: Mega will commit disposable income to the fund the Plan in the total amount of **$1,470,236.00** in accordance with the Projections over the 5-year Plan; (b) **Plan Contribution**: The Equity Interest holder will contribute **$45,000.00** and Mr. Sciore is willing to accept a discounted salary during the life of the Plan (discount valued of $200,000.00) (the "Equity Interest Contribution"); and (c) the **Litigation Claims:** Debtors will retain litigation claims and pursue same for the benefit of all creditors.

   In exchange for the Equity Interest Contribution, except as otherwise provided in this Plan, the Equity Interest holders will retain their interest in the Debtors.

   The Debtors believe that Creditors will receive a better outcome if the Debtors successfully reorganize under the Plan than if the Debtors were to liquidate under Chapter 7 of the Bankruptcy Code. A liquidation analysis is attached to the Plan as Exhibit "6". In the event of a liquidation, the Debtors believe that there would be a very small recovery for unsecured creditors after payment of the

claims of its Secured, Administrative and Priority Creditors.

The Debtors believe that this Plan provides a substantially better outcome for all constituencies. The Plan provides for a significant recovery that benefits all parties in all classes. For the reasons more fully set forth in this Plan, the Debtors request your vote to accept the Plan.

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtors' Business

Mega is a music and radio station business that provides radio broadcasting services in Philadelphia, Pennsylvania; South New Jersey; and Atlantic City, New Jersey. Mega's corporate headquarters is located at 14366 Charthouse Circle, Naples, Florida 34114.

Mega's business generates advertisement revenue through broadcast radio and live promotional events. Mega operates the following radio stations: 105.7/1310 FM in Philadelphia, Pennsylvania; and 103.3 FM in Millville, New Jersey. Mega's also rebroadcasts its radio stations in Atlantic City, New Jersey, 101.3 FM. The Debtor's radio studio is located at 1341 N. Delaware Avenue, Philadelphia, Pennsylvania 19125.

Mega is also the 100% owner of subsidiary La Mega Credit Card Services LLC which, among other things, assists Mega in processing incoming credit card transactions for Mega's business.

MS is the 100% owner and sole member of Mega. MS also holds, among other things, a 51% ownership interest in America's Business Capital, LLC ("ABC"). ABC is a commercial lending brokerage business. ABC is a service company whose only asset is cash generated from brokering loan transactions initiated by its principals. ABC's business model is predicated on its principals' ability to generate commissions by brokering loan transactions. ABC's business was significantly hindered by the Covid-19 pandemic and has not yet recovered.

The Debtors filed the Bankruptcy Cases to settle certain financial obligations and reorganize their financial affairs, resolve contentious litigation, and to emerge from bankruptcy as a healthy, sufficiently capitalized company capable of continuing their operations and providing distributions to creditors greater than a liquidation outcome. The Debtors believe that based on the Debtors' income stream, accounts receivable and value being contributed the Debtors' principal, they will be able to successfully reorganize and confirm the Plan.

## B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit "6".

## C. Ability to make future plan payments and operate without further reorganization

The Plan Proponents must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtors' business.

The Plan Proponent has provided projected financial information as Exhibit "5".

The Plan Proponent's financial projections show that Mega will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $1,470,236.00.

The final Plan payment is expected to be paid on July 31, 2029.

The Debtors intend to implement the Plan by generating sufficient income from the Debtor's operations and receiving the funds from the Equity Interest holder, Mr. Sciore, to fund the required payments to creditors.

(a) **Plan Contribution**: The Equity Interest holders will contribute **$45,000.00** to fund Debtors' Effective Date distributions and Mr. Sciore is willing to accept a discounted salary during the life of the Plan (discount valued at approximately **$200,000.00**), for the benefit of all creditors. In exchange for such contribution, except as otherwise provided in this Plan, the Equity Interest holders will retain their interests in the Debtors free and clear of all other claims, liens and interests.

(b) **Net Disposable Income**: Mega will commit disposable income to the fund the Plan in the total amount of $1,470,236.00 in accordance with the Projections attached hereto as **Exhibit "5".**

(c) **Litigation**: The Debtors will retain the right to pursue Litigation against potential litigation targets described in **Exhibit "8"** for the benefit of the two creditor classes: (i) Mega GUC claim holders; and (ii) MS GUC claim holders. All claims and causes of action of all kinds shall be pursued by the post-confirmation Debtors for the benefit of the creditors. Distributions of net recoveries will be made to the Mega GUC claim holders and MS GUC claim holders pro rata with respect to each class of claim holders.

Other than the litigation claims, all property of the Debtors, tangible and intangible, including, without limitation, licenses, accounts receivables, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtors as they were held prior to the Petition Date. The Debtors expects to have sufficient cash on hand to make the payments required on the Effective Date.

Under the projections, Mega is anticipated to have $1,470,236.00 in estimated net disposable income over the life of the Plan. Such net disposable income should be sufficient to, among other things, satisfy the Bank's Secured Claim against Mega in full; 2) make monthly payments to the SBA on account if its secured claim; and 3) provide a distribution to unsecured creditors over the life of the Plan of approximately $393,166.00. Under the projections for MS, the Equity Interest holder will be contributing $45,000.00 on the Effective Date for payment to creditors in order of priority. Cash available on the Effective Date is projected to be sufficient to satisfy the Effective Date payment to Centric, the SBA and the State of New Jersey's priority

unsecured claim in the amount of $16,972.26.

## Article 1: SUMMARY

This Plan under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtors from cash flows from operations, current cash on hand, contributions from the holders of Equity Interests, Mr. Sciore, and future income. The Debtor summarizes its liabilities and classes of claims as follows:

(a)     Subchapter V Trustee's Administrative Claim: this is the Claim of the Sub-Chapter V Trustee for her fees associated with the administration of the Bankruptcy Case.

(b)     Professional Administrative Claims: these are the Claims of Chapter 11 Professionals which, include without limitation the claims of: Edelboim Lieberman Revah Oshinsky PLLC the Debtors' Chapter 11 counsel; Kapila Mukamal LLP, the Debtors' Financial Advisor; and CMS Station Brokerage, Inc., the Debtors' broker and Anthony Lepore, the Debtor's special FCC counsel.

(c)     Other Administrative Claims: At this time the Debtors are not aware of accrued and unpaid administrative claims.

(d) Secured Claims Mega:

(i)     Centric Bank (Mega Claim 1): the Claims of the Centric Bank against Mega are in the amount of $787,257.47. Centric Bank claims a blanket security interest in all of Mega's assets;

(ii)    US Small Business Administration (MS Claim 2): the Claim of US Small Business Administration is for money loaned to Mega in the amount of $512,031.85. US Small Business Administration claims a blanket security interest in all of Mega's assets. The US Small Business Administration mistakenly filed this claim in the MS bankruptcy case and it has been subsequently reclassified by Court Order. ECF #221.

(iii)   Bridge Funding Cap LLC (Mega Claim 3): the Claim of Bridge Funding Cap LLC claims to be for the purchase and sale of accounts receivable but appears to be a disguised usurious loan agreement that also purports to be secured by a UCC in the amount of $185,494.37. Bridge Funding Cap LLC filed its claim untimely and Debtors anticipate objecting to same.

(e) Secured Claims MS:

(i)     Centric Bank (MS Claim 10): the Claims of the Centric Bank against MS are in the amount of $5,768,904.88 (inclusive of overlapping claims against Mega in the amount of $787,257.47). Centric Bank claims a blanket security interest in all of MS's assets.

(ii)    US Small Business Administration (MS Claim 3): the Claim of US Small Business Administration is for money loaned to MS in the amount of

$505,253.75. US Small Business Administration claims a blanket security interest in all of MS's assets.

(iii) EBF Partners, LLC d/b/a Everest Business Funding (MS Claim 4): the Claim of EBF Partners LLC claims to be for a "Purchase Agreement entitling Claimant to 15% of [MS's] 'Future Receipts' as defined in the Revenue Based Financing [sic]". Such appears to be a disguised usurious and unenforceable loan agreement that also purports to be secured by a UCC in the amount of $58,961.90. Moreover, on the Petition Date, MS' accounts receivable totaled zero dollars. Accordingly, MS anticipates objecting to EBF Partners, LLC claim in its entirety.

(iv) Funding Metrics (MS Claim 9): the Claim of EBF Partners LLC claims to be for a the purchase and sale of future receivables. Such agreement appears to be a disguised usurious and unenforceable loan agreement that also purports to be secured by a UCC in the amount of $54,339.74. Moreover, on the Petition Date, MS' accounts receivable totaled zero dollars. Accordingly, MS anticipates objecting to EBF Partners, LLC claim in its entirety.

(f) Priority Unsecured Claims: The Debtors estimate that the priority unsecured claims are as follows:

(i) State of New Jersey (MS Claim 1): the Claim of the State of New Jersey against MS in the amount of $91,472.15 is a priority tax claim pursuant to 11 U.S.C. § 507(a)(8) is for taxes due. However, Debtors anticipate objecting to the foregoing claim as Debtors' estimates of pre-petition New Jersey taxes is approximately $16,972.26.

(g) Unsecured Claims: The Debtors estimate that the Undersecured and Unsecured Creditors in the Mega case hold total aggregate claims in the amount of $393,948.00, and in the MS case hold total aggregate claims in the amount of approximately, $5,169,216.62.[1] A summary of Unsecured Claims (subject to allowance or disallowance) is attached hereto as composite Exhibit "2".

(h) Equity Holders. MS owns and will retain ownership of 100% interests in Mega. Mr. Sciore owns and will retain 100% ownership interest of MS.

Non-priority unsecured creditors holding allowed claims against Mega will receive distributions, which the proponent of this Plan has valued at approximately 90 cents on the dollar. Non-priority unsecured creditors holding allowed claims against MS will receive distributions, which the proponent of this Plan has valued at approximately 1 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information

---

[1] The total general unsecured claims may be subject to reduction by: (a) negotiations with creditors for reduction of Claims; (b) the Debtors objections to Claims; and (c) the Debtor successfully obtaining forgiveness of loans.

regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

| Class # | Description |
|---------|-------------|
| 1 | *Secured claim of*: Centric Bank (Claim 1) against Mega to the extent allowed as a secured claim under §506 of the Code.<br>Collateral description:<br>Centric Bank claims a blanket security interest in all of Mega's assets. |
| 2 | *Secured claim of*: US Small Business Administration (Claim 2) against Mega to the extent allowed as a secured claim under §506 of the Code.<br>Collateral description:<br>US Small Business Administration claims a blanket security interest in all of Mega's assets. |
| 3 | *Secured claim of*: Centric Bank (Claim 10) against MS to the extent allowed as a secured claim under §506 of the Code.<br>Collateral description:<br>Centric Bank claims a blanket security interest in all of MS's assets. |
| 4 | *Secured claim of*:<br>US Small Business Administration (Claim 3) against MS to the extent allowed as a secured claim under §506 of the Code.<br>Collateral description:<br>US Small Business Administration claims a blanket security interest in all of MS's assets. |
| 5 | All non-priority general unsecured claims against Mega allowed under §502 of the Code. |
| 6 | All non-priority general unsecured claims against MS allowed under §502 of the Code. |
| 7 | Equity Interests of MS in Mega. |
| 8 | Equity Interests of Sciore in MS. |

## Article 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS AND COURT FEES

The treatment of and consideration to be received by holders of Allowed Claims or Allowed Interests pursuant to this Article and the Plan shall be in full satisfaction, settlement, release, extinguishment, and discharge of their respective Claims against or interests in the Debtors and the estates, except as otherwise provided in the Plan or the Confirmation Order. The holders of liens satisfied, discharged, and released under the Plan shall execute any and all documentation reasonably requested by the Debtors or the reorganized Debtors evidencing the satisfaction, discharge and release of such liens.

## A.    Allowed Administrative Claims

Each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of such Allowed Administrative Claim, either (A) an amount equal to the unpaid amount of such Allowed Administrative Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Administrative Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; or (B) such other treatment (i) as may be agreed upon in writing by the Claimholder and the Debtor, or (ii) as the Bankruptcy Court has ordered or may order. Notwithstanding the foregoing, Allowed Administrative Claims representing (a) liabilities, accounts payable or other Claims or obligations incurred in the ordinary course of business of the Debtor consistent with past practices subsequent to the Petition Date, shall be paid or performed by the Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements or contracts relating thereto; provided, notwithstanding any contract provision, applicable law or otherwise, that entitles a holder of an Allowed Administrative Claim to post-petition interest, no holder of an Allowed Administrative Claim shall receive post-petition interest, on account of such Claim.

Compensation of professionals and reimbursement of expenses incurred by professionals are Administrative Claims pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "**Professional Fees** and **Expenses Claims**"). All payments to Professionals for Professional Fees and Expenses Claims will be made in accordance with the procedures established by the Code, the Rules, Local Rules and the Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses. The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to section 330 if the Code and Rule 2016 by the date that is ten (10) days after the Effective Date or such other date as may be fixed by the Court.

## B.    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive, at the sole discretion of the Debtor, and in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (A) an amount equal to the unpaid amount of such Allowed Priority Tax Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Priority Tax Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; (B) as provided in section 1129(a)(9)(C), as amended by sections 1191(b) and 1191(e) of the Bankruptcy Code, cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together with interest (payable in arrears) on the unpaid portion thereof at the existing statuary interest rate from the Effective Date through the date of payment thereof; or (C) such other treatment as to which the Debtor and such Claimholder shall have agreed in writing or the Bankruptcy Court has ordered or may order; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time

on or after the Effective Date without premium or penalty; and, provided further, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising before or after the Petition Date with respect to or in connection with such Allowed Priority Tax Claim.

## C.      <u>Compensation of Subchapter V Trustee</u>

Under section 330 of the Bankruptcy Code, the case-by-case Subchapter V Trustee shall be compensated for services and reimbursed for expenses. However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the plan is confirmed:

(a)     The Subchapter V Trustee compensation is estimated to be <u>$5,000</u> through confirmation. The Subchapter V Trustee will apply to the Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case.

(b)     If the plan is confirmed on a consensual basis under section 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's service ends with substantial consummation of the plan under section 1183(c)(1), and the Subchapter V Trustee may collect approved compensation for all services. The Subchapter V Trustee's allowed compensation, as with any other administrative expenses, is payable on the effective date of the plan, unless the Subchapter V Trustee agrees to a different treatment.

(c)     If the plan is confirmed on a non-consensual basis under section 1191(b) of the Bankruptcy Code, then the Subchapter V Trustee will remain in place throughout the life of the plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. As such, the Subchapter V Trustee may file additional or supplemental fee applications throughout the life of the plan. Upon approval of the Trustee's fee applications in a non-consensual case, as long as all professional administrative claims are similarly treated in the plan, the debtor shall pay all fee amounts due to the Trustee on the effective date of the plan, over the remaining life of the plan, or forthwith.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
|  |  |  |

| | | |
|---|---|---|
| Subchapter V Trustee | $5,000 | Paid in full on the Effective Date, or according to separate written agreement, or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date. |
| Professional fees, as approved by the Bankruptcy Court | The Debtor Estimates the Following Administrative Expenses:<br><br>Edelboim Lieberman Revah Oshinsky PLLC: $52,000.00<br><br>Kapila Mukamal LLP: $26,000.00 | Paid in full on the Effective Date, or according to separate written agreement, or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date. |
| Other Administrative Expenses | Administrative Expense Claim of CMS: $4,200.00 | Paid in full on the Effective Date or according to separate written agreement. |

## D. **Priority Tax Claims**

Priority Tax Claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Amount Claimed | Treatment |
|---|---|---|
| | | |

| | | |
|---|---|---|
| State of New Jersey (Claim No. 1) against MS: the Claim of the State of New Jersey is for a variety of pre-petition unpaid state taxes[2] | $91,472.15 (expected to be reduced to approximately $16,972.26). | Cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together with interest (payable in arrears) on the unpaid portion thereof at the existing statuary interest rate from the Effective Date through the date of payment thereof. |

**E.      Statutory Fees**

All fees required to be paid under 28 U.S.C. §1930 that are owed on or before the Effective Date of the Plan have been paid or will be paid on the Effective Date.

**F.      Prospective Quarterly Fees**

All fees required to be paid under 28 U.S.C. §1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, converted to another chapter of the Code or until further court order.

## Article 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

Allowed Secured Claims are Claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. Here, MS's assets are valued at zero and, accordingly, all secured claims against MS shall be treated as Class 6 MS General Unsecured Claims.

The following chart lists all classes containing the Debtors' secured prepetition Claims and their proposed treatment under the Plan:

**A.      Secured Claims**

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| | | | | |

---

[2] Debtors anticipate objecting to this Claim and believe it is misstated. Debtors' estimate that such claim will not exceed $16,972.26.

| | | | | |
|---|---|---|---|---|
| 1 | *Secured claim of*: Centric Bank (Claim 1) against Mega.<br><br>Collateral description: Centric Bank claims a blanket security interest in all of Mega's assets<br><br>Allowed Secured Amount: $787,257.47 | **NO** | Unimpaired | Class 1 claims of $787,257.47 (the "Mega Centric Secured Claim") shall be satisfied in full by payment of monthly payments of approximately $15,220.<br>Payments Begin on the Effective Date<br><br>Payments End on 60th month after the Effective Date<br><br>Interest rate of 6% per annum<br><br>Maintains Lien to the same extent validity and priority that existed on the Petition Date until the Mega Centric Secured Claim is paid. Plan payments can be prepaid at any time without interest or penalty.<br><br>No additional payments required. |
| 2 | *Secured claim of*: US Small Business Administration (Claim 2) against Mega.<br><br>Collateral description: claims a blanket security interest in all of Mega's assets.<br><br>Allowed Secured Amount $512,031.85 | **NO** | Unimpaired | Class 2 claims of $512,031.85 (the "Mega SBA Secured Claim") shall be satisfied in full by payment of monthly payments of approximately $2,731.00<br><br>Payments Begin on the Effective Date and paid over the remaining 30-year life of the loan documents.<br><br>Interest rate of 3.75% per annum<br><br>Maintains Lien to the same extent validity and priority that existed on the Petition Date until the Mega SBA Secured Claim is paid. Plan payments can be prepaid at any time without interest or penalty.<br><br>No additional payments required. |
| | *Secured claim of*: Centric Bank (Claim 10) against MS.<br><br>Collateral description: Centric Bank claims a blanket security interest in all of MS's assets | **NO** | Impaired | Class 3 secured claims of $5,768,904.88 shall be satisfied in full by: (a) payment of cash payments totaling $114,085.00 from distributions received from Mega after payment of its other plan obligations, contributions from the holders of Equity Interests, and other income paid |

| | | | | |
|---|---|---|---|---|
| **3** | Claimed Secured Amount: $5,768,904.88 | | | as follows: (i) $5,000.00 paid on the Effective Date; and (ii) the balance of $109,085 paid upon receipt of flowthrough income from Mega consistent with the projections during the fifth year of the Plan (the "MS Centric Secured Claim Payment"); and (b) an allowed unsecured claim in an amount equal to $5,654,819.99 (the claimed secured amount less the Cash payments received) for pro rata participation as a general unsecured creditor in Class 6.<br><br>Maintains Lien to the same extent validity and priority that existed on the Petition Date until the MS Centric Secured Claim Payment is made. Secured Claim Payment can be prepaid at any time without without interest or penalty.<br><br>No additional payments required. |
| **4** | *Secured claim of*: US Small Business Administration (Claim 3) against MS.<br><br>Collateral description: claims a blanket security interest in all of Mega's assets.<br><br>Claimed Secured Amount $505,253.75 | **NO** | Impaired | Class 4 claims of $505,253.75 shall be satisfied in full by: (a) payment of $5,000 in cash funded by the holders of Equity Interests (the "MS SBA Secured Payment") on the Effective Date; and (b) an allowed unsecured claim in an amount equal to $500,253.75 (the claimed secured amount less the Cash payments received) for pro rata participation as a general unsecured creditor in Class 6.<br><br>Maintains Lien to the same extent validity and priority that existed on the Petition Date until the MS SBA Secured Payment is made. Plan payments can be prepaid at any time without interest or penalty.<br><br>No additional payments required. |

**B.     Classes of Priority Unsecured Claims.**

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The Debtors do not anticipate any claimants asserting Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code.

**C.     Class of General Unsecured Claims**

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of the Class which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 5 | *General Unsecured Creditor Class of Mega* | Impaired | Pro-rata payment of net disposable income of Mega on a quarterly basis after payment of senior secured creditors in classes 1-2 as described above and pro rata distribution of any recoveries from Litigation during the term of the Plan, in full and final satisfaction of all claims in the amount of $417,526 (the "Class 5 Payment"). Payments Begin on thirty days after the Effective Date through the 60th month after the Effective Date. The Class 5 Payments can be prepaid at any time without interests or penalty. Interest rate: 0.00% Estimated percent of claim paid: 100% |
| 6 | *General Unsecured Creditor Class of MS* | Impaired | Net disposable income of MS after paying of secured claims is anticipated to be zero dollars. In complete satisfaction of all Class 6 claims, holders of Class 6 claims shall be paid in full by payment of $15,000 to be funded by holders of Equity Interests, paid pro rata within 30 days of the Effective Date from the Equity Interest contribution, in full and final |

| | | | satisfaction of all claims in the amount.<br><br>No additional payments required. |
| | | | |

## D. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtors. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 7 | *Equity Interest Holders in Mega* | Unimpaired | MS shall retain its 100% interest in Mega. |
| 8 | *Equity Interest Holders in MS* | Unimpaired | Mr. Sciore shall retain his 100% interest in MS. |

## Article 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS AND DISTRIBUTIONS

### 5.1    Disputed Claims.

A "Disputed Claim" is any claim against the Debtors pursuant to Section 502 of the Code that the Debtors have in any way objected to, challenged or otherwise disputed, that has not been allowed or disallowed by a final non-appealable order.

### 5.2    Delay of Distribution on a Disputed Claim

No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final non-appealable order.

### 5.3    Estimated Number and Amount of Disputed Claims.

The Debtor may object to the amount or validity of any Claim prior to the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. Until such time that the objection to the Claim is settled or adjudicated by the Bankruptcy Court, funds that are required to be paid to the holder of the Disputed Claim will be reserved by the Debtor in a non-interest bearing account (or if an interest

bearing account, such Creditor is not entitled to payment of any accrued interest). At this time the Debtors, give notice of their intention to file objections to the following Claims:

(a)     Bridge Funding Cap LLC (Mega Claim 3): the Claim of Bridge Funding Cap LLC claims to be for the purchase and sale of accounts receivable but appears to be a disguised usurious  loan agreement that also purports to be secured by a UCC in the amount of $185,494.37. Bridge Funding Cap LLC filed its claim untimely and Debtors anticipate objecting to same.

(b)     EBF Partners, LLC d/b/a Everest Business Funding (MS Claim 4): the Claim of EBF Partners LLC claims to be for a "Purchase Agreement entitling Claimant to 15% of [MS's] 'Future Receipts' as defined in the Revenue Based Financin [sic]".  Such appears to be a disguised usurious  loan agreement that also purports to be secured by a UCC in the amount of $58,961.90. Moreover, on the Petition Date, MS' accounts receivable totaled zero dollars. Accordingly, MS anticipates objecting to EBF Partners, LLC as a secured creditor.

(c)     Funding Metrics (MS Claim 9): the Claim of EBF Partners LLC claims to be for a the purchase and sale of future receivables. Such agreement appears to be a disguised usurious  loan agreement that also purports to be secured by a UCC in the amount of $54,339.74. Moreover, on the Petition Date, MS' accounts receivable totaled zero dollars. Accordingly, MS anticipates objecting to EBF Partners, LLC as a secured creditor.

(d)     State of New Jersey (MS Claim No. 1): the Claim of the State of New Jersey is for a variety of pre-petition unpaid state taxes[3] against MS in the total amount of $91,472.15. Debtors believe that the amount of the claim is misstated and should not exceed $17,000.00. Debtors anticipate objecting to such claim.

The Debtor reserves the right to object to any Claims that may have been filed or if the Debtor discovers additional information concerning the validity of any Claims, including an objection to one or more of the Junior Secured Claims.

### 5.4     Settlement of Disputed Claims

The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### 5.5     Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law.

---

[3] Debtors anticipate objecting to this Claim and believe it is misstated. Debtors' estimate that such claim will not exceed $35,000.00.

After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

### 5.6    Post-Petition Interest on Claims

Post-petition interest shall not accrue on or after the Petition Date on account of any Claim unless specifically provided in the Plan.

### 5.7    Distributions.

The rights afforded in this Plan and the payments and distributions to be made hereunder shall be in exchange, satisfaction, discharge, and release of all existing claims of any kind, nature or description whatsoever against Debtors or any of their assets or properties; and, except as provided in Section 1192 of the Code, upon the Effective Date, all existing claims against the Debtors shall be, and be deemed to be, exchanged, satisfied, discharged, and released in full; and all holders of claims shall be precluded from asserting against the Debtors or their assets or properties or successors in interest, any other or further claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

The distributions that are made to the various classes of creditors hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any creditor of a senior class by reason of claimed contractual subordination rights, so that each creditor will have, receive, and retain the sole and exclusive benefit of the distributions set forth in this Plan.

Except as otherwise provided by this Plan, upon the consummation date, title to all assets and properties dealt with by this Plan shall vest in the Debtors or their successor in interest, free and clear of all claims and the Confirmation Order shall be a discharge of Debtors' liabilities, except as provided for herein.

Except as provided herein on the Effective Date, Debtors reserve the right to pursue any action against third parties, including but not limited to causes of action against creditors of the estate in state court, U.S. District Court, or appellate court against third parties, including any vendor actions that may later arise.

Creditors may amend their proofs of claims prior to the Confirmation of Debtors' Plan and the actual aggregate amount of Allowed may differ significantly from the amounts used for the purposes of Debtors' estimates. As a result, Debtors reserve for themselves the right to object to all objectionable proofs of claims. The Debtors have been reviewing and analyzing Claims on an ongoing basis and has not identified any objectionable claims except as otherwise identified herein.

### 5.8    Method of Distribution Pursuant to the Type of Confirmed Plan

(a)    Consensual Plan - If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, the service of the trustee appointed under Subchapter V of Chapter 11 (the "Subchapter V Trustee" or "Trustee") in the case shall terminate when the Plan has been substantially consummated. As such, the Debtors shall make all payments under the Plan, including any deposits required by the Plan to be distributed on confirmation.

    (i)    Subject to Rule 9010, and except as otherwise provided herein, all distributions under a Consensual Plan shall be made by the Reorganized Debtors to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or Proof of Claim as of the distribution record date unless the Debtors or Reorganized Debtors have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

    (ii)    Any payment of Cash made by the Reorganized Debtors pursuant to a Consensual Plan shall be made by check drawn on a domestic bank or by wire transfer.

    (iii)    Any payment or distribution required to be made under a Consensual Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

    (iv)    Any distributions of Cash or other property pursuant to a Consensual Plan that is unclaimed for a period of six (6) months after the distribution date shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred and retained by the debtors.

    (v)    Unless otherwise provided herein, all initial distributions and deliveries to be made on the Effective Date shall be made on the initial distribution date. Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

    (vi)    At the close of business on the distribution record date, the claims register shall be closed, and there shall be no further changes in the record holder of any Claims. The Debtors shall have no obligation to recognize any transfer of any Claims occurring after the distribution record date; provided, however, that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the distribution record date and prior to the Effective Date. The Debtors shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the distribution record date.

(b)    Non-Consensual or Cramdown Plan - If the plan is confirmed under section 1191(b) of the Bankruptcy Code, except as otherwise provided in the plan or in the order confirming the plan, Reorganized Debtors shall make payments to creditors under the Plan. As such,

the following provisions shall apply to all claims and disbursements made by the Reorganized Debtors under the plan: The debtors shall file with the Court as a supplement to the plan and provide notice to all creditors at or before confirmation, a list of all the creditors who will be receiving payments under the plan, the total amount to be paid to each creditor under the plan (inclusive of all allowed interest and fees) and the payment terms and schedule for each creditor under the plan.

(i)     The Reorganized Debtors shall make distributions to the holders of allowed claims pursuant to the treatment in their respective classes and as indicated below:

1.  All payments under the plan will be made by the Reorganized Debtors to the holder of each allowed claim at the address of such holder as listed on the Schedules and/or Proof of Claim, unless the Reorganized Debtors has been notified in writing of a change of address.

2.  Any payment required to be made under the plan on a day other than a business day shall be made on the next succeeding business day.

3.  Any distributions of cash or other property under the plan that is unclaimed for a period of six (6) months after such distribution was made shall constitute unclaimed property and any entitlement of any holder of any claim to such distribution shall be extinguished, forever barred, and shall be returned to the Reorganized Debtor.

4.  Claimants shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the confirmation date without leave of the Bankruptcy Court. Any amendment to a claim filed after the later of the claims bar date or the confirmation date shall be deemed disallowed in full and expunged without any action by the Reorganized Debtors unless the claimholder has obtained prior Court authorization for the filing of such amendment. The Reorganized Debtors shall have no obligation to recognize any transfer of any claim after distributions have started.

5.  Unless expressly provided in the plan or the confirmation order, post-petition interest and fees shall not accrue on or after the Petition Date on account of any claim.

(c)     During the pendency of this case, the debtor shall provide copies of yearly income tax returns to the Trustee (but not file with the Court) no later than 30 days after the due date to the underlying taxing authority.

**5.9     <u>No Recourse</u>**

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered

under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the subchapter V Trustee, the Disbursing Agent, the Debtors, the Reorganized Debtors, the Equity Security Interests or any of its current managers, officers, directors, employees, counsel, advisor, respective professionals, consultants, or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. **THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS**.

### 5.10    Unclaimed Distributions

Upon return of any plan distribution made pursuant to Section 1191(a) of the Code by the Debtors or their agents, Debtors shall issue letter correspondence to the last known address indicated on Debtors' schedules or applicable proof of claim. Debtors' correspondence shall include a check for the applicable Plan Payment and provide all necessary case information to enable Creditor's determination of the applicability of Debtors' plan payment. Any payments made pursuant to Plan that are unclaimed for a period of six (6) months shall be forfeited by the holder and will be re- deposited in the Disbursing Agent's account in accordance with 11 U.S.C. §347(b).

## Article 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

The Executory Contracts shown on **Exhibit "3"** shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. **Exhibit "4"** lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults listed in **Exhibit "3"**.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

**TO THE EXTENT THERE ARE ANY EXECUTORY CONTRACTS OR LEASES REJECTED BY THE DEBTOR, ANY PROOF OF CLAIM FOR DAMAGES ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR LEASE MUST BE FILED**

**WITH THE COURT WITHIN THIRTY DAYS AFTER THE ENTRY OF THE ORDER CONFIRMING THE PLAN.**

## Article 7: MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor intends to implement the Plan by raising capital from certain funding sources and by generating sufficient income from the Debtor's operations to fund the required payments to creditors.

(a) **Plan Contribution**: The Equity Interest Holder will contribute **$45,000.00** and Mr. Sciore is willing to accept a discounted salary during the life of the Plan (discount valued at approximately $200,000.00), for the benefit of all creditors. The $45,000.00 shall be sufficient to pay payments due on the Effective Date required under the Plan including, among others: i) $5,000 to Class 3; ii) $5,000 to Class 4; iii) $16,972.26 to priority tax claims of the State of New Jersey; and iv) $15,000 to Class 6.

(b) **Net Disposable Income**: Mega will commit disposable income to the fund the Plan in the total amount of $1,470,236.00 in accordance with the Projections attached hereto as **Exhibit "5"**. MS will have cash on hand from the equity contribution and disposable income of $148,083 to the fund the Plan in accordance with the Projections attached hereto as **Exhibit "5"**.

(c) **Litigation**: The Debtors will pursue litigation for the benefit of unsecured creditors in Classes 5 and 6: (i) Mega GUC claim holders; and (ii) MS GUC claim holders. All claims and causes of action of all kinds shall be retained and pursued for the benefit of its such creditors.

Other than litigation claims being preserved for the benefit of Class 5 and 6 Creditors, upon Confirmation of the Plan, all property of the Debtors, tangible and intangible, including, without limitation, licenses, accounts receivables, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtors as they were held prior to the Petition Date. The Debtors expects to have sufficient cash on hand to make the payments required on the Effective Date.

The managers and members of the respective Debtors immediately prior to the Effective Date shall serve as the initial managers and members of the Reorganized Debtors on and after the Effective Date. Each member and manager shall serve in accordance with applicable non-bankruptcy law and the Debtors' certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time, as applicable.

The Post-Confirmation Officers of the Debtors, and their compensation, shall be as follows: Michael Sciore, shall serve as the Mega's CEO and president and shall receive a reduced annual salary of $168,000.00 in the first year with a 2% escalation for every subsequent year as described in the Projections. The proposed post-confirmation salary of Mr. Sciore reflects an agreed upon significantly reduced compensation from what is believed to be market rate. The difference between market rate salary, $400,000.00 and the proposed salary of $168,000.00 plus escalation – a discount of approximately $232,000.00 – reflects additional value (of approximately $1,160,000.00) being offered by Mr. Sciore to assist in restructuring the Debtors' financial affairs.

Any acceleration, vesting or similar change of control rights of any Person or Entity in an arrangement with the Debtors that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

After the Effective Date, the Reorganized Debtors may operate their businesses, and may use, acquire, and dispose of their property, free of any restrictions of the Code and Rules.

## Article 8: GENERAL PROVISIONS

### 8.1    Title to Assets

Except as otherwise provided in the Plan or in the order confirming the Plan: (i) confirmation of the Plan vests all of the property of the estate (except litigation claims) in the Reorganized Debtors, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtors.

### 8.2    Binding Effect

If the Plan is confirmed, the provisions of the Plan will bind the Debtors and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 8.3    Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 8.4    Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 8.5    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponents, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 8.6    Effectuating Documents and Further Transactions

The Debtors or Reorganized Debtors, as the case may be, are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 8.7    Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Court, pay, with the exception of the Subchapter V Trustee, the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 8.8    Amendment or Modification of Plan

Alterations or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date in conformity with Section 1193(a) of the Bankruptcy Code, provided that the plan, as altered amended or modified satisfies the conditions of sections 1122, 1123, 1181 and 1191 of the Code. If the Plan was confirmed under 1191(a) of the Code, the Plan may be altered or modified by the Debtors after the Confirmation Date but before substantial consummation of the Plan in conformity with Section 1193(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, and the circumstances warrant such alterations, amendments or modifications. If the Plan was confirmed under section 1191(b), then pursuant to section 1193(c), the Plan may be modified within 3 years, or such time not to exceed 5 years as the court may set, and after notice and a hearing, confirms the Plan, as altered, amended or modified, and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Debtors, without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

### 8.9    Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. The

Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 8.10    Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Debtors shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 8.11    No Admissions

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

### 8.12    Substantial Consummation

The Plan shall be deemed to be substantially consummated under sections 1101 and 1193 of the Code upon commencement of Effective Date.

### 8.13    Inconsistency

In the event of any inconsistency between the Plan and any Exhibit to the Plan or the any other instrument or document created or executed pursuant to the Plan, the text of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 8.14    Remedy of Defects

After the Effective Date, the Reorganized Debtors may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtors.

## Article 9: DISCHARGE, INJUNCTION AND SATISFACTION OF LIENS

**9.1    Discharge**. This Plan, if confirmed under Section 1191(a) of the Bankruptcy Code, provides that upon the Effective Date, Debtors shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in Section 1141(d)(1)(A), except that the Debtors will not be discharged on any obligations imposed by this Plan or to the extend provided in §1141(d)(6) of the Bankruptcy Code.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan (Debtors may prepay any amounts due under the Plan without interest or penalty of any kind and upon such payment shall receive a discharge), or as

otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure

**9.2** **Release and Injunction**.

**Upon the Effective Date of the Plan and payment of the initial distribution required on the Effective Date, except as otherwise specifically stated herein as an "Exception to Release", all Persons who have been, are or may be holders of Claims (including Late Filed Claims) against the Debtors, are permanently enjoined and forever barred from taking any actions or asserting any claims, obligations, liabilities, debts, demands or causes of action that are against or that affect the Debtors, or the Reorganized Debtors, and the Subchapter V Trustee (the "Released Parties"), _or any of their respective property_ on account of such Claims or Equity Security Interest (other than actions brought to enforce any rights or obligations under the Plan) for any and all Claims that arose or existed prior to the Confirmation of the Plan, including without limitation:**

     **(i)** **The filing, commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or against any of the property of the Debtors;**

     **(ii)** **Enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment award, decree or other Order against the Debtors or against any of the property of the Debtors;**

     **(iii)** **Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any liens or encumbrances against the Debtors or against any of the property of the Debtors;**

     **(iv)** **Setting-off, seeking reimbursement or contribution from or subrogation against or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to the Debtors or against any of the property of the Debtors; and**

     **(v)** **Proceeding in any manner and any place with regard to liquidating any Claim in any forum other than United States Bankruptcy Court for the Southern District of Florida or, if that Court does not have jurisdiction thereon, in the United States District Court for the Middle District of Florida, or in such forum deemed appropriate by the Debtors.**

**9.3** **Release of Liens/Encumbrances**. Unless expressly excluded herein, payment of the Plan payments required by the Debtors under this Plan, all creditors holding Claims shall prepare, file, record all documents required to release any and all liens, claim or encumbrance it has against the Debtors and the Debtors' assets, including without limitation, any and all termination statements with the Secretary of State, releases of liens or mortgages in the applicable counties or municipalities, and filing satisfaction of judgments.

**9.4.** **Exception to Release**. All Litigation Claims described in Exhibit "8" shall be excepted from the releases and injunctions in paragraph 9.2 herein.

## Article 10: RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) ,1142, 1183, 1185 and 1193 of the Code and for, among other things, the following purposes:

      A. Determination of all issues and disputes regarding title to property of the estate, and determination of all causes of action, controversies, duties or conflicts, whether or not subject to litigation or proceedings pending as of the Confirmation date, between the Debtor and any other party, including but not limited to, any right of the Debtors to recover assets pursuant to the provisions of the Code and Rules.

      B. Fix allowances of compensation and reimbursement of expenses pursuant to §330 of the Code.

      C. Correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Order of Confirmation as may be necessary or appropriate to carry out the purposes and intent of this Plan.

      D. Determine pending applications for the assumption or rejection of executory contracts and unexpired leases under §365 of the Code and determine the allowance of Claims resulting therefrom.

      E. To consider any amendments or modifications to this Plan as allowed by section 1193 of the Code.

      F. To issue such orders as are necessary or appropriate to carry out the provisions of this Plan, including without limitation the appointment of a person pursuant to F.R.C.P. Rule 70 and Rule 7070 of the Rules to act, execute and deliver documents on behalf of the Debtor to implement and consummate this Plan.

      G. To enjoin the interference with the implementation and consummation of the Plan, and to impose sanctions for any such interferences in accordance with Article VII herein.

      H. To liquidate damages in connection with any disputed, contingent or unliquidated claims.

      I. To hear and determine all controversies and disputes that may arise in connection with this Subchapter V, Chapter 11 case and in connection with the interpretation and implementation of the Plan.

J.      To determine any and all applications, adversary proceedings or contested matters pending on the Confirmation Date and arising under Chapter 11 of the Code or arising in or related to the Debtors' reorganization cases under Chapter 11 and Title 11 of the Code.

K.      For such other matters as may be set forth in the Order of Confirmation.

## Article 11: CONCLUSION

The aforesaid provisions shall constitute the Joint Combined Plan of Reorganization of the Debtors. This Plan, when approved and confirmed by the Bankruptcy Court, shall be deemed binding on the Debtors, all creditors, and all parties in interest and their successors and assigns in accordance with 11 U.S.C. §1141.

## Article 12: DEFINITIONS

The definitions and rules of construction set forth in sections 101 (as amended by Subchapter V) and 102 of the Code shall apply when those terms are used in this Plan, supplemented by the following definitions:

**"Administrative Creditor"** shall mean any creditor entitled to payment of an Administrative Expense Claim.

**"Administrative Expense"** shall mean any cost or expense of administration of this Estate allowed by the Court pursuant to Section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate and any actual and necessary expenses of operating the business of the Debtor.

**"Allowed Amount"** shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee Request, such amount shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such claim after the Filing Date.

**"Allowed Claims"** shall mean a claim (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), and which is not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection to the allowance

thereof has been interposed within any applicable period of limitation fixed by Rule 3003, or by order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. Allowed claim shall not include interest on the principal amount of such claim subsequent to the Petition Date, except as may be otherwise provided herein.

**"Allowed Priority Tax Claim"** shall mean a Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**"Allowed Secured Claim"** means an Allowed Claim secured by the Property in an amount equal to the lesser of the Allowed Claim of that creditor or the value of the Property, as determined by the Court pursuant to 11 U.S.C. § 506, minus the amount of any Allowed Claim secured by a senior lien against the same Property, unless the holder of the claim elects pursuant to § 1111(b) in which event the Allowed Secured Claim shall be equal to the Allowed Claim.

**"Allowed Unsecured Claim"** shall mean an Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**"Article"** shall mean one of the numbered Articles of the Plan.

**"Ballot"** shall mean the ballot accompanying the Plan upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

**"Ballot Deadline"** shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

**"Bankruptcy Code" or "Code"** means Title I of the Bankruptcy Reform Act of 1978, as Amended, 11 U.S.C. Section 101, et seq.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to cases pending before the Bankruptcy Court.

**"Business Day"** shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Miami, Florida are authorized or required to close.

**"Cash"** shall mean cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

**"Chapter 11 Case or Case"** This case under chapter 11 of the Bankruptcy Code in which MS and Mega are the Debtors-in-Possession.

"**Causes of Action**" means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to: (i) the claims for listed in Debtors' Schedules; and (ii) the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548,549,550,551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtors, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtors not otherwise approved by the Bankruptcy Court; provided, however, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

**"Centric Bank"** shall mean, First Commonwealth Bank, successor by merger to Centric Bank.

**"Claim"** shall have the meaning as set forth in 11 U.S.C., §101 and include any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

**"Class"** shall mean a group of Claims or Equity Interests classified together pursuant to Article II of the Plan.

**"Confirmation Date"** shall mean the date upon which the Order confirming the Plan is entered by the Court in accordance with the provisions of Chapter 11, as amended by Subchapter V of the Code.

**"Confirmation Hearing"** shall mean the hearing to be held consider confirmation of the Plan.

**"Confirmation Order"** shall mean an Order entered by the Bankruptcy Court, District Court, or other appellate Court confirming this Plan.

**"Consummation Date"** shall mean the date on which the Confirmation Order becomes a Final Order.

**"Creditor"** shall mean the holder of an allowed Claim.

**"Debtors"** shall mean Mega and MS, the above captioned Debtors under Subchapter V of Chapter 11 of the Code.

**Disputed Claim:** Any claim against the Debtors pursuant to Section 502 of the Code that the Debtors have in any way objected to, challenged or otherwise disputed.

**"Distributions"** shall mean the property required by the Plan to be distributed to the holders of Allowed Claims.

**"Effective Date"** shall mean the later of 30 days after the Confirmation Order becomes final and not appealable.

**"Equity Interest"** shall mean any interest in Mega represented by interests of MS, and the ownership interests of Mr. Michael Sciore in MS.

**"Equity Interest Contribution"** shall mean the $45,000.00 contribution by the Mr. Sciore, the holder of Equity Interests to fund this Plan and Mr. Sciore's discounted salary during the life of the Plan (discount valued at approximately $200,000.00).

**"Executory Contracts"** shall mean all unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**"Final Order"** shall mean an order or a judgment of the Court which has not been stayed and as to which order or judgment (or any revisions, modification or amendment thereof) the time to appeal or seek review or rehearing has expired.

**"Funds From Operations"** shall mean the disposable income that is generated from the operation of Mega's business in the total amount of $1,530,831 set forth in the Projections.

"**Impaired Claim**" shall mean any class of creditors whose claims are impaired by payments as proposed in this Plan, in accordance with 11 U.S.C. §1124.

**"Litigation Trust"** shall mean that certain litigation trust created for the benefit of unsecured and under secured creditors of the Debtors and administered pursuant to the trust agreement attached hereto as Exhibit "8".

**"Liquidating Trustee"** shall mean that certain person appointed by the Debtors to administer the Liquidating Trust and shall be identified at least 10 days prior to the hearing on confirmation of this Plan.

**"Person"** or **"Persons"** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof or other entity.

**"Petition Date"** shall mean March 25, 2022, the date on which the Debtors filed their voluntary Chapter 11 Petition with the Court.

**"Plan"** shall mean this Chapter 11, Subchapter V Plan of Reorganization in its present form or as may hereafter be amended, modified or supplemented in accordance with the terms hereof or in accordance with the Code.

**"Plan Funding Sources"** shall mean the means for implementing the Plan, provided for in Section 2.5 of this Plan including (a) the Equity Interest Contribution, (b) the Litigation Trust and (c) the Funds From Operations.

**"Plan Proponent"** shall mean the Debtors.

**"Priority Claim"** shall mean any claim, other than administrative expense or a tax claim, to the extent entitled to priority in payment under 11 U.S.C. §507(a).

**"Priority Creditor"** shall mean any creditor that is the holder of a priority claim.

**"Priority Non-Tax Claim"** shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(3), (4), (5), (6), or (7).

**"Priority Tax Claim"** shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. § 507(a)(8).

**"Projections"** shall mean the Debtors' financial projections attached as Exhibit "5" to this Plan.

**"Pro Rata"** shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed Unsecured Claim or Disputed Equity Interest has not been finally resolved, an appropriate reserve for payment of such Disputed Unsecured Claim or Disputed Equity Interest shall be established so that there will be sufficient consideration to make a Pro Rata distribution to the holder of such Disputed Unsecured Claim or Disputed Equity Interest upon final resolution of the dispute.

**"Professional Person"** mean attorneys, accountants, appraisers or other professionals within the meaning of Section 327 of the Bankruptcy Code, as amended by Section 1195(a) employed with the approval of the Bankruptcy Court and any post-confirmation professional whether or not approved by the Bankruptcy Court. Post-confirmation, Professional Persons shall not require Bankruptcy Court approval for employment or compensation and may be paid in the Reorganized Debtors' ordinary course of business.

**"Reorganized Debtors"** means MS and Mega after the Effective Date.

"**Rules**" shall mean the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules as adopted by the Court.

"**Schedules**" shall mean Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

"**Secured Claim**" means any Claim that is secured pursuant to Section 506 of the Bankruptcy Code.

"**Secured Creditor**" means any Creditor that holds a Secured Claim.

"**Subchapter V**" means Subchapter V of Chapter 11 of the Code.

"**Subchapter V Trustee**" shall mean Amy Denton Harris, the duly appointed Subchapter V Trustee in the Bankruptcy Case.

"**Tax Creditor**" means any creditor that holds a tax claim.

"**Unimpaired Claim**" shall mean any class of creditors whose claim are not impaired under the Plan in accordance with 11 U.S.C. §1124.

"**Unsecured Claim**" shall mean all claims other than administrative expense claims, secured claims, priority claims, and tax claims.

"**Unsecured Creditor**" means any creditor that is the holder of an Unsecured Claim.

Respectfully Submitted on this 12ᵗʰ day of April, 2024

MEGA-PHILADELPHIA LLC
By: MS ACQUISITIONS & HOLDINGS, LLC
   its Manager and Member

By: /s/
Mike Sciore, its Authorized Representative


MS ACQUISITIONS & HOLDINGS, LLC

By: /s/
Mike Sciore, Manager and Sole Member

**EDELBOIM LIEBERMAN**
**REVAH PLLC**
Counsel for the Debtors
**20200 W. Dixie Highway, Suite 905**
Miami, FL 33180
Telephone: (305) 768-9909
Facsimile: (305) 928-1114
Email: brett@elrolaw.com
Email: edan@elrolaw.com

By:/s/ Brett D. Lieberman
Brett D. Lieberman (FBN 69583)

Exhibit "1"

intentionally omitted

Exhibit 2

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD Jointly Administered with M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**MEGA-PHILADELPHIA LLC ("Mega") -  Claims Register**

**Petition Date:** March 25, 2022
**Source:** Filed and scheduled claims

| Source | Priority | Claim # | Claimant Name | Estimated Potential Allowed Amount |
|---|---|---|---|---|
| Schedules / Filed | Secured | 2.1 / POC 1 | Centric Bank | 787,257.47 |
| Schedules | Secured | 2.4 | SBA EIDL **(Note 1)** | 512,031.85 |
| Schedules | GUC | 3.3 | ASCAP | 19,400.00 |
| Schedules / Filed | GUC | 3.6 / POC 2 | BMI | 72,274.87 |
| Schedules | GUC | 3.8 | Centric Bank | 5,000.00 |
| Schedules / Filed | GUC | 3.9 / POC 3 | Bridge Funding Cap LLC d/b/a/ Chrome Capital **(Note 2)** | 185,494.37 |
| Schedules | GUC | 3.13 | Federal Communications Commission | 10,935.01 |
| Schedules | GUC | 3.18 | Haworth Marketing | 31.49 |
| Schedules | GUC | 3.19 | Hutchinson Air Conditioning | 4,800.00 |
| Schedules | GUC | 3.21 | Intertech Media | 300.00 |
| Schedules | GUC | 3.23 | Nielson Audio | 39,912.00 |
| Schedules | GUC | 3.25 | Townsquare Media | 7,800.00 |
| Schedules | GUC | 3.28 | WIBG Rebroadcast Lease | 48,000.00 |
| Filed | GUC | POC 4 | Fundbox, Inc. | 23,577.07 |
| | | | | |
| | | | | $          1,716,814.13 |
| | | | | |

**1)** US Small Business Administration (MS - POC 2) against MS for $512,031.85 appear to have been mistakenly filed against MS in an unsecured amount rather than against Mega in a secured amount. This Claim is inconsistent with Mega's schedules and would result in a duplicative claim. In accordance with the order entered on May 3, 2023 [DE 221], the claim has been reclassified to Mega.

**2)** The Debtor intends to object to the Bridge Funding Cap LLC d/b/a/ Chrome Capital (POC 3) claim for $185,494.37 as it appears to be a disguised usurious  loan agreement that also purports to be secured by a UCC in the amount of $185,494.37. Bridge Funding Cap LLC filed its claim untimely and Debtors anticipate objecting to same.

**3)** The Debtor intends to object to the Fundbox, Inc. claim (POC 4) because it was untimely filed.

| Summary | | |
|---|---|---|
| **Claim Type** | | |
| Secured | $ | 1,299,289 |
| Priority | | - |
| GUC | | 417,525 |
| | | |
| **Total Potential** | **$** | **1,716,814** |

Kapila Mukamal
CPAs, Forensic and Insolvency Advisors

Exhibit 2

# MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD Jointly Administered with M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD
## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

### M.S. ACQUISITIONS & HOLDINGS, LLC - Claims Register

**Petition Date:** March 25, 2022
**Source:** Filed and scheduled claims

| Source | Priority | Claim # | Claimant Name | Estimated Potential Allowed Amount |
|---|---|---|---|---|
| Filed | Secured | POC 3 | SBA - US Small Business Administration | 505,253.75 |
| Schedules / Filed | Secured | 2.1 & 2.2 / POC 10 | Centric Bank | 5,768,904.88 |
| Schedules / Filed | Priority | 2.3 / POC 1 | State of New Jersey **(Note 1)** | 91,472.15 |
| Schedules | GUC | 3.1 | Anderson Kill PC c/o Arthur J. Gillis | 8,277.50 |
| Schedules | GUC | 3.2 | Capital One | 2,000.00 |
| Schedules / Filed | GUC | 3.3 / POC 6 | Duane Morris LLP | 168,151.21 |
| Schedules / Filed | GUC | 3.4 / POC 4 | Everest Funding (EBF Partners, LLC) **(Note 2)** | 58,961.90 |
| Schedules | GUC | 3.5 | Flaster Greenberg | 30,000.00 |
| Schedules / Filed | GUC | 2.3 / POC 9 | Funding Metrics, LLC **(Note 2)** | 54,339.74 |
| Schedules / Filed | GUC | 3.7 / POC 5 | Harvest Small Business Finance | 20,833.00 |
| Schedules | GUC | 3.8 | Lendini | 25,000.00 |
| Schedules | GUC | 3.9 | Royer Cooper Cohen Braunfeld | 57,000.00 |
| Schedules / Filed | GUC | 3.10 / POC 2 | SBA Loan **(Note 3)** | - |
| Schedules | GUC | 3.11 | Weir & Partners LLP | 40,000.00 |
| Filed | GUC | POC 7 | Federal Insurance Company c/o Chubb | 7,031.67 |
| Filed | GUC | POC 8 | Vigilant Insurance Company c/o Chubb | 720.44 |
| | | | | |
| | | | | $   6,837,946.24 |
| | | | | |

**1)** The Claim of the State of New Jersey (POC 1) is for a variety of pre-petition unpaid state taxes against MS in the total amount of $91,472.15. Debtors believe that the amount of the claim is misstated and should not exceed $17,000.00. Debtors anticipate objecting to such claim.

**2)** The Debtor assumed the Everest Funding (POC 4) and Funding Metrics (POC 9) claims would be reclassified as general unsecured claims or disallowed in their entirety.

**3)** US Small Business Administration (POC 2) against MS for $512,031.85 appear to have been mistakenly filed against MS in an unsecured amount rather than against Mega in a secured amount. This Claim is inconsistent with Mega's schedules and would result in a duplicative claim. In accordance with the order entered on May 3, 2023 [DE 221], the claim has been reclassified to Mega.

**Summary**

| Claim Type | | |
|---|---|---|
| Secured | $ | 6,274,159 |
| Priority | | 91,472 |
| GUC | | 472,315 |
| **Total Potential Claims** | $ | 6,837,946 |

**MS Acq. GUCs including estimated deficiency claims**

| Claim: | | Amounts | |
|---|---|---|---|
| GUCs | | $   472,315 | |
| SBA claim (POC 3): | 505,254 | | |
| Cash payment | (5,000) | | |
| **SBA deficiency claim** | | 500,254 | |
| | | | |
| Centric Bank Claim (POC 10): | 5,768,905 | | |
| Plan payments over 5 yrs | (153,083) | | |
| **Centric Bank deficiency claim** | | 5,615,822 | |
| **Total GUC claims including deficiency claims** | | **$   6,116,076** | |

Kapila Mukamal
CPAs, Forensic and Insolvency Advisors

**Exhibit "3" and Exhibit "4"**

**Schedule of Assumed Executory Contractors and Cure Amounts**

| No. | Contract/Lease Party | Contract/Lease Title | Cure Amount |
|-----|----------------------|----------------------|-------------|
| 1 | Mega-Philadelphia LLC-and Carta Brava Enterprises | 1033 Antenna Lease Agreement | $0.00 |
| 2 | The City of Camden | Tower Lease Agreement | $0.00 |
| 3 | Mega-Philadelphia LLC and Townsquare Media of Atlantic, City LLC | Radio Broadcast Lease Agreement | $0.00 |
| 4 | Mega-Philadelphia LLC and Penn Treaty Park Place, LTD. | Office Lease Agreement | $0.00 |
| 5 | M.S. Acquisitions & Holdings, LLC and Tico Productions, LLC | Spanish broadcast rights agreement. | $0.00 |

Please take notice that the listing of an executory contract or unexpired lease does not constitute an admission that the contract or lease is an executory contract or unexpired lease as contemplated by Section 365(a) of the Bankruptcy Code or that the Debtors have any liability thereunder, and the Debtors expressly reserve all of their rights, claims, causes of actions, and defenses with respect to the contracts or leases listed herein.

Exhibit 5

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

## Mega Projections - Disposable Income Analysis and
## Effective Date Distributions & Plan Payments

**Source:** Debtor's historical P&Ls and management's assumptions.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** July 1, 2024

| Projections | Notes | Monthly Template | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | Five Year Projection | | | |
| **Estimated Income** | | | | | | | | |
| Advertising (5% per yr increase) | 1 | 140,000 | $ 1,680,000 | $ 1,764,000 | $ 1,852,200 | $ 1,944,810 | $ 2,042,051 | $ 9,283,061 |
| *Gross income* | | 140,000 | 1,680,000 | 1,764,000 | 1,852,200 | 1,944,810 | 2,042,051 | 9,283,061 |
| | | | | | | | | |
| **Estimated Business Expenses** | 2 | | | | | | | |
| Rent / Lease Expense | 3 | 4,500 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 270,000 |
| Payroll - principal (M. Sciore) | 4 | 17,917 | 215,000 | 215,000 | 215,000 | 215,000 | 215,000 | 1,075,000 |
| Payroll - G & A employees (2% per yr increase) | 4 | 31,250 | 375,000 | 382,500 | 390,150 | 397,953 | 405,912 | 1,951,515 |
| Sales Expense | 5 | 25,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 1,500,000 |
| Programming Expense (includes W2 employees & 2% per yr increase) | 4 | 12,600 | 151,200 | 154,224 | 157,308 | 160,455 | 163,664 | 786,851 |
| Promotion Expenses (includes W2 employees & 2% per yr increase) | 4 | 4,600 | 55,200 | 56,304 | 57,430 | 58,579 | 59,750 | 287,263 |
| Engineering Expense (2% per yr increase) | | 2,500 | 30,000 | 30,600 | 31,212 | 31,836 | 32,473 | 156,121 |
| Other Operating Expenses (2% per yr increase) | 6 | 10,000 | 120,000 | 122,400 | 124,848 | 127,345 | 129,892 | 624,485 |
| Insurance Expense (2% per yr increase) | | 2,500 | 30,000 | 30,600 | 31,212 | 31,836 | 32,473 | 156,121 |
| Legal / Professional | | 1,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 60,000 |
| *Total business expenses* | | 111,867 | 1,342,400 | 1,357,628 | 1,373,161 | 1,389,004 | 1,405,164 | 6,867,356 |
| | | | | | | | | |
| *Net cash flow (deficit)* | | 28,133 | 337,600 | 406,372 | 479,039 | 555,806 | 636,887 | 2,415,704 |
| | | | | | | | | |
| Taxes (gross income less business expenses @ 32% tax rate) | 7 | 9,003 | 108,032 | 130,039 | 153,293 | 177,858 | 203,804 | 773,025 |
| | | | | | | | | |
| *Estimated Net Disposable Income ("NDI") before Plan Payments* | | $19,131 | $229,568 | $276,333 | $325,747 | $377,948 | $433,083 | $1,642,679 |
| | | | | | | | | |
| **Beginning Cash Balance** | | | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 |
| Net cash flow | | | 229,568 | $ 276,333 | $ 325,747 | $ 377,948 | $ 433,083 | $1,642,679 |
| Less Net Disposable Income available to creditors | | | (229,568) | (276,333) | (325,747) | (377,948) | (433,083) | (1,642,679) |
| **Ending Cash Balance** | | | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 |

**SEE ACCOMPANYING NOTES**

Exhibit 5

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**Mega Projections - Disposable Income Analysis and**
**Effective Date Distributions & Plan Payments**

**Source:** Debtor's historical P&Ls and management's assumptions.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** July 1, 2024

| Effective Date Distributions & Plan Payments | Notes | Effective Date Distributions | Monthly Template | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Source of funds:** | | | | | | | | | |
| Est. Projected cash as of Effective Date | 8 | $ 108,000 | | | | | | | - |
| Equity contribution | | - | | | | | | | |
| Estimated NDI before Plan Payments | | | | 229,568 | 276,333 | 325,747 | 377,948 | 433,083 | 1,642,679 |
| *Total sources of funds* | | 108,000 | | 229,568 | 276,333 | 325,747 | 377,948 | 433,083 | 1,642,679 |
| | | | | | | | | | |
| **Use of funds:** | | | | | | | | | |
| | | | | | | | | | |
| **Secured claims** | | | | | | | | | |
| Centric Bank (Mega - POC 1) | 9 | | 15,220 | 182,639 | 182,639 | 182,639 | 182,639 | 182,639 | 913,193 |
| SBA (Mega/MS - POC 2) | 10 | | 2,731 | 32,776 | 32,776 | 32,776 | 32,776 | 32,776 | 163,878 |
| | | - | 17,951 | 215,414 | 215,414 | 215,414 | 215,414 | 215,414 | 1,077,071 |
| | | | | | | | | | |
| **Estimated Ch 11 administrative expenses:** | 11 | | | | | | | | |
| Edelboim Lieberman Revah (Debtor's Counsel) | | 52,000 | | | | | | | - |
| KapilaMukamal (Debtor FA) | | 26,000 | | | | | | | - |
| Sub V Trustee | | 5,000 | | | | | | | - |
| | | 83,000 | | - | - | - | - | - | - |
| | | | | | | | | | |
| **Priority Unsecured Claims:** | | | | | | | | | |
| N/A | | | | - | - | - | - | - | - |
| | | - | - | - | - | - | - | - | - |
| *Total use of funds* | | 83,000 | | 215,414 | 215,414 | 215,414 | 215,414 | 215,414 | 1,077,071 |
| | | | | | | | | | |
| ***Estimated Net Disposable Income ("NDI") After Plan Payments - Net cash flow (deficit)*** | | $25,000 | | $ 14,154 | $ 60,919 | $ 110,333 | $ 162,534 | $ 217,669 | $ 565,608 |
| | | | | | | | | | |
| **Distributions:** | | | | | | | | | |
| General Unsecured Creditors ("GUCs") | | $417,525 | | | | | | | |
| Estimated distribution to GUCs - Ch 11 Plan | 12 | | | $14,154 | $60,919 | $110,333 | $162,534 | $69,586 | $417,525 |
| Est distribution % to GUCs - Ch 11 Plan | 12 | | | 3.39% | 14.59% | 26.43% | 38.93% | 16.67% | 100.00% |
| | | | | | | | | | |
| Excess NDI to MS Acquisition & Holdings, LLC | 13 | | | $ - | $ - | $ - | $ - | $ 148,083 | $ 148,083 |
| **Total Distributions** | | | | $ 14,154 | $ 60,919 | $ 110,333 | $ 162,534 | $ 217,669 | $ 565,608 |

**SEE ACCOMPANYING NOTES**

KapilaMukamal
CPAs, Forensic and Insolvency Advisors

Exhibit 5

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**

**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**Mega Projections - Disposable Income Analysis and**
**Effective Date Distributions & Plan Payments**
**Notes**

| Note | Description |
|---|---|
| 1 | The Debtor operates a Latin music station that provides radio broadcasting services to its audiences in Philadelphia, Pennsylvania, South New Jersey, and Atlantic City, New Jersey. Debtor operates the following radio stations: 105.7 FM and 1310 AM in Philadelphia, Pennsylvania; 103.3 FM in Millville, New Jersey. Mega also rebroadcasts its radio stations in Atlantic City, New Jersey, 101.3 FM. The Debtor's business generates advertisement revenue mainly through broadcast radio and some live promotional events. The Debtor estimated its revenue projections based on the average income during the Chapter 11 period, from April 2022 through April 2023 (13 months). |
| 2 | The Debtor estimated its business expenses generally based on the historic average expenses incurred. |
| 3 | Estimated rent expenses include (i) the office lease (Penn Treaty Park Place) that is currently on a month to month term for approximately $2,500 per month, and (ii) a rebroadcast lease in Atlantic City, NJ for approximately $2,000 per month. The current Atlantic City lease is set to expire in July 2023 and the Debtor intends to procure a new lease for approximately $2,000 per month. |
| 4 | The Debtor's principal, Mike Sciore, has agreed to a discounted salary of $200,000 p/yr during the five year plan for the benefit of all creditors, including the employer portion of payroll taxes due estimated to be 7.5% of the gross payroll amount. The estimated payroll amounts are for gross wages including the employee and employer tax liabilities (estimated to be 7.5% of the gross payroll amounts). The Programming and Promotion expenses includes the estimated compensation for the W2 employees whose work is affiliated within these categories. |
| 5 | The sales expenses includes estimates for the 1099 contractors including commissions which are variable in nature and subject to fluctuate, ratings expenses, travel and customer relationship management software (CRM). |
| 6 | Estimates for other operational expenses include business license and permits, bank service fees cleaning expenses, utilities, office expense and supplies, merchant fees, repairs and maintenance and other operational and general and administrative related expenses. |
| 7 | The Debtor estimated the taxes due based on the gross income less business expenses at 32%. Mega is a partnership owned 99.9% by MS Acquisition & Holdings, LLC ("MS Acquisition"), the jointly administered debtor in this case.  MS Acquisition is an S-Corp owned 100% by the Debtor's principal, Mike Sciore ("Sciore").  Since the income from Mega is a pass through to MS Acquisition and ultimately Sciore individually, the Debtor assumed a 32% tax rate impact to Mega's five year projections. |
| 8 | Estimated available cash as of the Effective Date. The current estimate is based on the Debtor's DIP accounts as of February 29, 2024, and is subject to change based on the actual cash as of the Effective Date. |
| 9 | Centric Bank (Mega - POC 1) - Monthly Payment of approximately $15,220. Payments begin on the Effective Date and payments end on 60th month after the Effective Date with an interest rate of 6% per annum. |
| 10 | SBA (Mega/MS - POC 2) - Monthly Payment of approximately $2,731. Payments begin on the Effective Date and payments end on 30 years after the Effective Date with an interest rate of 3.75% per annum in accordance with the original loan documents. |
| 11 | Compensation to the Debtor's bankruptcy professionals is subject to Court approval. Amounts reflected are an estimate net of retainers held by the respective professional and estimated fees due to the Subchapter V Trustee. |
| 12 | Estimated distribution to GUCs. |
| 13 | Excess NDI will pass through to MS Acquisition & Holdings, LLC, the parent of Mega Philadelphia and the jointly administered debtor in this case |

The  Debtor from time to time makes written or oral forward-looking statements concerning expectations, beliefs, plans, objectives, future events or performance and underlying assumptions and other statements that are not historical facts.  These statements are "forward-looking statements."  Generally, the inclusion of the words "believe", "could", "should", "estimate", "expect", "intend", "anticipate", "will", "plan", "target", "forecast" and similar expressions identify statements that constitute "forward-looking statements."  All statements addressing developments that the Debtor expects or anticipates will occur in the future, including statements relating to values, future financial condition, assets, real property and timing of their disposition, as well as statements expressing optimism or pessimism about future results, are forward-looking statements. The forward-looking statements are based upon the Debtor's  then-current views and assumptions regarding future developments and are applicable only as of the dates of such statements.  By their nature, all forward-looking statements involve risks and uncertainties.  The Debtor assumes no obligation to update or review any forward-looking information to reflect actual results, changes in assumptions or changes in other factors affecting forward-looking information, whether as a result of new information, future events or otherwise.  There can be no assurance that the Debtor has correctly identified and appropriately assessed all factors affecting the Company and its assets.  For these reasons, you are cautioned not to place undue reliance on any forward-looking statements.

Exhibit 5

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**M.S. ACQUISITIONS & HOLDINGS, LLC**
**Projections, Effective Date Distributions & Plan Payments**

**Source:** Management's assumptions.
**Petition Date:** March 25, 2022
**Assumed Effective Date: July 1, 2024**

| Projections, Effective Date Distributions & Plan Payments | Notes | Effective Date Distributions | Monthly Template | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Source of funds:** | | | | | | | | | |
| Est. Projected cash as of Effective Date | 1 | $ 1,433 | | | | | | | - |
| Equity Contribution | 2 | 45,000 | | | | | | | - |
| NDI passthrough from Mega Philadelphia | 3 | | | - | - | - | - | 148,083 | 148,083 |
| *Total sources of funds* | | 46,433 | | - | - | - | - | 148,083 | 148,083 |
| | | | | | | | | | |
| **Use of funds:** | | | | | | | | | |
| | | | | | | | | | |
| **Secured claims** | | | | | | | | | |
| Centric Bank (MS - POC 10): | 2 | 5,000 | | | | | | 148,083 | 148,083 |
| SBA (MS - POC 3) | 4 | 5,000 | | - | - | - | - | - | - |
| | | 10,000 | - | - | - | - | - | 148,083 | 148,083 |
| | | | | | | | | | |
| **Estimated Ch 11 administrative expenses:** | 5 | | | | | | | | |
| Edelboim Lieberman Revah (Debtor's Counsel) | | - | | | | | | | - |
| KapilaMukamal (Debtor FA) | | - | | | | | | | - |
| Sub V Trustee | | - | | | | | | | - |
| | | - | | - | - | - | - | - | - |
| | | | | | | | | | |
| **Priority Unsecured Claims:** | | | | | | | | | |
| State of NJ (MS - POC 1) | 6 | 16,972 | - | - | - | - | - | - | - |
| | | 16,972 | - | - | - | - | - | - | - |
| | | | | | | | | | |
| **General Unsecured Creditors ("GUCs")** | 7 | 15,000 | | | | | | | |
| | | | | | | | | | |
| *Total use of funds* | | 41,972 | | - | - | - | - | 148,083 | 148,083 |
| | | | | | | | | | |
| *Net cash flow (deficit)* | | $4,461 | | $ - | $ - | $ - | $ - | $ - | $ - |

**SEE ACCOMPANYING NOTES**

Exhibit 5

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**

**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**Mega Projections - Disposable Income Analysis and**
**Effective Date Distributions & Plan Payments**
**Notes**

| Note | Description |
|------|-------------|
| 1 | Estimated available cash as of the Effective Date. The current estimate is based on the Debtor's DIP accounts as of February 29, 2024 and is subject to change based on the actual cash as of the Effective Date. |
| 2 | The Equity Holder will contribute $45,000 in cash. |
| 3 | The excess net disposable income after distribution to GUCs that is a passthrough from Mega Philadelphia LLC ("Mega Philadelphia"), the subsidiary of and the jointly administered debtor in this case. |
| 4 | The proposed treatment for the SBA (POC 3) is a cash payment of $5,000.00 from Equity Holder on the Effective Date. Thereafter, pro-rata participation an allowed unsecured claim in the distributions to General Unsecured Creditors in amount of $500,253.00 (an amount equal to the Claimed Secured Amount less the Cash payment amount) for pro rata participation as a general unsecured creditor. |
| 5 | Compensation to the Debtor's bankruptcy professionals is subject to Court approval and the total amounts owed are represented on Mega Philadelphia's projections. |
| 6 | The Debtor assumes it will object to the filed claim amount of $91,427 and estimates the amount owed to be approximately $16,972. |
| 7 | Cash payment to GUCs on the Effective Date. |

The Debtor from time to time makes written or oral forward-looking statements concerning expectations, beliefs, plans, objectives, future events or performance and underlying assumptions and other statements that are not historical facts. These statements are "forward-looking statements." Generally, the inclusion of the words "believe", "could", "should", "estimate", "expect", "intend", "anticipate", "will", "plan", "target", "forecast" and similar expressions identify statements that constitute "forward-looking statements." All statements addressing developments that the Debtor expects or anticipates will occur in the future, including statements relating to values, future financial condition, assets, real property and timing of their disposition, as well as statements expressing optimism or pessimism about future results, are forward-looking statements. The forward-looking statements are based upon the Debtor's then-current views and assumptions regarding future developments and are applicable only as of the dates of such statements. By their nature, all forward-looking statements involve risks and uncertainties. The Debtor assumes no obligation to update or review any forward-looking information to reflect actual results, changes in assumptions or changes in other factors affecting forward-looking information, whether as a result of new information, future events or otherwise. There can be no assurance that the Debtor has correctly identified and appropriately assessed all factors affecting the Company and its assets. For these reasons, you are cautioned not to place undue reliance on any forward-looking statements.

Exhibit 6

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**Mega-Philadelphia, LLC - Liquidation Analysis**

**Source:** Debtor's bankruptcy schedules, claims filed and current estimates.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** July 1, 2024

| Assets / Liabilities | Notes | Chapter 7 |
|---|---|---|
| **_Assets_** | | |
| Cash | 1 | $        108,000 |
| Accounts receivable | 2 | 229,093 |
| Security Deposit of lease for office space - Philadelphia | 3 | 3,000 |
| Office furniture, fixtures, and equipment; and collectibles | 4 | 820 |
| Transmitter and miscellaneous equipment | 5 | 10,000 |
| Intangibles and Intellectual Property: | 6 | - |
| • Licenses, franchises, and royalties (Radio stations: 105.7 FM. 1310 AM and 103.3 FM) | | 150,000 |
| • Internet domain names and websites | | - |
| • Customer List | | - |
| Causes of action | 7 | TBD |
| _Estimated assets available for distribution_ | | **500,913** |
| | | |
| **_Liabilities_** | | |
| **Secured Claims:** | 8 | |
| Centric Bank - POC 1 | | 787,257 |
| SBA - POC 2 (filed in MS case) | | 512,032 |
| | | **1,299,289** |
| | | |
| _Estimated assets available for distribution_ | | - |
| | | |
| **Estimated Administrative Claims:** | | |
| Ch. 7 Administrative Expense Claims: | 9 | |
| Chapter 7 Trustee Fees | | 28,296 |
| Chapter 7 Professionals | | 50,000 |
| | | **78,296** |
| | | |
| _Estimated assets available for distribution_ | | - |
| | | |
| **Estimated Chapter 11 Administrative Expense Claims:** | 10 | |
| Edelboim Lieberman Revah PLLC (Debtor's Counsel) | | 52,000 |
| KapilaMukamal LLP (Debtor's FA) | | 26,000 |
| Sub V Trustee | | 5,000 |
| | | **83,000** |
| | | |
| _Estimated assets available for distribution_ | | $        - |
| | | |
| **Assumed Distribution to Creditors** | | |
| Total General Unsecured Claims ("GUCs") | 11 | $        417,525 |
| | | |
| Estimated Distribution to GUCs under Chapter 7 | | $        - |
| Estimated Distribution % to GUCs under Chapter 7 | | 0.00% |
| | | |
| Estimated Distribution to GUCs under the Chapter 11 Plan | | $        417,525 |
| Estimated Distribution % to GUCs under the Chapter 11 Plan | | 100.00% |

**SEE ACCOMPANYING NOTES**

**Mega-Philadelphia, LLC - Liquidation Analysis**
**Notes**

**Source:** Debtor's bankruptcy schedules, claims filed and current estimates.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** July 1, 2024

| No. | Note |
|---|---|
| 1 | The current estimate is based on the Debtor's DIP accounts as of February 29, 2024. |
| 2 | The estimated accounts receivable excluding credits and uncollectible accounts totaling approximately $254,548 ("AR") as of February 29, 2024 less a 10% discount included for bad debt reserve assumed to be uncollectible. |
| 3 | Security Deposits per the bankruptcy schedules include $3,000 for leased office spaced at 1341 N. Delaware Avenue, Philadelphia, Pennsylvania 19125. |
| 4 | Estimated office furniture, fixtures, equipment and collectibles per the bankruptcy schedules that include office equipment, conference tables, desks and miscellaneous office items. The Debtor assumed the liquidation recovery would be 10% of the book value. |
| 5 | Other assets per the bankruptcy schedules include a transmitter and miscellaneous equipment. |
| 6 | The Debtor's intangible assets per the bankruptcy schedules include domain names (www.lamega1057.com, www.lameganation.com, www.lemega1033.com, www.lemaga1013.com) and customer lists that have no value in a Chapter 7 liquidation. The Debtor's best estimate of the liquidation value of the licenses is between $100,000 and $150,000 and included the higher end of the range as a conservative estimate for the liquidation analysis. |
| 7 | The value of any causes of action against third parties per the bankruptcy schedules and any Chapter 5 causes of action are undetermined, and will be retained y the Debtor for the benefit of the GUCs according to the Plan. |
| 8 | The Secured claims are subject to change pending review and currently listed as filed or scheduled. The Claim of US Small Business Administration (POC 2) is for money loaned to Mega in the amount of $512,031.85 and was filed in the MS case. In accordance with the order entered on May 3, 2023 [DE 221], the claim has been reclassified to Mega Philadelphia. |
| 9 | The Chapter 7 Trustee fees are calculated based on the available assets for distribution in accordance with the bankruptcy code and the Chapter 7 Trustee's professional fees are estimated based on the level of complexity of assisting the Trustee with winding down the estate and pursuing recoveries. |
| 10 | The estimated administrative fees and expenses for the Debtor's bankruptcy professionals net of retainers are subject to court approval. |
| 11 | The Debtor is still reviewing the claims and the amount is subject to change. |

Exhibit 6

**MEGA-PHILADELPHIA LLC: Case No. 22-00340-FMD**
**Jointly Administered with**
**M.S. ACQUISITIONS & HOLDINGS, LLC: Case No. 2200341-FMD**
**UNITED STATES BANKRUPTCY COURT - MIDDLE DISTRICT OF FLORIDA - FORT MYERS DIVISION**

**M.S. Acquisitions & Holdings, LLC - Liquidation Analysis**

**Source:** Debtor's bankruptcy schedules, claims filed and current estimates.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** July 1, 2024

| Assets / Liabilities | Notes | Chapter 7 |
|---|---|---|
| **_Assets_** | | |
| Cash | 1 | $ 1,433 |
| Investments: | | |
| • Mega Philadelphia, LLC (100% interest) | 2 | - |
| • America's Business Capital, LLC (51% interest) | 3 | - |
| • Spanish Sport Network (100% interest) | 4 | - |
| • City Lane Properties (50% interest) | 5 | - |
| Office furniture, fixtures, and equipment; and collectibles | 6 | 400 |
| Auto - 91 Mustang (not operational) | 7 | 2,000 |
| Causes of action | 8 | TBD |
| _Estimated assets available for distribution_ | | **3,833** |
| | | |
| **_Liabilities_** | | |
| **Secured Claims:** | 9 | |
| Centric Bank - POC 10 | | 5,768,905 |
| US Small Business Administration (SBA) - POC 3 | | 505,254 |
| | | **6,274,159** |
| | | |
| _Estimated assets available for distribution_ | | **-** |
| | | |
| **Estimated Administrative Claims:** | | |
| Ch. 7 Administrative Expense Claims: | 10 | |
| Chapter 7 Trustee Fees | | 958 |
| Chapter 7 Professionals | | 25,000 |
| | | **25,958** |
| | | |
| _Estimated assets available for distribution_ | | **-** |
| | | |
| **Estimated Chapter 11 Administrative Expense Claims:** | 11 | |
| Edelboim Lieberman Revah PLLC (Debtor's Counsel) | | - |
| KapilaMukamal LLP (Debtor's FA) | | - |
| Anthony T. Lepore, Esq. (Special Counsel) | | - |
| Sub V Trustee | | - |
| | | **-** |
| **Priority Claims:** | | |
| State of New Jersey - POC 1 | | 91,472 |
| | | **91,472** |
| | | |
| _Estimated assets available for distribution_ | | **$ -** |
| | | |
| **Assumed Distribution to Creditors** | | |
| Total General Unsecured Claims ("GUCs") | 12 | $ 4,923,474 |
| | | |
| Estimated Distribution to Secured Creditors under the Chapter 7 | | $ - |
| Estimated Distribution to GUCs under Chapter 7 | | $ - |
| Estimated Distribution % to GUCs under Chapter 7 | | 0.00% |
| | | |
| Estimated Distribution to Secured Creditors under the Chapter 11 Plan | | $ 148,083 |
| Estimated Distribution to GUCs under the Chapter 11 Plan | | $ 15,000 |
| Estimated Distribution % to GUCs under the Chapter 11 Plan | | 0.30% |

**SEE ACCOMPANYING NOTES**

**M.S. Acquisitions & Holdings, LLC - Liquidation Analysis**
**Notes**

**Source:** Debtor's bankruptcy schedules, claims filed and current estimates.
**Petition Date:** March 25, 2022
**Assumed Effective Date:** July 1, 2024

| No. | Note |
|---|---|
| 1 | Estimated cash balance subject to actual available funds on the Effective Date. |
| 2 | The Debtor owns 100% of Mega Philadelphia, LLC, who filed bankruptcy on March 25, 2022, and whose case is being jointly administered with the Debtor under *Case No. 202-00340-FMD* . |
| 3 | American Business Capital, LLC ("ABC") is a commercial lending brokerage business in which the Debtor owns 51%. ABC is a service company whose only asset is cash generated from brokering loan transactions initiated by its principals. ABC's business model is predicated on its principals' ability to generate commissions by brokering loan transactions, and accordingly, there in no value in a Chapter 7 liquidation. |
| 4 | Spanish Sports Network ("SSN") has been inactive and has not had any financial activity or filed tax returns since 2016-2017. This entity is not expected to have any value. |
| 5 | City Line Properties ("CLP") has been inactive for over five years. This entity is not expected to have any value. |
| 6 | Estimated office furniture, fixtures, equipment and collectibles per the bankruptcy schedules include desk, chairs, and office equipment, including all computer equipment and communication systems equipment and software, office desk, glass shelving, frame shelving floor, 42inch TV on wall, chair for office desk. The Debtor assumed the liquidation recovery would be 10% of the book value. |
| 7 | The Debtor assumed the 91 Mustang automobile that is not operational has approximately $2,000 in scrap value. |
| 8 | The value of any causes of action against third parties per the bankruptcy schedules and any Chapter 5 causes of action are undetermined, and will be retained by the Debtor for the benefit of the GUCs according to the Plan. |
| 9 | The Secured claims are subject to change pending review and currently listed as filed or scheduled. |
| 10 | The Chapter 7 Trustee fees are calculated based on the available assets for distribution in accordance with the bankruptcy code and the Chapter 7 Trustee's professional fees are estimated based on the level of complexity of assisting the Trustee with winding down the estate and pursuing recoveries. |
| 11 | The estimated administrative fees and expenses for the Debtor's bankruptcy professionals net of retainers are subject to court approval. |
| 12 | The GUC claims include the estimated deficiency claims for the SBA POC 3 and Centric Bank POC 10. |

Exhibit "7"
Intentionally Omitted

**Exhibit "8"**

**Schedule of Potential Litigation**

| Litigation: M.S. Acquisitions & Holdings, LLC and Mega-Philadelphia LLC | |
|---|---|
| **Potential Litigation Targets** | **Potential Preferential and/or Fraudulent Transfer Claims** |
| Weir & Partners | $100,550 |
| Ronald & Mary Oros | $55,000 |
| Lewis & Lin, LLC | $35,500 |
| Royer Cooper Cohen Braunfeld LLC | $20,000 |
| Duane Morris LLP | $15,000 |
| Flaster Greenberg PC | $12,000 |
| Rupp Base Pfalzgraf law firm | $9,500 |
| | |
| **Debtors reserve any and all rights to pursue litigation claims against potential litigation targets not expressly identified herein. Additionally, Debtors preserve any and all claims of any kind that accrued post-petition including claims against Springfield Mitsubishi. | |